**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| ALCOA INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No.: |
| v. | ) 1:15-cv-01466-ELR |
| | ) |
| UNIVERSAL ALLOY, | ) |
| CORPORATION | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT UNIVERSAL
ALLOY CORPORATION'S MOTION FOR ORDER REQUIRING
PRE-DISCOVERY IDENTIFICATION OF TRADE SECRETS**

**INTRODUCTION**

This is a trade-secret case, but a vague one. Plaintiff Alcoa Inc. ("Alcoa")

pleads broad allegations about trade secrets that it claims, "upon information and

belief," defendant Universal Alloy Corporation ("UAC") has misappropriated to

enable itself to compete with Alcoa for Boeing's airplane-parts business. UAC has

tried for six months (both in Indiana, where Alcoa first sued, and now here) to

persuade Alcoa to specify what secrets it claims UAC has misappropriated. But

Alcoa has steadfastly refused to say.

Courts in this District and across the country routinely require trade secret

plaintiffs to specify what trade secrets they contend are at issue before they seek

discovery from defendants.  Requiring disclosure by Alcoa in this case will ensure that (1) UAC can understand precisely what Alcoa claims it has done and can prepare to defend itself accordingly; (2) the Court and UAC can distinguish relevant discovery from attempts to fish for competitive information; and (3) most importantly, Alcoa cannot mold its trade-secret claims to mirror whatever information UAC produces during discovery.

The need for pre-discovery identification of trade secrets is particularly pressing here given Alcoa's history of avoiding such disclosure in a previously filed action.  Alcoa filed a nearly identical trade-secret-misappropriation lawsuit against UAC in Indiana state court last year.  Even though it claimed that it had been harmed to the tune of $200 million by the misappropriation of its trade secrets, Alcoa never identified any trade secrets before that litigation was dismissed.  Rather than waiting months for the parties to tee up another discovery dispute in this litigation, UAC requests that the Court order Alcoa to identify its alleged trade secrets with specificity within two weeks of entry of an appropriate protective order and before discovery against UAC commences.[1]

---

[1] Counsel for UAC emailed a letter to counsel for Alcoa on May 26, 2015, a copy of which is attached hereto as Exhibit A.  The letter (a) explained that "[i]t has been more than six months since Alcoa first sued [UAC] claiming trade-secret misappropriation;" (b) reminded counsel that we had requested Alcoa to tell us in its first lawsuit what it claims UAC has misappropriated; (c) requested again that

## BACKGROUND

What is going on here is simple.  At its core, this case is an attempt by Alcoa to stifle legitimate competition—competition that the parties' customer, Boeing, sincerely wants—in the market for critical aerospace parts.  UAC will briefly describe how we got here.

### 1.     UAC Develops Stretch-Form Capability At Boeing's Request.

Alcoa and UAC both manufacture aluminum extrusion parts for the aerospace industry.  Alcoa and UAC also compete for business from the Boeing Company ("Boeing").  Historically, Boeing purchased certain stretch-formed aluminum parts exclusively from Alcoa.  Unsurprisingly, Boeing did not want to remain dependent on a single supplier, so Boeing approached UAC in 2012 and asked UAC to enter the stretch-forming business.[2]

In response to Boeing's invitation, UAC spent more than $20 million to purchase and install massive stretch-forming machinery at UAC's Canton, Georgia

Alcoa do so; (d) committed to enter into a protective order like the one we agreed upon in Alcoa's first lawsuit; and (e) offered to meet and confer on the subject if Alcoa had any concerns.  Alcoa responded on May 28 (copy attached as Exhibit B) stating (a) that "Alcoa views UAC's request … as a premature and improper attempt to seek discovery;" (b) that no Rule 26(f) conference "has yet been scheduled in this matter, much less taken place," and (c) that Alcoa will respond to discovery "at the appropriate time."

