**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| ARCONIC INC., (f/k/a ALCOA INC.), | ) ) | |
|     Plaintiff/Counterdefendant, | ) | |
| | ) | Civil Action No.: |
| v. | ) | 1:15-cv-01466-ELR |
| | ) | |
| UNIVERSAL ALLOY CORPORATION, | ) ) | |
|     Defendant/Counterclaimant. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF ARCONIC'S
NOTICE OF OBJECTION AND MOTION TO EXCLUDE
UAC'S DEFENSES AND EVIDENCE RELATING TO REVERSE
ENGINEERING AND STATUTE OF LIMITATIONS**

NOW COMES Plaintiff Arconic Inc. ("Alcoa")[1] and respectfully files this Memorandum of Law in Support of Its Notice of Objection and Motion to Exclude Universal Alloy Corporation's ("UAC") Defenses And Evidence Relating To Reverse Engineering And Statute Of Limitations (the "Objection and Motion").

## INTRODUCTION

In its motion for summary judgment, UAC raises two new defense theories not disclosed during fact discovery. As a result, Alcoa was denied meaningful discovery on these defenses. It is axiomatic that undisclosed defenses and

---

[1] Arconic formerly was known as "Alcoa." Because many of the historical documents refer to "Alcoa," for simplicity Plaintiff is referred to as "Alcoa" herein.

evidence cannot be relied upon at summary judgment.

UAC moves for summary judgment on the grounds, ███████████

███████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████ [2]

It relies on theories, witnesses, and evidence it failed to disclose during fact

discovery.  Its nondisclosure is particularly egregious—UAC was under court

order to produce this information, and its witnesses testified contrary to UAC's

current reverse-engineering argument.

The cases recognize that this type of nondisclosure unfairly prejudices the

opposing party, violates the notions of fair play on which the discovery rules are

based, and takes a toll on the administration of justice.  The rules are there for a

reason, as are court orders.  Alcoa has been put in the position of responding to

these defenses without the benefit of discovery on them.  As many courts have

recognized, the proper remedy is excluding the evidence, not restarting discovery,

which would only reward wrongdoing.

## **BACKGROUND**

### A.    **The Evidence Shows Widespread Theft Of Alcoa's Trade Secrets Pervading UAC's Entire Manufacturing Process.**

Discovery has revealed UAC's systematic and wide-ranging theft of Alcoa's

---

[2]      The third basis, "reasonable efforts," is not at issue here.

trade secrets in all seven stages of the process for manufacturing stretch-form spar chords. Exhibit 1 to Declaration of Professor Thomas Eagar, filed contemporaneously herewith ("Eagar Decl."), at ¶ 6.  UAC hired several former Alcoa personnel (referred to as "Alcoans") with in-depth knowledge of Alcoa's trade secrets for manufacturing these spar chords.  Estremera Decl., Ex. 10 at 46-47. The extensive and detailed evidence, reviewed and summarized by Alcoa's expert, Professor Thomas Eagar,[3] demonstrates that ███████████████████ ████████████████████████████████████████████ ████████████████████.  Eagar Decl., Ex. 1 at ¶ 6, 90-297.  ████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████.  *Id.*  One of the most egregious examples—but far from the only one—is ███████████████████████ ████████████████████████████████████████████ ████████████████████.  *Id.* ¶128.  UAC used Alcoa's trade secrets to set up its own manufacturing process, and with it diverted approximately $200 million in sales from Alcoa.  Eagar Decl., Ex. 1; Colvin Decl. (Dkt. 124-1) at ¶¶ 7, 8, 25.

Until recently, UAC aggressively contended that it used no Alcoa

---

[3] Prof. Eagar is a chaired Professor of Materials Engineering at the Massachusetts Institute of Technology ("MIT"), where he has served as Co-Director of MIT's Manufacturing Program and Head of the Department of Materials Science and Engineering.  Eagar Decl., Ex. 1 at ¶ 1.  Prof. Eagar's expert report is verified as his testimony in his Declaration. Eagar Decl. at ¶ 1.

information whatsoever in developing its manufacturing process.  At the outset, it refused to even participate in discovery as to six of the seven stages of its manufacturing process on the grounds it was innocent and there was "no evidence" that UAC used Alcoa information.  Dkt. 116 at 1 ("The reason is because there is no evidence."); *id.* at 16-20.[4]  Its CEO testified with striking clarity, asserting that

