# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| ARCONIC INC. (f/k/a Alcoa Inc.), | ) | |
| | ) | |
| Plaintiff/Counterdefendant, | ) | |
| | ) | Civil Action No.: |
| v. | ) | 1:15-cv-01466-ELR |
| | ) | |
| UNIVERSAL ALLOY CORPORATION, | ) | Jury Trial Requested |
| | ) | |
| Defendant/Counterclaimant. | ) | |

## ARCONIC'S BRIEF REGARDING UAC'S SUBSTITUTE EXPERT

Pursuant to the Court's Order of May 7, 2021 (Dkt. 777), Arconic Inc. ("Arconic") respectfully submits this brief regarding the substitute expert of Universal Alloy Corporation ("UAC") after the unfortunate passing of its technical expert, Dr. Michael E. Stevenson.

### I. INTRODUCTION

UAC has requested the Court allow UAC to replace its previous technical expert witness, Stevenson, with a new witness who will submit a new expert report. Arconic recognizes that the tragic passing of Stevenson necessitates replacing him as an expert in this case, and Arconic does not oppose a substitution.

1

Arconic does not believe, however, that a new expert report is necessary. While UAC should not be forced to use a particular expert, neither should Arconic be put at a disadvantage, at this late stage of the proceedings, by UAC's exercise of that choice. Therefore, in balancing these concerns, the cases indicate that a substitute expert be strictly limited to the facts, theories, methodologies, and opinions in the existing report, with the goal of putting the parties in the same position as they would have been had the original expert been available. That is particularly true where, as here, the previous expert reports were the subject of extensive litigation, including the exclusion of certain theories and evidence, summary judgment, *Daubert* motions, an extensive Proposed Pretrial Order, and trial preparations.

Given this law, it is unclear why UAC would seek to submit a new expert report that must be limited to the previous report. The previous expert's consulting firm (ESI) put in over 10,000 hours and almost four years preparing that report, which spans hundreds of pages and considered almost 8,000 documents. Redoing that work to reach the same conclusions, based on the same facts and theories, would seem unnecessary, particularly when the new expert could be impeached with the prior report. The most practical solution would be to have the new expert (whether from the same consulting firm or outside) adopt the existing report; this

would eliminate disputes over whether the new report was strictly confined to the original report and would avoid prejudice to Arconic.  Indeed, when Arconic's damages expert had to be replaced based on a serious medical condition, UAC insisted – and Arconic agreed – that the new expert must adopt the prior expert's report verbatim.

If, however, UAC submits a new report, Arconic should be permitted an opportunity to object after reviewing the report and deposing the witness, to the extent the facts, theories, methodologies, or opinions go beyond the existing report.  UAC would bear the risk that portions, or even all, of its new report could be struck if beyond the facts, theories, and opinions in the prior report.  UAC should not be heard to claim prejudice if some or all of the new report is struck, or to then seek to return to the prior report (this is not a free "second bite of the apple").  If UAC goes down that path, it should be a risk that it alone assumes.

Finally, while Arconic understands that UAC can select an expert of its own choosing, Arconic notes that the firm UAC hired to do the report, ESI, has 160 engineering experts, over 12 of whom worked on this report, and one of whom (Matthew Kenner) also signed the report.  If UAC elects an expert outside of ESI (it has not identified its replacement expert yet), Arconic respectfully requests the

opportunity to object if there is an issue. Arconic understands that it will have the opportunity to depose the new expert, and file a motion to exclude if needed.

## II. BACKGROUND

This case was filed over six years ago, on April 30, 2015, and is finally ready for trial pending the Court's schedule. Dkt 1.[1]

More than three years ago, UAC submitted an expert report by a company called Engineering Systems Inc. ("ESI") intended to rebut the report issued by Arconic's technical expert, Dr. Thomas W. Eagar. According to its website, ESI was founded in 1987, has 17 offices in 14 states with "more than 160 in-house technical personnel, including licensed Professional Engineers (P.E.'s) with advanced degrees (both M.S. and Ph.D.), litigation experience, and industry expertise[.]" Ex. 1 (ESI website screenshot).

The 2018 ESI expert report in this case was signed not only by Stevenson, but also by another ESI employee named Mathew Kenner. Stevenson was deposed in June 2018. He testified that ESI was first retained in 2014, had more than a dozen staff members work on the case across as least 5 offices, spent

---

[1] At the recent hearing, the Court indicated that its 2021 trial dates are currently filled with other cases. If a case settles or a trial date opens up, Arconic respectfully requests that the Court consider this case for trial at that time.