[2] According to Alcoa, stretch-forming is a process by which a straight-length extrusion is formed into a contoured shape.  *See generally* Complaint (Docket No. 1).

facility.  UAC made this investment in its physical plant with the understanding that Boeing would use UAC as a second, alternative supplier for stretch-formed parts that Boeing needs to build airplanes.  UAC developed its stretch-forming capability legitimately, without using anything that belongs to Alcoa.  Specifically, UAC bought machinery from an *independent third-party* that specializes in producing, installing, and programming machinery that does precisely what UAC needs it to do—manufacture, *using Boeing molds*, the airplane parts that Boeing has committed to buy from UAC.

**2.    Alcoa Sues for Trade Secret Misappropriation in Indiana State Court.**

In 2014, Boeing awarded a portion of its stretch-form supply business to UAC.  Alcoa did not like that.  Alcoa wanted to continue to have all of Boeing's stretch-form business, not just a portion of it.  So, in November 2014, Alcoa sued UAC and five UAC independent contractors and employees in state court in Lafayette, Indiana, where Alcoa has a manufacturing facility and employs hundreds of local residents.[3]  (A copy of Alcoa's November 17, 2014 complaint filed in Indiana state court ("Indiana Complaint") is attached hereto as Exhibit C.)

---

[3] The individuals that Alcoa included as defendants in the Indiana action were Henry Sigler, Alan Chase, Michael Fultz, Paul Scaglione, and Michael Colt.  Two of those individuals, Sigler and Chase, had no involvement in the stretch-form development whatsoever.  But they were Indiana residents.  Alcoa presumably named them to prevent UAC from removing the case to federal court.

As here, Alcoa alleged, on information and belief only, that UAC and the individual defendants conspired to "misappropriate Alcoa's trade secret stretch form extrusion process and all of its component parts (the 'Stretch Form Process')." (Indiana Complaint ¶ 1.) The Indiana Complaint provided no detail about what secrets UAC had allegedly misappropriated.[4]

On December 11, 2014, a few weeks after Alcoa filed its Complaint, individual defendant Alan Chase (who, as an Indiana resident, was clearly subject to personal jurisdiction) served Alcoa with interrogatories asking Alcoa to specify precisely what trade secrets Alcoa claimed were misappropriated. Alcoa refused to answer the interrogatories, putting up procedural hurdles at every turn to avoid having to commit to a position. Alcoa's refusal to identify what it claims is at issue forced the two Indiana defendants (Messrs. Sigler and Chase) to move the Court to stay discovery pending Alcoa's identification of trade secrets. (A copy of the brief in support of that motion is attached as Exhibit D.)

---

[4] *See, e.g.*, Indiana Complaint ¶ 25 (stating that the stretch-form process "sequences a number of steps and controls a variety of precisely calibrated variables"), ¶ 26 (referencing a "proprietary alloy composition used in this process, the specifics of which are stored on a secure database"), ¶ 27 (stating the process consists of "stages pursuant to very precise specifications covering an extensive array of variables"), ¶ 33 (referencing Alcoa's recording of "all of the proprietary data"), ¶ 59 (referencing "proprietary information regarding Alcoa's Stretch Form Process, the components of which are Alcoa's trade secrets").

### 3.    The Indiana Court Dismisses Alcoa's Claims Against UAC For Lack Of Personal Jurisdiction.

On December 23, 2014, UAC moved to dismiss the Indiana action for lack of personal jurisdiction.  UAC argued that it had no connection whatsoever with the Indiana forum and certainly not the minimum contacts necessary to support jurisdiction over an out-of-state defendant.

Alcoa argued in response that UAC had engaged in a systematic campaign to reach into Indiana and hire former Alcoa employees who were involved in Alcoa's "Stretch Form Process."  In support of this claim, Alcoa tendered an affidavit from one of its employees, Mr. Joseph Kerkhove, who averred facts (1) of which he had no personal knowledge, and (2) that were demonstrably false.  Alcoa refused to make Mr. Kerkhove available for a deposition and refused to accept a subpoena on his behalf.  So UAC engaged a process server who spent several days trying, unsuccessfully, to serve Mr. Kerkhove with a subpoena at his home in Arizona so that UAC could depose Mr. Kerkhove and question him on the points in his affidavit.  But Mr. Kerkhove succeeded in dodging service, so UAC had to rebut his affidavit by other means.