████████████████████████████████████████████

███████████—also testifying, ████████████████████████████

Estremera Decl., Ex. A (Poth Dep.) at 145:21-147:2.  UAC even went so far as to file an antitrust counterclaim against Alcoa for "sham" litigation on the grounds that there is no way UAC could have used Alcoa's trade secrets.  UAC Am. Answer and Countercl. (Dkt. 159) at ¶ 23 ("[n]o objectively reasonable litigant" could realistically expect success on Alcoa's claims); ¶ 41 ("UAC did not acquire or need any alleged trade secrets of Alcoa.").  UAC took these positions knowing that ██████████████████████████████████████████████

████████████████████████████.[5]

---

[4]       The Court ultimately compelled UAC's participation in discovery as to all seven stages of the process.  Order (Dkt. 160) at 13-14.  *See* Section B, *infra.*

[5]       Alcoa is not suggesting that UAC's lawyers knew of ███████████████ ██████████████████ when UAC filed its sham litigation counterclaim or sought to avoid discovery that ultimately revealed ██████.  UAC, however, by definition was aware of it because these were UAC's own documents and actions.

4

**B.      The Court Compelled UAC To Produce Evidence As To How UAC Developed Its Manufacturing Process And UAC's Defenses.**

UAC's nondisclosure of these defenses and evidence is particularly noteworthy given that the Court compelled their production in its Order of September 9, 2016 (Dkt. 160).  Alcoa moved to compel after UAC refused to participate in any discovery as to, *inter alia*, the development of its alloy composition or any of its affirmative defenses for six of the seven stages of the spar chord manufacturing process.  Mot. to Compel (Dkt. 97-1) at 2.

The Court rejected UAC's arguments, holding that all seven stages of the process were relevant, including alloy composition.  It compelled UAC to participate in discovery as to:

> (1) the details of UAC's process for manufacturing the parts at issue; (2) how UAC developed that process; (3) the extent to which Alcoa's information was used to develop that process; and (4) UAC's defenses.

Dkt. 160 at 13-14.  In particular, the Court noted that "[w]hile UAC denies and vigorously disputes the merits of Alcoa's claims, the allegations of the amended complaint clearly encompass all of the component parts of the stretch-form process," which expressly included alloy composition.  *Id.* at 12-13; *see also* Am. Compl. (Dkt. 27) at ¶¶ 19-21.  As this makes clear, UAC's alloy composition has always been squarely at issue in this case; indeed, Alcoa's Trade Secret List, filed on December 2, 2015, also plainly identified alloy composition as part of the trade secret process.  UAC SMF Ex. QQ at ¶ 5.  In sum, the Court ordered UAC to

produce discovery on how UAC developed its process for manufacturing spar

chords, including alloy composition, and on UAC's defenses.

### C.      UAC Failed To Disclose Its Reverse Engineering Theory, Facts, And Witnesses During Discovery.

#### 1.      UAC Failed To Disclose Reverse Engineering In Response To Interrogatories And Initial Disclosures.

Alcoa's Interrogatory No. 19 (served in January 2016) asked UAC to:

[i]dentify and describe all bases for any affirmative defenses that
UAC asserts, including without limitation the identity of all persons
knowledgeable of such facts and any documents evincing such facts.

Estremera Decl., Ex. B at 9.  In response, ███████████████████████████

████████████████████████████████████████████████████████████████████

██████.  Estremera Decl., Ex. C at 8-14.

Interrogatory No. 10 (served in June 2015) asked UAC to provide details on

its alloy composition.  Estremera Decl., Ex. D at 10-11.  Interrogatory No. 12 (also

served in June 2015) asked UAC to provide details as to the "research and

development process undertaken by UAC for manufacturing" the parts at issue in

this case, including the identity of the persons involved and the dates that research

and development took place.  *Id.* at 11.  On four separate occasions, UAC

responded to these interrogatories ████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████      Estremera Decl.,

Ex. E at 24, 29; Ex. F at 27, 38; Ex. G at 30, 41; Ex. H at 33, 44. **Indeed, UAC

went so far as to claim in briefing to the Court that █████████████████████

Opp'n to Mot. to Compel (Dkt. 141) at 8.[6]  It now takes exactly the opposite

position—██████████████████████████

██████████████████████████████████████████ they

also repeatedly claimed—as did UAC's pleadings and briefings before the Court—

that UAC had independently developed its process "*without access to or use of any

alleged confidential proprietary, or trade secret information of Alcoa*."  Answer

(Dkt. 12) at 28 (First Affirm. Defense); Mot. for Order on Trade Secrets (Dkt. 20-

1) at 4; Answer to Am. Compl. (Dkt. 39) at 21 (First Affirm. Defense); Am.