4

approximately 10,000 hours on the matter and billed UAC approximately $2 million. Dkt. 735-3 (Stevenson Depo. Tr.) at 18:5-18, 26:9-14, 29:23-30:1, 33:23-25, 34:9-15. Stevenson brought 50-60 binders to his deposition that contained documents cited in the lengthy ESI Report and which were not even "the totality of the documents" that he relied on in forming his opinion. *Id.* at 35:14-25. The authors of the report (Stevenson and Kenner) considered almost 8,000 documents in preparing it. *See* Dkt. 722-5 (ESI Report).

Stevenson explained that the first person on the case was his co-signer, Kenner. Dkt. 735-3 at 30:16-21. Kenner is a Senior Managing Consultant and a Director at ESI. He received an M.S. in Aeronautical Engineering from The Ohio State University in 1995 and is a licensed engineer in Georgia. Ex. 2 (ESI website screenshot). Kenner was selected to work on the UAC file due to his background, particularly in aerospace. Dkt. 735-3 (Stevenson Depo. Tr.) at 31:3-13.

Kenner and Stevenson managed day-to-day aspects of the case and "were both heavily involved." *Id.* at 31:22-33:3. Of the 10,000 hours ESI billed to the matter, Stevenson spent approximately 1,000 hours, and Kenner spent roughly 1,500 hours. *Id.* at 34:1-8. While Stevenson did not attend any depositions (other than his own), Kenner attended several. *Id.* at 40:3-12.

According to Stevenson, Kenner had "been involved in this project from its inception. I think **he's seen everything I've seen**. And he is what, in our terms, would be a second engineer. So in other words, he has to understand, review, and approve any of the public work product that we would release as kind of a second sign-off; and that's what he did." *Id.* at 50:20-51:1 (emphasis added). Kenner is "**concurring with all of this work**, would be the way [Stevenson] would term it." *Id.* at 51:5-6 (emphasis added).

Arconic's counsel and technical expert, Eagar, spent countless hours reviewing and analyzing the ESI report to prepare for Stevenson's deposition and ultimately to move to exclude certain of Stevenson's opinions. Specifically, in 2020, Arconic moved to exclude Stevenson's conclusion of no trade secret misappropriation based on his faulty "null hypothesis" methodology. Dkt. 721. The Court agreed that Stevenson "did not conduct the rigorous testing required to employ the null hypothesis methodology" and that he "provided no statistical probabilities to support his conclusion that Plaintiff's misappropriation claim must be rejected." Dkt. 777 at p. 36. Consequently, in March of this year, the Court partially granted Arconic's Motion To Exclude Stevenson. Dkt. 774.

Arconic learned from UAC in April the sad news that Stevenson unexpectedly passed away. During the recent telephone conference with the Court,

Arconic learned for the first time that UAC has hired a new expert (albeit still not disclosed) to replace Stevenson and that UAC anticipates the new expert will issue a new report "within the metes and bounds" of Stevenson's original report to the extent not excluded by the Court's recent order.

It bears noting that, earlier in the case, one of Arconic's testifying experts, Robert Barnett, also suffered significant medical issues that prevented him continuing to work on the case after issuing his report on Arconic's damages.[2] When Arconic learned of Barnett's medical issues prior to expert depositions, Arconic proposed that one of his colleagues (Jim Bergman) replace him. Like Kenner, Bergman had reviewed all pertinent evidence, had worked on the report with Barnett, and concurred with Barnett's opinions, and, therefore, adopted Barnett's opinions as his own. UAC stated it would not object to the substitution with the "understanding" that "Mr. Bergman is adopting Mr. Barnett's report without any changes." Ex. 3.

---

[2] At the recent hearing, Arconic was under the impression that Barnett had passed away. That was incorrect. He suffered a serious medical condition that precluded his continuing role as an expert.

## III. ARGUMENT

Substitution of an expert after the disclosure deadline may be permitted upon a showing of good cause or when the failure to disclose was "substantially justified." Fed. R. Civ. Proc. 16(b) and 37(c)(1). Here, there is no debate that substitution is necessary and appropriate. But "[t]he purpose of allowing substitution of an expert is to put the movant in the same position it would have been in but for the need to change experts; it is not an opportunity to designate a 'better' expert who holds differing or more advantageous opinions than the first expert." *Bui v. City & Cnty. of S.F.*, No. 11-cv-04189-LB, 2018 U.S. Dist. LEXIS 16017, at *5 (N.D. Cal. Jan. 31, 2018) (citations and quotation marks omitted);[3] *Adams v. Cooper Indus.*, No. 03-476-JBC, 2007 U.S. Dist. LEXIS 99057, at *8 (E.D. Ky. Apr. 5, 2007) (substitution "was intended to put the plaintiffs in as good a position as they would have held" had the original expert performed; "it was not intended to allow the plaintiffs to designate a superior [] expert after the deadline[.]").