UAC explained to the Indiana Court, with competent affidavit support, that it decided to enter the stretch-forming business only after Boeing approached UAC in 2012 and asked it to do so.  Critically, Boeing did not approach UAC until *after*

- 6 -

UAC had already retained all of the individual defendants.  In other words, Alcoa's

theory that UAC conspired to hire former Alcoa employees because of their

alleged knowledge of stretch-forming did not square with the facts even as to the

timing of their hiring.

On March 20, 2015, the Indiana Court granted UAC's motion to dismiss.  (A

copy of that order is attached hereto as Exhibit E.)  The Indiana Court held that

Alcoa had failed to demonstrate that the Indiana Court could exercise personal

jurisdiction over UAC because, among other things, Alcoa failed to present any

evidence that UAC had recruited Alcoa's former employees to acquire Alcoa's

trade secrets.  (Ex. E. ¶¶ 34-40.)  Notably, the Indiana Court found that the

affidavit that Alcoa had submitted from Mr. Kerkhove was (i) incompetent, (ii)

"contradicted by allegations in Alcoa's own complaint," (iii) rebutted by

competent evidence that UAC had submitted, (iv) undercut by Alcoa's

"purposefully" avoiding our efforts to depose Mr. Kerkhove, and therefore (v)

entitled to "no weight."[5]  (*Id.* at ¶ 28.)

---

[5] The Order states: "Because (a) Mr. Kerkhove has not worked at Alcoa's
Lafayette facility since 1999; (b) Mr. Kerkhove's affidavit contains statements that
are contradicted by allegations in Alcoa's own complaint; (c) competent affidavit
testimony from witnesses who clearly do have personal knowledge also contradicts
Mr. Kerkhove's affidavit; and (d) despite those contradictions, Alcoa (i)
purposefully avoided allowing Mr. Kerkhove to be deposed, and (ii) offered no
evidence to explain the contradictions, the Court must conclude that Mr.

After the Indiana Court dismissed UAC, Alcoa decided to drop the Indiana case. On April 20, 2015, the Indiana Court granted Alcoa's motion to dismiss. Alcoa therefore avoided having to identify any trade secrets that it claims UAC has stolen.

### 4.     Alcoa Files Another Trade-Secret Suit Against UAC.

On April 30, 2015, Alcoa commenced this action, naming only UAC as the defendant. Alcoa's Complaint contains a few allegations in addition to those it made in Indiana, but still fails to identify any trade secrets that it claims UAC has misappropriated. Despite six months of litigation, Alcoa still makes only general references to its "trade secret stretch form extrusion process and all of its component parts (the 'Stretch Form Process')." (Compl. ¶ 1.) UAC cannot tell from these descriptions what Alcoa claims UAC misappropriated. To the contrary, Alcoa's Complaint has all the characteristics of a complaint in search of a basis: it lumps multiple former Alcoa employees with widely disparate employment histories and job functions together and claims on "information and belief" that they all have collaborated to steal unspecified trade secrets to enable UAC to compete for business in which Alcoa has historically enjoyed a near monopoly.

---

Kerkhove's affidavit is not based on personal knowledge. Accordingly, the Court has given Mr. Kerkhove's affidavit no weight." (Ex. E. ¶ 28.)

## ARGUMENT

Alcoa invokes the Georgia Trade Secrets Act (the "GTSA"), O.C.G.A. § 10-1-760, *et seq.* Courts across the country, including this Court, have recognized the importance of sequencing discovery to require trade-secret plaintiffs to identify their alleged trade secrets early in the litigation to avoid the consequences of allowing a plaintiff to proceed without first specifying what it claims is at issue.