Answer and Countercl. (Dkt. 146-1) at 23 (First Affirm. Defense) (emphasis

added); Estremera Decl., Ex. I at 7 (Initial Disclosures), Ex. C at 8 (Interrogatory

No. 19).[7]  This is remarkable, because ██████████████████████

██████████████████████, Estremera Decl., Ex. J (Colt Dep.)

at 76:25-78:4; Estremera Decl., Ex. K (Micheau Dep.) at 237:7-17, and Alcoa's

"alleged" trade secret information indisputably includes alloy composition.  UAC

SMF Ex. QQ at ¶ 5 (Trade Secret List).

---

[6]     In this briefing, UAC sought to shut down all discovery into the alloy
composition, as well as five other stages of its manufacturing process.  Dkt. 141.

[7]     UAC similarly contended that it had no use or need for any of Alcoa's
"supposed 'secrets'" (*e.g.*, Joint Disc. Statement (Dkt. 314) at 5), and suggested
that ████████████████████ did not matter with its spar chord process.
UAC Opp'n to Mot. to Compel (Dkt. 116) at 12 (citing Affidavit of Iulian
Gheorghe (Dkt. 117.1)).

Finally, UAC was required to state in its Initial Disclosures a detailed factual basis for its defenses.  L.R. 26(B)(1); App. B-5 (Initial Disclosures form).  UAC failed to identify reverse engineering or any of the facts or witnesses for this new defense, nor did it ever amend those responses.  Fed. R. Civ. P. 26(a)(1)(A)(i) (requiring, *inter alia*, "the name … of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support claims or defenses …."); Estremera Decl., Ex. I at 2. Instead, its Initial Disclosures stated that UAC developed its stretch forming process "*without using anything that belongs to Alcoa*."  *Id.* (emphasis added).

## 2.     UAC Failed To Disclose Reverse Engineering At Depositions.

When Alcoa questioned UAC's Rule 30(b)(6) witness regarding alloy composition, ███████████████████████████████████████ ████████████████████████████████████.  Estremera Decl., Ex. J (Colt Dep.) at 76:25-78:4.  He testified instead that ████████████████████ ████████.  *Id.* at 79:21-80: 2; 82:15-24; 463:12-464:15.  Indeed, when asked about a suspicious UAC document ██████████████████████████████ ███████████████████████████████████████ ███████████████████████████████████ ████████████████████████████████[8] *Id.* at 374:19-379:7

---

[8]     Colt's testimony as UAC's 30(b)(6) witness, including "I don't know" answers, is binding.  *See Monopoly Hotel Grp., LLC v. Hyatt Hotels Corp.*, 2013 WL 12246988, at *7 (N.D. Ga. June 4, 2013). (holding that a party cannot argue at

(emphasis added).  The 30(b)(6) witness even claimed that ███████████
███████████████████████████████████████████████.  *Id.*at 377:42-378:2.
This deposition testimony directly contradicts UAC's current position, █████
███████████████████████████████████████████████
███████████████████████████████████████
███████████████████████████.  *See* UAC SMF[9] ¶
263 (citing Eagar Rpt. ¶ 207 (███████████████████████████
███████████████████)).

Dangerfield in turn ███████████████████████████████.
He testified that █████████████████████████████████████.
Estremera Decl., Ex. BB (Dangerfield Dep.) at 136:16-25.  And when asked
whether █████████████████████████ he said: ██████████████████
*Id.* (emphasis added).

The same witnesses have now changed their testimony to support UAC's
new claim: the 30(b)(6) witness (Colt) verified the amended interrogatory
responses █████████████████████████████, Estremera
Decl., Ex. X at 16, and Dangerfield signed a declaration in support of summary
judgment claiming █████████████████████████████, *see* UAC

---

trial for a position contrary to its 30(b)(6) testimony); *Wausau Underwriters Ins.
Co. v. Danfoss, LLC*, 310 F.R.D. 683, 687 (S.D. Fla. 2015) (binding corporation to
30(b)(6) deponent's responses, including "her 'I don't know' answers").