---

[3] Courts permitting a substitute expert do, of course, allow the expert to express the opinions in the new expert's own language, *Morel v. Daimler-Chrysler Corp.*, 259 F.R.D. 17, 22 (D.P.R. 2009), but this can be accomplished through a deposition without the need for a redo of an expert report.

When substitution is allowed, courts generally limit the scope of the testimony that may be given by the substitute expert. "[T]he introduction of a substitute expert does not *ipso facto* permit [the party requesting the substitution] to escape from the concessions or admissions of [the previous expert]." *Morel*, 259 F.R.D. at 22.

Instead, courts regularly require the substituting expert to testify in strict conformance with a prior expert's report. *Doctor's Assocs., Inc. v. QIP Holder LLC*, No. 3:06-cv-1710(VLB), 2009 U.S. Dist. LEXIS 119949, at *13-15 (D. Conn. Dec. 23, 2009) (limiting a substitute expert's testimony at trial to "establishing the veracity and integrity" of the original expert and the conclusions reached in his original report).

This can most easily and naturally be accomplished by having the new expert adopt the report of the prior expert. *See e.g.*, *Park v. CAS Enters., Inc.*, No. CIV. 08CV385DMSNLS, 2009 U.S. Dist. LEXIS 108160, at *11 (S.D. Cal. Nov. 19, 2009) (allowing substitution if the expert adopted "the initial and rebuttal expert reports [of the original expert] in their entirety") (Stormes, Mag.); *Dunkin' Donuts Inc. v. N.A.S.T., Inc.*, No. 02 C 1272, 2005 U.S. Dist. LEXIS 16703, at *7 (N.D. Ill. Aug. 10, 2005) (allowing a substitute expert to provide testimony that "conform[ed] precisely" to the original expert's report "but *not* beyond, or in

contravention of, that report"); *Families Advocate, LLC v. Sanford Clinic N.*, No. 3:16-cv-114, 2019 U.S. Dist. LEXIS 234219, at *23 (D.N.D. Jan. 2, 2019) (replacement expert's testimony "limited to the facts and opinions" stated in the original expert report); *Martin v. Interstate Battery Sys. of Am.*, No. 12-CV-184-JED-FHM, 2016 U.S. Dist. LEXIS 109832, *7-8 (N.D. Okla. Aug. 18, 2016) (replacement expert limited "to the four-corners of Dr. Jacobson's expert report" and would "not be allowed to testify beyond the scope of what Dr. Jacobson's testimony would have been," or to "testify in a manner that is inconsistent with or contrary to Dr. Jacobson's opinions, and . . . must reach the same conclusions as Dr. Jacobson").

Moreover, where, as here, there is an expert company with multiple other experts who presumably could step in and testify on the existing report, courts have noted that this solution reduces the risk of prejudice and avoids potential disputes that a new outside expert would entail. *See, e.g.*, *Martin,* 2016 U.S. Dist. LEXIS 109832, at *5-6 (no prejudice where substitute expert "co-owner" of expert company, "provided substantial contributions" to the report, and his "name appears on the cover page"); *see also Doctor's Assocs.,* 2009 U.S. Dist. LEXIS 119949, at *13-15 (noting "the Court was unaware and did not contemplate that [the company

employer] could simply have assigned another expert to [the] case in order to support the conclusions reached in [the] original [expert's] report").

If, however, a party not only substitutes an expert but also is permitted to submit a new expert report, courts have confined the new expert's report and testimony "to the subject matter and theories already espoused by the former expert." *Bui*, 2018 U.S. Dist. LEXIS 16017, at *4 (citation and quotation marks omitted); *see, e.g., Roberts v. Galen of Va., Inc.*, 325 F.3d 776, 784 (6th Cir. 2003) (finding no error in district court requiring that substitute expert not "deviat[e] from [the prior expert's] conclusions"); *McDonald v. Wexford Health Sources, Inc.,* No. 09-CV-4196, 2016 U.S. Dist. LEXIS 47286, at *19 (N.D. Ill. Apr. 7, 2016) (noting that a new report may be permitted if it "falls within the scope of the original expert's report, addresses the same subject matter, and utilizes the same theories of liability in damages or expresses the original expert's opinions in their own language provided they address the same subject matter without meaningful change") (citation and quotation marks omitted); *Fujifilm Corp. v. Motorola Mobility LLC*, No. 12-cv-03587-WHO, 2014 U.S. Dist. LEXIS 162733, at *5-6 (N.D. Cal. Nov. 19, 2014) (barring expert from testifying "in any manner that is contrary to or inconsistent with [the prior expert's report]" to avoid giving party proposing new expert a "second bite at the apple").