### A.    This Court Has Broad Discretion To Sequence Discovery.

This Court has "broad discretion to limit the time, place, and manner of discovery as required 'to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.'" *DeRubeis v. Witten Techs., Inc.*, 244 F.R.D. 676, 678 (N.D. Ga. 2007) (quoting Fed. R. Civ. P. 26(c)). This Court also has "broad discretion to modify the timing and sequence of discovery 'for the convenience of the parties and witnesses and in the interests of justice . . . ." *Id.* (quoting Fed. R. Civ. P. 26(d)). Furthermore, district courts have "broad discretion to 'adopt [] special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems." *StoneEagle Servs., Inc. v. Valentine*, No. 3:12-cv-1687-P, 2013 WL 9554563, at *3 (N.D. Tex. June 5, 2013) (quoting

*United Servs. Auto. Ass'n v. Mitek Sys., Inc.* 289 F.R.D. 244, 248 (W.D. Tex. 2013) and Fed. R. Civ. P. 16(c)(2)(L)).

**B.   Courts Across The Country, Including This Court, Have Required Trade-Secret Plaintiffs To Identify Trade Secrets With Particularity Before Commencing Trade-Secret Discovery.**

Under Georgia law, the plaintiff has the burden of identifying its alleged trade secrets and proving that the information identified qualifies as a trade secret. "A claim for misappropriation of trade secrets under the Georgia Trade Secrets Act requires a plaintiff to prove that '(1) it had a trade secret and (2) the opposing party misappropriated the trade secret.'" *Capital Asset Research Corp. v. Finnegan*, 160 F.3d 683, 685 (11th Cir. 1998) (quoting *Camp Creek Hospitality Inns, Inc. v. Sheraton Franchise Corp.*, 139 F.3d 1396, 1410 (11th Cir. 1998)). "The party asserting the existence of a trade secret has the burden of proving that the information so qualifies and that the accused party violated the Act." *Id.* at 685-86 (citing various Georgia cases).

Courts across the country recognize that the nature of and burdens imposed by trade secret cases warrant requiring plaintiffs to disclose precisely what they contend has been misappropriated at the outset of the litigation. Consistent with a court's broad discretion to sequence discovery, courts have previously ordered trade-secret plaintiffs to identify their alleged trade secrets before discovery begins.

- 10 -

*See, e.g.*, *DeRubeis v. Witten Techs., Inc.*, 244 F.R.D. 676, 680-81 (N.D. Ga. 2007); *StoneEagle*, 2013 WL 9554563, at *1-4 (recognizing that a plaintiff's failure to identify its trade secrets with reasonable particularity in a related case justified the court's ordering the plaintiff to identify its trade secrets prior to any discovery being served).

Early identification of trade secrets is important for a number of reasons. Courts require trade-secret plaintiffs to identify their trade secrets at the outset of litigation to (1) place a defendant on notice of the claims being asserted against it so that it may mount appropriate defenses; (2) help the Court and the defendant understand whether and what discovery is relevant, thus protecting the defendant's trade secrets as appropriate; and (3) ensure that a plaintiff does not mold its trade-secret claims to mirror whatever information a defendant produces. *See, e.g.*, *DeRubeis*, 244 F.R.D. at 680-81; *Dura Global Techs., Inc. v. Magna Donnelly, Corp.*, No. 07-cv-10945, 2007 WL 4303294, at *2-5 (E.D. Mich. Dec. 6, 2007); *AutoMed Techs., Inc. v. Eller*, 160 F. Supp. 2d 915, 925 (N.D. Ill. 2001); *Engelhard Corp. v. Savin Corp.,* 505 A.2d 30, 32-33 (Del. Ch. 1986); R. Milgrim, 4 *Trade Secrets* § 16.01 [5][b] (1997) (stating that a defendant cannot formulate a defense unless the plaintiff has identified "with clear detail [] what the plaintiff claims to be its trade secret").

### 1. Alcoa must identify its alleged trade secrets so that UAC can understand the claims against it and mount appropriate defenses.

Requiring Alcoa to identify with specificity the trade secrets that it claims are at issue will place UAC on notice of what Alcoa contends UAC has misappropriated and allow UAC to mount appropriate defenses. "[I]t is difficult, if not impossible, for the defendant to mount a defense until it has some indication of the trade secrets allegedly misappropriated." *DeRubeis*, 244 F.R.D. at 681; *see also Sit-Up, Ltd. v. IAC/InterActiveCorp.*, No. 05-cv-9292, 2008 WL 463884, at *11 (S.D.N.Y. Feb. 20, 2008) (requiring a trade-secret plaintiff to describe its alleged trade secrets with "adequate specificity to inform the defendant[] what it is alleged to have misappropriated").