[9] All citations herein to "SMF" refer to UAC's Statement of Material Facts
To Which There Is No Genuine Issue To Be Tried (Dkt. 446-2).

SMF, Ex. M, Dangerfield Decl.

Further, UAC's CEO offered the following, broad, unqualified statement:

███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████

Estremera Decl., Ex. A (Poth Dep.) at 145:21-147:2 (emphasis added); *see also id.*
at 10:9-11:4, 56:19-24, 102:25-104:8, 147:20-148:2, 148:3-10, 152:7-16.

### 3.   <u>UAC Shifts Course And Raises New Defenses.</u>

The evidence ultimately dislodged in discovery ████████████████
███████████████████████████████████████████████████
███████████████████████████████. Unable to continue making its
non-use arguments on summary judgment, UAC came up with a brand new theory:
it claims that █████████████████████████████████████
████████████████████████████████████████.

This new defense was not disclosed until more than four months after the
close of fact discovery.  Fact discovery first closed on October 31, 2018.
Scheduling Order (Dkt. 288) at 3.  That day, UAC filed an eleventh hour
"emergency" motion to extend fact discovery.  Emergency Motion (Dkt. 308-1).  It
based its motion on its own failure to produce documents during the discovery
period.[10] *Id.* at 1.  The Court granted this Motion, extending fact discovery to

---

[10]    While UAC also claimed the extension would afford Alcoa a chance
to take depositions on UAC's late produced documents (Emergency Mot. (Dkt.
308-1) at 8, 10; Reply (Dkt. 318) at 13), UAC refused to permit any further

December 20, 2018, and ruling: "Given that there have been several extensions of time for discovery in this case, no further extension of time for discovery will be permitted." Dkt. 324 at 2.

**Not until May 7, 2018 did UAC amend its discovery responses to disclose its reverse-engineering defense**, Estremera Decl., Ex. X, only after it was clear that Alcoa would get no further fact discovery.[11] This was approximately five months after the December 20 close of discovery. It was almost seven months since the last deposition had been taken (October 26, 2017) and the original fact discovery period had closed (October 31, 2017). It was six months after Alcoa submitted its expert report (November 14, 2017). Dkt. 288 at 3.

In its untimely amended response to interrogatory 19, UAC for the first time



. Estremera Decl. Ex. X (Am. Resp. to Interrog. 19).

. Incredibly, UAC's President, Colt, verified under oath these late interrogatory additions—even though he earlier testified as the 30(b)(6)

---

depositions of its witnesses within the extended discovery deadline. Estremera Decl., Exs. M, N, O, P, Q, R, S, T, U, V, and W.

[11]      One business day prior, UAC filed its rebuttal expert reports,
. In other words,
for some time (after all, the report took some time to draft), as did UAC since the inception of the case. But UAC did not bother to disclose it to Alcoa until after it decided to use this defense in its expert report.

witness that ██████████████████████████████████████████.
Estremera Decl., Ex. X at 16.

Moreover, even this late disclosure was incomplete: UAC failed to identify
Burke Reichlinger, a critical witness who now submits a declaration. MSJ (Dkt.
446); Reichlinger Decl. (Dkt. 446.91).  Nor was Reichlinger disclosed in UAC's
initial disclosures or interrogatory responses, Estremera Decl., Ex. G at 5-6, Ex. B
at 9.  Reichlinger was not disclosed at all until UAC's summary judgment motion.

In sum, UAC failed to disclose its defense of reverse engineering and the
supporting facts and witnesses until well after the close of discovery.

**D.     UAC Failed To Disclose Its Statute Of Limitations
         Theory And Evidence.**

Even when UAC added its new defense of reverse engineering five months
after discovery closed, it still failed to identify information or witnesses in support
or disclose the basis for the statute of limitations defense upon which it now relies.

Interrogatory No. 19 (quoted above) required UAC to identify and describe
all bases for any affirmative defenses that UAC asserts, including all persons with
knowledge and any supporting documents.  Estremera Decl., Ex. B at 9.  UAC's
response to Interrogatory 19 stated only that ███████████████████████
████████████████████████████████████████████████████████
███████████████████████████. Estremera Decl., Ex. X at 10.

UAC's summary judgment motion revealed for the first time a new theory
for its limitations defense: ██████████████████████████████████



████████████████████████████. MSJ (Dkt. 446).  Although

UAC ██████████████████████████████████████████

████████████████████████████████████ (UAC SMF

Ex. S), ████████████████████████████ (UAC SMF

Exs. DDD, FFF, GGG, HHH, and III).