Confining the opinions of a substitution expert to the initial report is essential to prevent prejudice to the opposing party: "It would be both prejudicial and unduly burdensome to . . . allow submission of new expert reports with new theories and opinions." *Park*, 2009 WL 4057888, at *2-3; *Morel* 259 F.R.D. 17 at 21 (stating "[p]rejudice may arise when a party is surprised with new theories of liability or a new subject matter after the deadlines for discovery have passed" but permitting substitution "[a]s long as there is no 'meaningful change in testimony'") (citation omitted).

Thus, if a party chooses to issue a new report when substituting experts, it does so at its own risk. Courts will strike or exclude reports or testimony that include new facts, theories, methodologies, opinions, or subject matter when a substitute expert has been permitted to issue his own report. *See, e.g.*, *Rouviere v. Depuy Orthopaedics, Inc.*, No. 1:18-CV-04814, 2020 U.S. Dist. LEXIS 220898, at *8 (S.D.N.Y. Nov. 24, 2020) (striking opinions from alternate expert report that were not "limited to the opinions already expressed [by the previous expert]" because "permitting Plaintiffs to expand the scope of their expert report to include [new] opinions . . . would constitute improper scope creep for a substitute expert") (Aaron, Mag.); *Bui*, 2018 U.S. Dist. LEXIS 16017, at *5-6 ("[Substitute] will not be permitted to offer (as he does now in the current version of his proposed report)

opinions different from or in addition to those that were offered by [the original expert]."); *Manildra Milling Corp. v. Ogilvie Mills, Inc.*, Civil Action Case No. 86-2457-S, 1991 U.S. Dist. LEXIS 14159, at *3-6 (D. Kan. Sep. 20, 1991) (striking new areas of testimony present in the replacement report).

"Allowing the defendants to profit from the unfortunate happenstance of [an expert's] death by retaining a new expert would be an improper boon to the defendants . . . . [His] death does not clear the slate and allow the defendants to find a better expert who can overcome the deficiencies outlined in [plaintiff's] *Daubert* motion." *McDonald*, 2016 U.S. Dist. LEXIS 47286, at *24; *see also Baumann v. Am. Family Mut. Ins. Co.*, 278 F.R.D. 614, 616 (D. Colo. 2012) (death of an expert "should not be a windfall" for the substituting party).

### A. UAC's Replacement Expert Should Adopt the ESI Report, Or UAC Should Bear The Risk Of A New Report Being Struck.

The cases are consistent that any replacement expert must be limited to the facts, theories, methodologies, and opinions of the original expert to prevent prejudice to the opposing party. Assuming UAC intends to abide by this rule, there is no sound reason why its expert should issue a new report. If no different in substance than the old report, a new report adds nothing. And if different, it is not permitted.

The Court and the parties have invested substantial time in the existing expert report. That report was issued in May 2018. Summary judgment motions and motions to exclude based on the report were filed in July 2018. The Court invested more than a year and eight months in resolving those motions, including the use of a Special Master. The parties submitted Daubert briefs based on that report in June 2020, which the Court invested nine months in resolving. Arconic has relied on the ESI rebuttal report for over three years now and used its analysis of the report to prepare for trial. Indeed, the parties undertook substantial work submitting a Proposed Pretrial Order on June 12, 2020, which comprised some 843 pages based on the then-completed record in the case, including the selection of potential exhibits and designated deposition testimony, all with the understanding that the ESI report laid out UAC's technical case.

It makes little sense for a new expert to attempt to recreate the extensive work already completed by ESI. At least twelve individuals at ESI spent approximately four years and over 10,000 hours, to the tune of $2 million, studying the case and preparing the report. These individuals, including Kenner, could help get the new expert up to speed (assuming UAC does not designate Kenner himself). The report itself is over two hundred pages long, and considered almost 8,000 documents. It is difficult to discern why UAC legitimately would want to

redo this work, or how it practically could, if only to produce a report with the same facts, theories, methodologies, and opinions, and especially when its new expert can be impeached with the previous report.

When the shoe was on other foot, UAC would only agree that Arconic's expert Bergman could be substituted for his colleague Barnett as the damages expert when Barnett became unexpectedly ill if Bergman adopted Barnett's report "without any changes." Ex. 3. The same should apply to UAC – especially now – when the parties are ready to try the case.