Without notice of what has allegedly been misappropriated, UAC is unable to mount appropriate defenses to Alcoa's claims. "Often, a trade secret defendant will defend the claim by showing that it does not use the claimed secret or that the information is in fact not secret." *DeRubeis*, 244 F.R.D. at 681 (citing *Litton Sys., Inc. v. Sundstrand Corp.*, 750 F.2d 952, 954 (Fed. Cir. 1984)). "Until the defendant knows what information is at issue, it cannot attempt to rebut the plaintiff's charges of misappropriation." *Id.*

Here, UAC cannot formulate its defenses because UAC is unaware of what specifically Alcoa claims UAC misappropriated. UAC—and the Court—should

not have to hunt through the general descriptions Alcoa has provided and guess at what trade secrets Alcoa contends UAC has misappropriated.  To place UAC on proper notice of Alcoa's claims, and to allow UAC to formulate its defenses against these claims, the Court should order Alcoa to identify its alleged trade secrets before Alcoa is allowed to take trade-secret-related discovery from UAC.

> **2.      Requiring Alcoa to identify its alleged trade secrets will allow the Court and UAC to determine the proper scope of discovery.**

Until Alcoa specifies what trade secrets it claims are at issue, neither UAC nor the Court will be able to determine what information sought through Alcoa's discovery requests is actually relevant.  *See DeRubeis*, 244 F.R.D. at 680 ("[U]ntil the trade secret plaintiff has identified the secrets at issue with some specificity, there is no way to know whether the information sought is relevant."); *Dura Global Techs.*, 2007 WL 4303294, at *2 ("[D]isclosure of plaintiff's trade secrets prior to discovery of defendant may be necessary to enable the defendant and ultimately the Court to ascertain the relevance of plaintiff's discovery." (quoting *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 755 F. Supp. 635, 637 (D. Del. 1991)).

Furthermore, by requiring Alcoa to specify its trade secrets now, the Court can also protect UAC from needless disclosure of information that may include *UAC's trade secrets*.  *See DeRubeis*, 244 F.R.D. at 680-81 (noting that an

understanding of "the outer permissible bounds of discovery . . . prevents needless exposure of the defendant's trade secrets"); *Gentex Corp. v. Sutter*, No. 3:07-cv-1269, 2008 WL 5068825, at \*1 (M.D. Pa. Nov. 25, 2008) (noting the concern that defendants would "turn over trade secrets that were not misappropriated by former employees of Plaintiff and thereby give their competitor trade secrets it does not now have"); *AutoMed Techs.*, 160 F. Supp. 2d at 925 (stating that "[the party from which discovery is sought] has as much right to protect its proprietary information as does [the plaintiff]" and refusing to permit the plaintiff "to go on a fishing expedition"); *see also MBL (USA) Corp. v. Diekman*, 445 N.E.2d 418, 426-27 (Ill. Ct. App. 1983) (affirming the trial court's decision to prevent the plaintiff from viewing the defendant's work product prior to the plaintiff establishing a *prima facie* case for misuse and existence of trade secrets).

For these reasons, courts—including this Court—have recognized the need for sequencing disclosures and discovery in trade secret cases.  In *DeRubeis*, for example, the counterclaim plaintiff alleged that its former employees had misappropriated its trade secrets.  244 F.R.D. at 677-79.  The employer made only general, nonspecific allegations of the alleged trade secrets at issue.  *Id.*  The Court found that—as here—the employer had "not specif[ied] any trade secrets at all, but rather reveal[ed] the end results of, or the functions performed by, the claimed

- 14 -

trade secrets." *Id.* The Court required the employer first to identify with "reasonable particularity" those trade secrets it believed to be at issue; only after the employer had met that obligation could it require its former employees to provide relevant discovery in response. *Id.* at 681.