## **ARGUMENT**

It is axiomatic that information not produced in discovery is inadmissible for

purposes of summary judgment and trial.  Rule 37(c) provides, in relevant part:

> **Failure to Disclose or Supplement.**   If a party fails to provide
> information or identify a witness as required by Rule 26(a) or (e), the
> party is not allowed to use that information or witness on a motion, at
> a hearing, or at trial, unless the failure was substantially justified or is
> harmless.

Fed. R. Civ. P. 37(c)(1).

Rule 26(a) in turn requires a party to make initial disclosures of information

and witnesses, and Rule 26(e) requires a party to "supplement or correct" a

response "to an interrogatory, request for production, or request for admission" "in

a timely manner if the party learns that in some material respect the disclosure or

response is incomplete or incorrect . . . ."  Fed. R. Civ. P. 26(a) & (e).

UAC's failure to disclose denied Alcoa meaningful discovery on the very

information and witnesses on which UAC now relies in its summary judgment

motion. Accordingly, the Court should exclude UAC's defenses of ███████

13

██████████ and statute of limitations and the supporting evidence and witnesses.[12]

## I.   COURTS ROUTINELY EXCLUDE LATE-IDENTIFIED WITNESSES, INFORMATION, THEORIES, AND DEFENSES.

Courts routinely exclude witnesses and information disclosed too late for meaningful discovery.  The whole point of discovery is to allow inquiry into the information and witnesses of the other side. *See, e.g.*, *Perfect Web Techs., Inc. v. Infousa, Inc.*, 2008 WL 725726, at *2 (S.D. Fla. Mar. 17, 2008); *SEC v. Art Intellect, Inc.*, 2013 WL 840048, at *11 (D. Utah Mar. 6, 2013) (stating that important discovery "should be obtained at the outset" because "it is likely that [the other party] will pursue different avenues of discovery" based on those early revelations).  Late disclosure of information, witnesses, and theories—particularly after depositions—undermines this purpose and warrants exclusion at summary judgment or trial. *See, e.g.*, *Rigby v. Philip Morris USA Inc.*, 717 F. App'x 834, 835–36 (11th Cir. 2017); *Romero v. Drummond Co.*, 552 F.3d 1303, 1321 (11th Cir. 2008); *McKesson Info. Sols. LLC v. Epic Sys. Corp.*, 2009 WL 10636314, at *3 (N.D. Ga. Feb. 10, 2009).

The Eleventh Circuit has regularly affirmed the exclusion of late-disclosed

---

[12] Although not at stake in this motion, UAC also withheld almost 100,000 documents subject to the Court's September 9, 2016 Order, producing them only *after* all depositions had occurred.  Alcoa reserves the right to seek to exclude these late-produced documents if UAC intends to rely on them at trial. *See, e.g.*, *McKesson*, 2009 WL 10636314 at *3 (holding that producing documents in "the final days of fact discovery" prejudiced the other party and required exclusion).

fact witnesses.  *See, e.g.*, *Cooley v. Great S. Wood Preserving*, 138 F. App'x 149, 161 (11th Cir. 2005); *Romero*, 552 F.3d at 1322.  In *Rigby*, the court excluded witnesses first disclosed on summary judgment because the plaintiffs "failed to offer a reason why they could not have discovered earlier and timely disclosed the identities of the affiants and the subjects of the information they possessed." *Rigby*, 717 F. App'x at 835-36.  Notably, the Court excluded these witnesses even though the defendants knew them as figures in their industry, because "Defendants did not know that Plaintiffs intended to use information [the witnesses] possessed." *Id.*; *see also Nance v. Ricoh Elecs., Inc.*, 381 F. App'x 919, 922 (11th Cir. 2010) (affirming exclusion of fact witnesses familiar to the other party); *Thompson v. Norfolk S. Ry. Co.*, 2015 WL 1509483, at *5 (N.D. Ga. Mar. 31, 2015) (excluding testimony in spite of offer for a deposition, and awarding attorney's fees).