Permitting UAC's expert to issue a new report – rather than simply adopt the remainder of the ESI report – risks prejudice to Arconic and is expected to lead to further disputes. UAC's counsel stated on the Court telephone conference that UAC intends to file a new report that is "within the metes and bounds" of the original ESI report. However, within the "metes and bounds" is not the standard. Instead, any new report must not expand on, modify, or deviate from what remains of the ESI report. Permitting any changes at this late date would be particularly prejudicial given that Arconic successfully moved to exclude a central theory underlying the conclusions in the ESI report. UAC cannot use this opportunity to reengineer its technical case.

In all events, if UAC is permitted to submit a new report, that new report should be strictly limited to the facts, theories, methodologies, and opinions set forth in Stevenson's report. Further, Arconic should be permitted the opportunity to object to that new report if beyond the facts, theories, methodologies, and opinions in the first report. If the Court concludes after review of such an objection that the new report is beyond the old, those new portions would be struck. In this regard, the whole exercise of pursuing a new report may be for naught – and the risk of that exercise should fall on UAC. It would be straightforward for the new expert to adopt the existing report, requiring only a deposition of the new expert. But if UAC submits a new report, it should be assuming the risk that some or all of that new report will be struck, and that it would not be permitted to return to the previous report, ask for another do-over, or claim prejudice. It is difficult to understand why UAC would take such a risk, but if it goes down that path, it alone assumes the risk of that choice.

### B. If UAC Elects To Not Use An ESI Expert, Arconic Should Be Permitted The Opportunity To Object Once The New Expert Is Identified.

It seems that the most appropriate and practical course would be for UAC to use the other expert who signed the report, reviewed the same materials as Stevenson, did more work on the report than Stevenson, and reached the same

conclusions as Stevenson. Or alternatively it could use one of the other 160 experts at ESI.

If, however, UAC elects to use an expert outside of ESI, Arconic respectfully requests the opportunity to object should there be a basis to do so. Arconic understood from the hearing that UAC had already selected another expert, but to date that person has not been identified to Arconic. Arconic received word from one of its consulting experts in this case that UAC was attempting to hire him, so there may well be an objection depending on how UAC chooses to proceed.

## IV. CONCLUSION

For the foregoing reasons, Arconic respectfully requests that UAC's substitute expert be required to adopt the ESI report or at the very least be strictly confined to the facts, theories, methodologies, and opinions in the four corners of that report. In all events, Arconic respectfully requests the opportunity to depose the substitute expert and object should there be an issue.

Dated: May 14, 2021

Respectfully submitted,

*/s/ Courtland L. Reichman*

Caroline Walters
*(Admitted pro hac vice)*
Jennifer P. Estremera
*(Admitted pro hac vice)*
Kate M. Falkenstien
*(Admitted pro hac vice)*
Joachim B. Steinberg
*(Admitted pro hac vice)*
Sara Edelstein
*(Admitted pro hac vice)*
Leaf Williams
*(Admitted pro hac vice)*
REICHMAN JORGENSEN LEHMAN
& FELDBERG LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Tel: (650) 623-1401
Fax: (650) 623-1449
cwalters@reichmanjorgensen.com
jestremera@reichmanjorgensen.com
kfalkenstien@reichmanjorgensen.com
jsteinberg@reichmanjorgensen.com
lwilliams@reichmanjorgensen.com
sedelstein@reichmanjorgensen.com

Courtland L. Reichman
(Georgia Bar No. 599894)
Sarah Jorgensen
(Georgia Bar No. 541130)
REICHMAN JORGENSEN LEHMAN
& FELDBERG LLP
1201 West Peachtree Street
Suite 2300
Atlanta, GA 30309
Tel: (404) 609-1040
creichman@reichmanjorgensen.com
sjorgensen@reichmanjorgensen.com

Michael Matulewicz-Crowley
*(Admitted pro hac vice)*
REICHMAN JORGENSEN LEHMAN
& FELDBERG LLP
750 Third Avenue, Suite 2400
New York, NY 10017
Tele: (646) 921-1474
Fax: (650) 623-1449
mmatulewicz-crowley@reichmanjorgensen.com

*Attorneys for Plaintiff Arconic Inc.*

## **CERTICATE OF COMPLIANCE WITH LR 5.1(C)**

This is to certify that the foregoing document was prepared using Times New Roman 14 point font in accordance with LR 5.1(C).

Dated: May 14, 2021 */s/ Courtland L. Reichman*
Courtland L. Reichman

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that I have electronically filed the above document with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to all registered counsel.

This 14th day of May, 2021 */s/ Courtland L. Reichman*
Courtland L. Reichman