That same sequencing is needed here. Alcoa's general, nonspecific descriptions of its alleged trade secrets are insufficient to allow UAC to evaluate and respond properly to Alcoa's discovery requests. Until Alcoa identifies the trade secrets it contends are at issue, UAC can only guess at what discovery may be relevant to those claims and its defenses. Furthermore, Alcoa's claims are premised on the misappropriation of Alcoa's trade secrets; UAC's trade secrets are not at issue. UAC should not be required to provide discovery that might include its own trade-secret information until Alcoa first identifies its alleged trade secrets with specificity. This concern is especially compelling here because Alcoa and UAC are *direct competitors*.

> **3.    Pre-discovery trade secret identification will prevent Alcoa from tailoring its claims to fit whatever information UAC produces.**

"[R]equiring the plaintiff to state its claimed trade secrets prior to engaging in discovery ensures that [the plaintiff] will not mold its cause of action around the discovery it receives." *DeRubeis*, 244 F.R.D. at 681. This concern is particularly pressing here. Alcoa's complaint provides almost no detail regarding the alleged

trade secrets, referring only to a generic and multi-part stretch-form process. During the hearing held on UAC's motion to dismiss in the Indiana litigation, *Alcoa's counsel represented that virtually every aspect of every step in the process Alcoa uses to manufacture stretch-formed products constitutes a trade secret.* It appears that Alcoa has not changed its tune. Alcoa's overly broad description is an attempt to stake out an enormous amount of territory in which Alcoa may later claim—after reviewing defendant's discovery responses, for instance—that it has trade secrets. That is inappropriate.

Courts across the nation agree with this Court's holding in *DeRubeis* that, in situations like this, it is appropriate to stay discovery until the trade-secret plaintiff specifically identifies the secrets it purportedly seeks to protect. *See, e.g.*, *BioD LLC v. Amino Tech. LLC*, No. 2:13-cv-1670-HRH, 2014 WL 3864658 (D. Ariz. Aug. 6, 2014) (citing *DeRubeis* in determining that a plaintiff must identify its trade secrets with reasonable particularity to ensure the plaintiff is not on a fishing expedition); *Powerweb Energy, Inc. v. Hubbell Lighting, Inc.*, No. 3:12CV220 (WWE), 2012 WL 3113162, at *1 (D. Conn. July 31, 2012) (citing *DeRubeis* and noting one policy in favor of early identification of trade secrets is that it "prevents [the] plaintiff from tailoring its cause of action based on the discovery received" due to the risk that "a plaintiff, seeking to disadvantage the defendant competitor,

- 16 -

might make broad and unspecified charges of misappropriation, obtain full disclosure of the defendant's processes, and then tailor its own claims accordingly"); *Switch Commc'ns Grp. v. Ballard*, No. 2:11-cv-00285-KJD-GWF, 2012 WL 2342929, at *4 (D. Nev. June 19, 2012) (citing *DeRubeis* when stating that "requiring the plaintiff to state its claimed trade secrets prior to engaging in discovery ensures that it will not mold its cause of action around the discovery it receives").

Given the general descriptions that Alcoa has made about its alleged trade secrets, UAC has legitimate concerns that Alcoa is not actually pursuing a claim, but hoping to find some basis for one, and that it will try to tailor its claims to fit whatever information UAC may provide in discovery. Indeed, the fact that Alcoa filed suit last November and claimed to need an injunction to prevent UAC from exploiting Alcoa's trade secrets, and yet seven months later still has done nothing to pursue injunctive relief, reflects quite clearly what we submit is really going on here: Alcoa has no evidence to support its claims and simply hopes to find some before having to commit to a position on what secrets are actually at issue. All indications are that Alcoa's purported need for injunctive relief is not genuine, but rather part of a strategy (a) to intimidate UAC—which it referred to in its Indiana Complaint as a "bit player"—so that UAC will not spend the time and effort

- 17 -

necessary to compete with Alcoa, and (b) to dissuade Boeing from awarding business to UAC for fear that, at some time in the future and on some basis that it cannot now articulate, Alcoa will be able to shut UAC down.  To prevent the potential for this kind of gamesmanship, the Court should grant UAC's Motion and require Alcoa to identify its alleged trade secrets before requiring UAC to engage in discovery related to Alcoa's trade-secret claims.