For the same reasons, a party cannot assert a new theory or defense after the close of discovery: when a defendant "drastically change[s] its position late in the game," it "puts the Plaintiffs at a serious disadvantage because they are unable to investigate the credibility of this new theory."  *Travelers Indem. Co. of Conn. v. Philips Med. Sys*, 2009 WL 10669549, at *1 (S.D. Fla. Feb. 26, 2009); *see also Parrish v. Freightliner, LLC*, 471 F. Supp. 2d 1262, 1269 (M.D. Fla. 2006) (excluding expert testimony about a "new theory" of liability because the *theory* was not disclosed in response to an interrogatory); *INVISTA N. Am. S.a.r.l. v. M & G USA Corp.*, 2013 WL 3216109, at *5 (D. Del. June 25, 2013) (excluding a

15

declaration attached to a motion for summary judgment asserting a new defense not disclosed in interrogatories); *ELCA Enters., Inc. v. Sisco Equip. Rental & Sales, Inc.*, 53 F.3d 186, 190 (8th Cir. 1995) (affirming exclusion of new damages theory when it had not been disclosed in interrogatory responses).  In *Jones*, the court refused to consider a new theory of liability in the plaintiff's opposition to summary judgment where it was not disclosed in response to an interrogatory. *Jones v. E.R. Snell Contractor, Inc.*, 333 F. Supp. 2d 1344, 1349 (N.D. Ga. 2004). Similarly, courts routinely exclude documents and information disclosed too late for meaningful discovery.  *E.g.*, *McKesson*, 2009 WL 10636314, at *3 (excluding documents and evidence produced a week *before* the close of discovery).

## II.   UAC'S DEFENSE OF REVERSE ENGINEERING AND THE ASSOCIATED INFORMATION AND <u>WITNESSES SHOULD BE EXCLUDED.</u>

### A. <u>UAC Failed To Disclose The Defense Of Reverse Engineering.</u>

As discussed above, UAC failed to disclose its defense of reverse engineering, facts related to reverse engineering, or any witnesses until well after the close of fact discovery.  See *supra* at 2-13.  Further, UAC did not disclose even the *existence*—let alone the relevance—of a key witness on this defense, Reichlinger. UAC failed to identify Reichlinger in its initial disclosures, Estremera Decl., Ex. I at 5, and in interrogatory responses, even when amended after the close of discovery, Estremera Decl., Ex. X at 7-8.

Moreover, UAC actively misled Alcoa.  UAC's statements in pleadings,

discovery, and briefing all indicated that UAC was *not* asserting such a defense.[13]

Its pleadings and verified interrogatory responses repeatedly stated that UAC had

independently developed its process without Alcoa information. Answer (Dkt. 12)

at 28; Mot. for Order on Trade Secrets (Dkt. 20-1); Answer to Am. Compl. (Dkt.

39) at 21; Am. Answer and Countercl. (Dkt. 146-1) at 23; Estremera Decl., Ex. C

at 8, Ex. E at 24, 29, Ex. F at 27, 38, Ex. G at 30, 41, Ex. H at 33, 44.  These

representations directly contradict a reverse-engineering defense: to reverse-

engineer, UAC needed a sample of Alcoa's alloy, which is plainly Alcoa

information.  ██████████████████████████████████████████

████████████████████████████.  UAC SMF at ¶¶ 256-282.  UAC's prior

unqualified denials—such as ███████████████████ Dkt. 141 at 8)—are

impossible to square with its new position that ██████████████████

██████████████████.  UAC continued to hide the ball by responding

repeatedly to discovery about alloy composition, research and development of its

process, and its defenses, without ever mentioning reverse engineering.

　　　　Whether or not UAC's actions were intentional, however, the simple fact is

that UAC failed to disclose during discovery its defense of reverse engineering and

relevant witnesses and information.

---

[13]　　Moreover, UAC's Answer did not, and still does not, plead reverse engineering as an affirmative defense.  Dkt. 146-1 at 23-24.

### B. **UAC's Late Disclosure Was Neither Justified Nor Harmless.**

Rule 37(c) bars the use of late-disclosed information and witnesses unless the late disclosure was substantially justified or harmless.  Fed. R. Civ. P. 37(c); *Mitchell v. Ford Motor Co.*, 318 F. App'x, 821, 824 (11th Cir. 2009). The Eleventh Circuit's test for "whether the failure to disclose was justified or harmless" considers "the non-disclosing party's explanation for its failure to disclose, the importance of the information, and any prejudice to the opposing party if the information had been admitted." *Lips v. City of Hollywood*, 350 F. App'x 328, 340 (11th Cir. 2009); *see also Cooley*, 138 F. App'x at 161; *Romero*, 552 F.3d at 1321 (noting that the importance of the information and prejudice can "outweigh" the proffered justification).  A party is prejudiced when, *inter alia*, it does not "have the opportunity to depose [late-disclosed witnesses] and conduct thorough discovery." *Nance*, 381 F. App'x at 923.