## CONCLUSION

Alcoa's general descriptions of its alleged trade secrets are not sufficient to put UAC on notice of the claims against it.  Without notice of the specific trade secrets that Alcoa claims have been misappropriated, UAC cannot determine what discovery may be relevant or formulate its defenses.  Furthermore, without knowing what Alcoa alleges UAC has misappropriated, UAC is concerned that Alcoa may obtain discovery of UAC's proprietary information and use the discovery process to tailor its claims to fit whatever information UAC may provide in discovery.

The Court can and should address these concerns and prevent unfair prejudice to UAC by ordering Alcoa to specify the trade secrets it claims are at issue pre-discovery.  By resolving this foundational issue now, rather than waiting for months while the parties serve discovery requests and then assert the

predictable objections, the Court will serve the interests of judicial efficiency and minimize the burdens on both parties.

Accordingly, UAC respectfully requests the Court to grant its Motion and order Alcoa to provide UAC, within two weeks of the entry of an appropriate protective order[6] and before discovery against UAC commences, a specific description of each of the alleged trade secrets that Alcoa contends UAC has misappropriated.

Respectfully submitted, this 29th day of May, 2015.

By:  /s/ *Michael J. Sullivan*
Michael J. Sullivan
Georgia Bar No. 142203
Julie E. Adkins
Georgia Bar No. 871742
WOMBLE CARLYLE SANDRIDGE &
RICE LLP
271 17th Street NW #2400
Atlanta, GA 30363
Telephone: (404) 872-7000
Facsimile: (404) 888-7490
msullivan@wcsr.com
jadkins@wcsr.com

AND

David K. Herzog
Katrina M. Gossett

---

[6] As noted, the parties agreed upon a protective order in the Indiana litigation, so there should be no impediment to their doing so here.

Matthew E. Burkhart
FAEGRE BAKER DANIELS LLP
300 N. Meridian Street
Suite 2700
Indianapolis, Indiana  46204
Telephone: (317) 237-0300
Facsimile: (317) 237-1000
david.herzog@faegrebd.com
katrina.gossett@faegrebd.com
matthew.burkhart@faegrebd.com
(*pro hac vice* applications pending)

AND

Randall E. Kahnke
Kerry L. Bundy
Tyler A. Young
FAEGRE BAKER DANIELS LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, Minnesota  55402
Telephone: (612) 766-7000
Facsimile: (612) 766-1600
randall.kahnke@faegrebd.com
kerry.bundy@faegrebd.com
tyler.young@faegrebd.com
(*pro hac vice* applications pending)

*Attorneys for Universal Alloy Corporation*

- 21 -

## CERTIFICATE OF TYPE SIZE AND STYLE

Counsel for Defendant hereby certifies that the size and style of the type used in the foregoing pleading is Times New Roman: 14 point.

 /s/ *Michael J. Sullivan*
Michael J. Sullivan
Georgia Bar No. 142203

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the

foregoing **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT**

**UNIVERSAL ALLOY CORPORATION'S MOTION FOR ORDER**

**REQUIRING PRE-DISCOVERY IDENTIFICATION OF TRADE**

**SECRETS** has been served upon the following counsel of record via CM/ECF:

> J. Allen Maines
> Mellori E. Lumpkin
> Holland & Knight LLP
> One Atlantic Center, Suite 2000
> 1201 West Peachtree Street
> Atlanta, Georgia 30309

The undersigned further certifies that a true and correct copy of the foregoing also

has been served by placing same in the United States postal service with proper

postage affixed thereto and addressed to the following:

> Thomas E. Birsic
> Melissa J. Tea
> James P. Angelo (*pro hac vice admissions pending*)
> K&L GATES LLP
> K&L Gates Center
> 210 Sixth Avenue
> Pittsburgh, Pennsylvania  15222

This 29th day of May, 2015.

- 23 -

/s/ *Michael J. Sullivan*
Michael J. Sullivan
Georgia Bar No. 142203