UAC has no valid justification for its nondisclosure.  It possessed all of the relevant information, knew all the witnesses, and was subject to a Court Order to produce this information in 2016.  Indeed, ███████████████████████████████ ███████████████████████. *E.g.*, Estremera Decl., Exs. Y and Z.

UAC's failure to disclose prejudiced Alcoa.  Alcoa must now respond to this defense without adequate discovery.  Alcoa did not get to depose Reichlinger, or to ask a dozen other witnesses about the defense. *See Nance*, 381 F. App'x at 923 (excluding witnesses where the other party "did not have the opportunity to depose

them and conduct thorough discovery").  And as set forth in Alcoa's summary judgment opposition, the evidence upon which UAC relies is highly suspicious and full of holes.  Alcoa has lost the opportunity to present evidence on this subject because the information is almost exclusively in UAC's control.  Alcoa did not have the opportunity to pursue written discovery, obtain the production of documents, or conduct depositions on matters such as Boeing's provision of the sample (in violation of its nondisclosure agreement with Alcoa), the evidence (if any) of testing of the sample including test reports and communications, how this fits into UAC's development of its alloy composition for spar chords, and why UAC hid this whole process.

The lack of discovery on this defense is indisputably important, because UAC now relies on it as a primary argument in its MSJ.  *See Lips*, 35 F. App'x at 340 (requiring courts to consider "the importance of the [late-disclosed] information").  If, as UAC asserts, this evidence warrants summary judgment, then UAC's failure to disclose it when Alcoa would have been able to investigate cannot be harmless.

This is particularly true because the failure to disclose this evidence was a violation of the Court's September 2016 Order compelling UAC's participation in discovery.  Order (Dkt. 160) at 13-14.  Rule 37(b) states that if a party fails to obey an order to provide or permit discovery, the Court may, *inter alia*, prohibit the disobedient party from supporting its defense or from introducing designated

matters into evidence.  Fed. R. Civ. P. 37(b).

Furthermore, reopening discovery would not be an appropriate or adequate remedy.  It would require substantially restarting the whole process, including new written discovery, production of documents, and depositions of the dozens of witnesses already deposed, as well as new witnesses.  Alcoa made choices about what theories, witnesses, and avenues of inquiry to pursue based on what UAC chose to present in discovery.  Allowing discovery to restart, or even reopen, would reward UAC's wrongdoing.  As many courts have recognized, if the only remedy for nondisclosure is the possibility of reopening discovery when caught, parties are incentivized to flout the rules.  *See, e.g.*, *Bradford v. Carter*, 2011 WL 13175669, at *5-6 (N.D. Ga. Sept. 29, 2011), aff'd, 481 F. App'x 517 (11th Cir. 2012) (finding that permitting the plaintiff to file a new expert report "would reward plaintiff for his repeated willful transgressions and would confer on him an enormous strategic advantage" and "would substantially prejudice the defendants"); *First Coast Energy, LLP v. Mid-Continent Cas. Co.*, 2015 WL 5159140, at *6 (M.D. Fla. Sept. 2, 2015) (noting that "the lesser sanction of reopening discovery … would reward … bad behavior without remedying the prejudice it has caused" and that "[d]eterrence is also particularly important here"); *Endurance Am. Specialty Ins. Co. v. Lance-Kashian & Co.*, 2011 WL 4375264, at *5 (E.D. Cal. Sept. 19, 2011) ("Reopening discovery would serve to reward the

insureds' withholding disclosure of required information").[14]

In sum, UAC's failure to disclose reverse engineering warrants exclusion of Reichlinger as a witness, of Dangerfield's declaration, and of UAC's defense of reverse engineering pursuant to Rule 37(c) and Rule 37(b).

## III. THE COURT SHOULD EXCLUDE UAC'S STATUTE OF LIMITATIONS DEFENSE AND THE ASSOCIATED EVIDENCE AND WITNESSES.

While UAC pled the statute of limitations as a defense (Dkt. 146-1), its only stated basis during fact discovery was that ████████████████████████ ████████████████████. As set forth in the background section *supra*, UAC's interrogatory responses stated that ████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████. Ex. X to Estremera Decl. at 10.

In its summary judgment motion, UAC revealed for the first time a new theory for its limitations defense: ████████████████████████████ ████████████████████████████████. UAC also for the first time

---

[14]     *See also Astrazeneca AB v. Mut. Pharm. Co.,* 278 F. Supp. 2d 491, 507 (E.D. Pa. 2003), aff'd sub nom. *Astrazeneca AB, Aktiebolaget Hassle, KBI-E, Inc. v. Mut. Pharm. Co*., 384 F.3d 1333 (Fed. Cir. 2004) (excluding late-produced evidence rather than reopening discovery); *Paone, Inc. v. Oberholtzer,* 2007 WL 2973587, at *4 (N.D.N.Y. Oct. 9, 2007) ("[T]o reopen discovery at this late date would be very prejudicial to Plaintiff and would reward Defendants' dilatory and unjustified conduct.").

relied upon ██████████████████████████████████
████████████████████████.

This evidence does not in fact show that Alcoa knew *how* UAC was developing its heavy-press process, only that UAC *was* developing it. *See* Alcoa's Opposition to UAC's MSJ. But putting this flaw aside, UAC did not disclose this theory in discovery, and ███████████████████████████████
███████████████████████████████████████████████
████████████████████████████. *See Rigby*, 717 F. App'x at 835-36; *Nance,* 381 F. App'x at 922.

UAC's failure to disclose is not substantially justified. UAC was aware of all relevant facts. It had access to the relevant witnesses, who had done the work in question for UAC and were represented by UAC's counsel (with the exception of Pahl).[15] There is no reason UAC could not have investigated its own defense and timely informed Alcoa of its basis.

UAC's failure to disclose was not harmless: Alcoa chose what lines of inquiry to pursue based on the information provided by UAC. Alcoa did not have the opportunity to depose Pahl or Fultz—or Sigler or Scaglione—on this issue or on these documents. *See, e.g.*, *Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1375 (Fed. Cir. 2008) (holding there was prejudice when "the time for depositions

---

[15]    UAC still had access to Pahl, however, since he had sent UAC correspondence offering to provide any help possible. Estremera Decl., Ex. AA.

had passed").  Alcoa was not able to pursue written discovery, document

production, or depositions on ██████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████.  Alcoa now

has to respond to this defense without having had the relevant discovery.  And this

defense is plainly important, since UAC argues most if not all of Alcoa's claim

should be barred.

Accordingly, the Court should exclude UAC's statute of limitations defense,

including supporting testimony and information, based on the theory that Alcoa

knew what work Sigler and Scaglione were doing at UAC.

## CONCLUSION

Alcoa respectfully requests that the Court exclude from consideration in

deciding UAC's summary judgment motion: (1) UAC's defense of reverse

engineering, and the two declarations (Dangerfield and Reichlinger) filed in

support of that defense; and (2) UAC's statute of limitations defense, including the

associated testimony and information, based on the theory that ████████████

██████████████████████████████████.

Alcoa also requests its fees and costs incurred in bringing this Notice and

Motion under Rule 37, which permits the Court to order "payment of the

reasonable expenses, including attorney's fees, caused by the failure" to provide

information or identify a witness.  Fed. R. Civ. P. 37(c)(1)(A).

Dated: August 20, 2018                    Respectfully Submitted,

                                          */s/ Courtland L. Reichman*

                                          Courtland L. Reichman
                                          (Georgia Bar No. 599894)
                                          Sarah Jorgensen
                                          (Georgia Bar No. 541130)
                                          McKool Smith PC
                                          One Atlantic Center
                                          1201 W. Peachtree Street NW
                                          Suite 2300
                                          Atlanta, GA 30309
                                          Telephone: (404) 920-1851
                                          creichman@mckoolsmith.com
                                          sjorgensen@mckoolsmith.com

                                          Attorneys for Plaintiff/Counterdefendant
                                          Arconic Inc.

## CERTICATE OF COMPLIANCE WITH LR 5.1(C)

This is to certify that the foregoing document was prepared using Times New Roman 14 point font in accordance with LR 5.1(C).

Dated: August 20, 2018                    */s/ Courtland L. Reichman*
                                          Courtland L. Reichman

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that I have electronically filed the above document with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to all registered counsel.

Dated: August 20, 2018                    */s/ Courtland L. Reichman*
                                          Courtland L. Reichman