**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| ARCONIC INC. (f/k/a ALCOA INC.), | ) | |
| | ) | |
| Plaintiff/Counterdefendant, | ) | |
| | ) | Civil Action No.: 1:15- |
| v. | ) | cv-01466-ELR |
| | ) | |
| UNIVERSAL ALLOY CORPORATION, | ) | |
| | ) | |
| Defendant/Counterclaimant. | ) | |
| | ) | |
| | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**ALCOA'S MOTION TO EXCLUDE CERTAIN TESTIMONY OF**
**DEFENDANT'S EXPERT JOSEPH R. PICKENS**

# TABLE OF CONTENTS

INTRODUCTION.........................................................................................1

I.     STEVENSON'S EXCLUDED OPINIONS.............................................5

II.    THE PICKENS REPLACEMENT REPORT ......................................6

ARGUMENT ...........................................................................................8

I.     STEVENSON'S NO MISAPPROPRIATION OPINION WAS BASED SOLELY ON THE DEBUNKED "NULL HYPOTHESIS" THEORY, AND IS NOT SAVED BY SIMPLY RENAMING IT "PHENOMENOLOGY." ....................................................................8

II.    HAVING DELETED ANY RELEVANT METHODOLOGY, PICKENS' OTHER UNSUPPORTED CONCLUSIONS MUST BE EXCLUDED. .......................................................................16

III.   PICKENS' OTHER NEW OPINIONS SHOULD BE EXCLUDED.16

IV.   PICKENS SHOULD BE PRECLUDED FROM RELYING ON THE WORK PRODUCT OF UNIDENTIFIED ESI PERSONNEL. .........19

    A.    Pickens Should Be Precluded From Relying On The ESI Memos Because He Cannot Be Cross-Examined On Them. ................20

    B.    Pickens' Reliance On Incompletely Verified Work Of Other Experts Renders His Testimony Unreliable And Inadmissible. ................................................................22

V.    PICKENS IS NOT AN EXPERT IN FAA PRODUCTION QUALIFICATION. ..........................................................24

# <u>Table of Authorities</u>

**Page(s)**

**Federal Cases**

*Allison v. McGhan Med. Corp.*,
    184 F.3d 1300 (11th Cir. 1999) ................................................................. 12

*Chapman v. P&G Distrib., LLC*,
    766 F.3d 1296 (11th Cir. 2014) ................................................................ 14

*City of Rome, Georgia v. Hotels.com, L.P.*,
    2012 WL 13024201 (N.D. Ga. June 6, 2012) ........................................... 12

*D. H. Pace Co., Inc. v. Aaron Overhead Door Atlanta LLC*,
    2021 WL 2821679 (N.D. Ga. Mar. 2, 2021) ............................................. 13

*Lincoln Rock, LLC v. City of Tampa*,
    2016 WL 6818959 (M.D. Fla. Nov. 18, 2016) .......................................... 12

*Lips v. City of Hollywood*,
    350 F. App'x 328 (11th Cir. 2009) ........................................................... 19

*Mamani v. Sanchez Berzain*,
    2018 WL 1090546 (S.D. Fla. Feb. 28, 2018) ........................................... 22

*In re Polypropylene Carpet Antitrust Litig.*,
    93 F. Supp. 2d 1348 (N.D. Ga. 2000) ............................................ 4, 20, 22

*In re ResCap Liquidating Tr. Litig.*,
    432 F. Supp. 3d 902 (D. Minn. 2020) ............................................... 20, 22

*Rink v. Cheminova, Inc.*,
    400 F.3d 1286 (11th Cir. 2005) ................................................................ 24

*Siharath v. Sandoz Pharm. Corp.*,
    131 F. Supp. 2d 1347 (N.D. Ga. 2001) .................................................... 13

*TK–7 Corp. v. Estate of Barbouti*,
    993 F.2d 722 (10th Cir. 1993) ................................................................. 22

*In re TMI Litig.*,
    193 F.3d 613 (3d Cir. 1999)..........................................................................22

**Rules**

Federal Rule of Civil Procedure 26(a)(2) ........................................................19

Federal Rule of Civil Procedure 37(c) ............................................................19

Plaintiff Arconic Inc. (f/k/a Alcoa Inc.) ("Alcoa") respectfully submits this Memorandum of Law in Support of its Motion to Exclude Certain Testimony of Defendant's Expert Joseph R. Pickens.

## INTRODUCTION

This motion asks the Court to exclude aspects of Defendant UAC's next expert report and testimony that go beyond its prior expert's report. When UAC's prior technical expert tragically passed away, Alcoa did not oppose UAC's request to substitute a new expert. It did, however, question UAC's proposal to submit a new expert report. Over 12 people at the previous expert's firm, ESi, spent some 10,000 hours and almost four years preparing that report and considered almost 8,000 documents — tasks that seemed difficult to replicate. UAC was insistent that it wanted to submit a new report, which it promised would not stray from the prior report. The Court granted UAC's request to submit a new report, but was very clear that the new report could not go beyond what was in the prior report, as modified by the Court's *Daubert* ruling.

That *Daubert* ruling excluded those portions of the prior expert's report that were based on what he called the "null hypothesis." The Court ruled that his "null hypothesis" methodology was not based on sound scientific principles. In briefing leading to that *Daubert* ruling, UAC argued that the label "null hypothesis" could simply be dropped and was unimportant to the analysis, because in fact its expert was simply using the "scientific method." The Court also rejected this argument, holding

that by whatever name, the prior expert "did not provide sufficient explanation to support his methodology."  Dkt. 774 at 36.

UAC's new expert report is largely a redlined version of the prior report.  While it deletes some references to the null hypothesis, it keeps the analyses and conclusions that were based on the null hypothesis.  A methodology and corresponding conclusions that were not sufficiently explained cannot somehow be transformed into a sufficient explanation by merely deleting language.  Deleting language cannot create a sufficient explanation that was not there in the first place.  And worse, the new report purports to keep the "scientific method" language already expressly rejected by the Court.

In fact, the debunked "null hypothesis" was the sole basis for the prior expert's conclusion that there was no misappropriation.  Without this basis, the no misappropriation opinion is not supported by any basis.  This is what the new expert report seeks to do — it deletes references to the null hypothesis, but keeps the conclusions without any stated basis.

When asked about this at deposition, UAC's expert claimed that the basis for his opinions actually was something called "phenomenology," a concept not even mentioned in his report, much less the prior expert's.  Phenomenology has nothing to do with this case — it is a branch of philosophy that studies the structures of consciousness.  As with the "null hypothesis," Pickens' new label of "phenomenology" is intended to lend a false scientific imprimatur to his analysis, and it would therefore be misleading to a jury.

When probed further, the new expert, Pickens, eventually admitted that he merely looked at the prior expert's conclusions to determine whether he could reach those conclusions through a different approach.  Of course, that different approach was necessarily beyond the prior expert's report.  And it is not, in fact, written down anywhere — it is based only on Pickens' say so.  Pickens admitted that the methodology section of his report (which is a redlined version of the prior expert's report) did not even include his methodology, which was simply "what's in my head" and based on his intuition.  He claims to have looked at the evidence and, through his experience and intuition, concluded there was no misappropriation, without any explanation of how he got there.  When asked why he did not include his methodology in his report, he claimed he was not asked to write it down.  Not only is all of this beyond the prior expert's report, it is precisely the type of "black box," *ipse dixit* opinion required to be excluded by the case law.

This problem extends beyond Pickens' no misappropriation opinion.  He also deleted the prior expert's methodology as to independent development and as to whether the trade secrets were generally known, readily ascertainable, or reverse engineered.  The methodology for these conclusions was deleted for good reason: their only basis was the rejected "null hypothesis" methodology.  As a result, there is literally no methodology for reaching conclusions as to these topics.  Accordingly, any such theories, analyses, and conclusions should be excluded.

Further, when deposed, Pickens offered a whole host of new opinions, analyses,

and theories, none of which are in the prior expert's report, or even in Pickens' new report.  Thus, they should be excluded.

Pickens also relies on some 94 new spreadsheets and memos prepared by ESi, the prior expert's engineering firm, with which Pickens has no affiliation.  These materials are not included in the prior expert's report (though many appear to have been drafted before then), and therefore the documents, and any analysis based on them, should be excluded.  Furthermore, the way Pickens relies on these ESi materials is forbidden by the case law.  These materials were created by ESi personnel.  Pickens relies on their work without vetting it, reviewing all the underlying documents, or understanding how the conclusions in them were reached.  He did not even speak with any of the 12+ ESi personnel who did the work.  The cases are clear that an expert cannot shield himself from cross examination by relying on others' materials.  Further, the cases also hold that *Daubert* does not permit an expert to rely on others' materials if he did not independently verify all of their facts, methodologies, and conclusions.  "An expert . . . may not simply repeat or adopt the findings of another expert without attempting to assess the validity of the opinions relied upon."  *In re Polypropylene Carpet Antitrust Litig.,* 93 F. Supp. 2d 1348, 1357 (N.D. Ga. 2000) (citation omitted).

Finally, Pickens opines outside of his expertise when he addresses the timeline for producing spar chords ███████████████████████████

███████████████████████  Pickens admittedly has no expertise in the standards, testing, or timeline for product certification and qualification at the FAA,

and he thus is not qualified to testify on those matters or, consequently, when a product could be brought to market.

In sum, Pickens' testimony beyond the confines of the prior expert's report, or on which he is not qualified as an expert, should be excluded.

## BACKGROUND

### I.   STEVENSON'S EXCLUDED OPINIONS

UAC's initial technical expert was Dr. Michael Stevenson.  He issued his expert report on May 4, 2018.  Ex. 6 ("Stevenson Rpt.").  In his Report, Stevenson opined that

█████████████████████████████████████████████

███████████████████████████  *Id.* at 9, 143.  The sole basis for Stevenson's conclusion was his null hypothesis methodology.  *Id.* at 12, 90, 141; *see* Dkt. No. 722-1 at 4-7 (explaining Stevenson's methodology in detail).

In short, Stevenson's methodology was to adopt a "null hypothesis" that UAC misappropriated trade secrets, then to look for any evidence (no matter how trivial) that a trade secret was independently developed, reverse engineered, generally known, or readily ascertainable, and, if he found any such evidence, reject the null hypothesis and conclude that the trade secret was not misappropriated.  Stevenson Rpt. at 90.

Alcoa moved to exclude this conclusion because the null hypothesis methodology was flawed, amounting to junk science.  Dkt. 722 at 1; Dkt. 772-1 at 10 ("Stevenson's opinion that UAC did not misappropriate Alcoa's trade secret process is based on his junk science 'null hypothesis methodology.'").  The "Court grant[ed]

Plaintiff's motion with regards to Stevenson's null hypothesis theory and exclude[d] it from the case." Dkt. 774 at 39. The Court concluded that Stevenson "provided no statistical probabilities to support his conclusion that Plaintiff's misappropriation claim must be rejected" and "did not provide sufficient explanation to support his methodology." *Id.* at 36.

Further, the Court rejected Defendant's argument that Stevenson was just applying the "scientific method." *Id.* UAC had contended that the "null hypothesis" label could simply be dropped from the analysis because Stevenson was actually just applying the scientific method by testing his proposed "hypothesis against available data to assess whether the hypothesis could be falsified." Dkt. 734 at 4; Dkt. 774 at 36. The Court rejected this argument as well, holding that "[i]n whatever form or name, the Court agrees with Plaintiff that Stevenson did not provide sufficient explanation to support his methodology." Dkt. 774 at 36. The Court noted Eleventh Circuit law that an "expert must provide reasons for rejecting alternative hypotheses using scientific methods and procedures and the elimination of those hypotheses must be founded on more than subjective beliefs or unsupported speculation." *Id.* at 36-37. The Court concluded that Stevenson's testimony based on his null hypothesis methodology was excluded. *Id.* at 37 ("In sum, the Court grants Plaintiff's motion to exclude Stevenson's testimony based on his null hypothesis methodology.").

## II.    THE PICKENS REPLACEMENT REPORT

Stevenson's unfortunate passing necessitated a replacement expert. The Court

permitted UAC to offer a replacement expert witness and report so long as the new report stayed "within the confines of Dr. Stevenson's report (as modified by the Court's March 10, 2021 Order)."  Dkt. 781 at 3.

Pickens served his replacement expert report on July 23, 2021.  This report, referred to as the "Pickens Rpt.," is a redline version of the Stevenson's Rpt., with the redlines showing what material was struck and what was added (Ex. 2).  Pickens also provided a short introductory document setting forth his qualifications and "observations" (Ex. 1); a document listing the materials he considered (Ex. 3); and his *curriculum vitae* (Ex. 4).

The Pickens Rpt. includes material already struck by the Court.  It continues to reference the "scientific method," but then strikes the underlying (null hypothesis) explanation — just as UAC proposed in its responsive *Daubert* briefing discussed above.  What is left is a conclusion of no misappropriation without any underlying basis, other than stating it is based on the "scientific method."  Moreover, when questioned at deposition as to what methodology underlies his no misappropriation opinion, Pickens testified that it was "phenomenology," which amounts to nothing more than saying his opinion is based on his subjective beliefs and experience.  He then provided at deposition a whole host of theories not contained in his report.

Others of Pickens' edits to the Stevenson Rpt. substantially change the opinions expressed by Stevenson.  For example, Stevenson conceded that the data show a "match" between Alcoa's and UAC's process parameters ███████████████ — i.e.,

7

Stevenson's report admits UAC's process was the same as Alcoa's in that respect, which can only mean that UAC used (misappropriated) this portion of Alcoa's process, an obviously significant admission.  Stevenson Rpt. at 9, 115, 143.  Pickens edits this concession out of the Stevenson Rpt. by saying there is a mere "similarity" between the process parameters.  Pickens Rpt. at 9, 145 (showing redline change).

## ARGUMENT

The issue in this motion is whether the Pickens Rpt. and his testimony change the Stevenson Rpt. in material ways.  The Court ordered that "any new expert report must stay within the confines of Dr. Stevenson's report (as modified by the Court's March 10, 2021 Order)."  Dkt. 781 at 3.  As set out below, the Pickens' Rpt. and testimony go beyond the confines of the prior expert's report, and therefore should be excluded.  Further, Pickens offers opinions beyond his expertise, and therefore those opinions should be excluded as well.

## I. STEVENSON'S NO MISAPPROPRIATION OPINION WAS BASED SOLELY ON THE DEBUNKED "NULL HYPOTHESIS" THEORY, AND IS NOT SAVED BY SIMPLY RENAMING IT "PHENOMENOLOGY."

The Stevenson Rpt. offered the ███████████████████

██████████████████████████████████████████

████████ Stevenson Rpt. at 9.  That conclusion is based solely on Stevenson's null hypothesis methodology.  The Stevenson Rpt. has a methodology section on page 90.[1]

It explains that Stevenson's firm, ESi, was asked to determine if UAC misappropriated

---

[1] For the convenience of the Court, page 90 of the Stevenson Rpt., as redlined by the Pickens Rpt., is attached to this brief as Exhibit A.

Alcoa's alleged trade secrets.  *Id.* at 90.  Next, the methodology section states that ESi applied the "scientific method" as its analytical approach.  It explains what the report meant by that — namely, the now-rejected "null hypothesis," which it then described.  *Id.*  Next, immediately following the "null hypothesis," it stated that "ESi's methodology for conducting **this analysis** was as follows . . . ." *Id.* (emphasis added).  "This analysis" was the null hypothesis.

The Pickens Rpt. keeps the statement that it is applying the "scientific method," deletes the null hypothesis sentences, but then keeps that its methodology for "this analysis was as follows . . ." — i.e., it creates the impression that the analysis it was conducting was the scientific method and not the null hypothesis.  The following is the relevant excerpt from p. 90 of the Pickens Rpt.:



There are numerous problems with this alteration.  First, it reverts to exactly the theory that the Court already rejected.  When Alcoa moved to exclude Stevenson's

testimony, UAC argued that it could merely drop the "null hypothesis" label and keep the remainder of the analysis and conclusion because Stevenson's actual methodology was an "extensive evaluation of the record and careful consideration of how the evidence aligns with the statutory requirements for trade secret protection."  Dkt. 734 at 1; *id.* at 4 ("Dr. Stevenson thus employed the classic scientific method: He tested the hypothesis against available data to assess whether the hypothesis could be falsified."). The Court emphatically rejected this argument:

> In response, Defendant now claims that Stevenson did not purport to apply a null hypothesis methodology at all (even though he labeled it as such in his report). [Doc. 734 at 3–4]. Instead, Defendant contends Stevenson followed the general "scientific method"—that is, "he tested his proposed hypothesis against available data to assess whether the hypothesis could be falsified." [Id. at 4]. Nonetheless, the Court finds this explanation equally problematic. In whatever form or name, the Court agrees with Plaintiff that Stevenson did not provide sufficient explanation to support his methodology.

Dkt. 774 at 36.  UAC seeks to preserve the very "scientific method" language in the report that already was excluded by the Court.

As the Court recognized, the problem goes much deeper than labels because, regardless of its form or name, "Stevenson did not provide sufficient explanation to support his methodology." *Id.*  Merely stripping the references to the "null hypothesis" cannot transform a report that contains insufficient explanation into one that does.

This is the subtly misleading outcome of Pickens' edits.  It was clear that Stevenson's sole methodology was the null hypothesis, but now by deleting these sentences, the report reads as if there was some other basis.  Deleting language cannot create a sufficient explanation that was not there in the first place.

10

Indeed, in his deposition, Pickens was quite clear that this was his approach.  Ex. 5 ("Pickens Dep.") at 88:4-89:1 ("It's my understanding that this was struck because the null hypothesis carries with it a bunch of statistical significance and that's why it was -- my understanding was that's why the Court wanted it to be struck, but the null hypothesis was not necessary to come to the conclusions . . . .").  As that testimony makes clear, Pickens' view is that if he could come to the conclusion in some other way, then that was permissible.  But that is not how *the Stevenson Rpt.* came to its conclusions, and therefore lies beyond that report.

Pickens keeps the conclusion (no misappropriation) without any underlying basis, since Stevenson's sole basis was the null hypothesis.  So the question becomes, how did Pickens reach his conclusions?  When asked this question, Pickens claimed his conclusions were based on something called "phenomenology," a concept not even mentioned in his report, much less Stevenson's.  Pickens Dep at 32:16-34:22, 90:16-92:3, 102:20-103:10, 107:16-110:13, 25:14-27:4, 27:13-28:7, 29:17-30:9.[2]

What Pickens is doing here bears no resemblance to the actual field of phenomenology, which is a branch of philosophy.  "Phenomenology is the study of structures of consciousness as experienced from the first-person point of view."  Ex. 8 (https://plato.stanford.edu/entries/phenomenology);   Ex.   9   (https://www.merriam-

---

[2] Pickens confirmed "phenomenology" was not disclosed in Stevenson's report, but pivoted to claiming it was disclosed in a separate, "preamble" document that lists Pickens' his qualifications.  Pickens Dep. at 99:7-16 ("I did not say that specifically. I may have said something to that effect in the -- in the preamble . . . ."), 99:17-21, 103:11-14, 106:8-22, 107:6-10; *see* Ex. 1.

webster.com/dictionary/phenomenology) (definitions of phenomenology); Ex. 10 (https://www.brown.edu/Departments/Joukowsky_Institute/courses/architecturebodyp erformance/1065.html) ("Phenomenology is a philosophy of experience.").  As such, it is "commonly understood in either of two ways: as a disciplinary field in philosophy, or as a movement in the history of philosophy."  Ex. 8.  Phenomenology has no place in a technical analysis of whether UAC misappropriated Alcoa's trade secrets.

   As with the "null hypothesis," Pickens' new label of "phenomenology" is intended to misleadingly prop up the absence of a methodology and lend a false scientific imprimatur to his analysis, and it would therefore be misleading to a jury.  *See City of Rome, Georgia v. Hotels.com, L.P.*, 2012 WL 13024201, at *3 (N.D. Ga. June 6, 2012); *Lincoln Rock, LLC v. City of Tampa*, 2016 WL 6818959, at *8 (M.D. Fla. Nov. 18, 2016).  *Daubert* is designed to prevent parties from "dumping a barrage of questionable scientific evidence on a jury, who would likely be even less equipped than the judge to make reliability and relevance determinations and more likely than the judge to be awestruck by the expert's mystique."  *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1310 (11th Cir. 1999); *see Lincoln Rock, LLC*, 2016 WL 6818959, at *7 ("The gatekeeping role is significant because an expert's opinion can be both powerful and quite misleading." (internal quotations omitted)).

   When questioned, Pickens ultimately admitted that his analysis consisted essentially of just looking at the evidence and concluding there was no misappropriation — i.e., nothing more than his say-so.  That sort of black-box methodology is just an

"educated guess[] dressed up in evening clothes" and is the type of *ipse dixit* that should be excluded.  *See Siharath v. Sandoz Pharm. Corp.*, 131 F. Supp. 2d 1347, 1373 (N.D. Ga. 2001).  To this end, when asked whether his "Methodology" section contained "the full description of your methodology," Pickens responded, "No. It's what's in my head also having been in the industry for a long time." Pickens Dep. at 97:17-20.  Despite repeated questions seeking additional clarity, Pickens did not provide any concrete details of how his methodology works or is applied.  *See, e.g.*, Pickens Dep. at 108:1-110:13, 116:15-117:7 ███████████████████████████████

████████████████████████████████████

████████████████████ 117:8-19, 105:12-106:2, 106:3-7 ("I'm a very intuitive person, and a lot of what I do comes from [my mind]"), 107:1-5.  He was left with claiming that phenomenology was "basically the data that you have and the observations you have in the real world." Pickens Dep. at 33:12-13.

In *D. H. Pace Co., Inc. v. Aaron Overhead Door Atlanta LLC*, the court held that a methodology that "entail[ed] [the expert's] examination of various databases followed by him reaching some conclusions based on his observations" was unreliable because it "does not appear to be testable, does not appear to be subject to peer review, does not appear to have been published, and [plaintiff] has presented no evidence that it is generally accepted in the scientific community."  2021 WL 2821679, at *7 (N.D. Ga. Mar. 2, 2021); *see also id.* ("Without any articulated methodology, [an expert's] self-serving conclusions amount to nothing more than *ipse dixit* and [are] insufficient to pass

13

*Daubert*'s reliability prong."); *see also Chapman v. P&G Distrib., LLC*, 766 F.3d 1296, 1305 (11th Cir. 2014) (holding that opinions that are "connected to existing data only by the *ipse dixit* of the expert" are not reliable).

This problem is exemplified by the Pickens Rpt. keeping misleadingly modified versions of Tables 12 and 13.  Below is the excerpt of the Pickens Rpt. showing how it modified the Stevenson Rpt. in relation to Table 13.  What the Stevenson Rpt. did was look at each manufacturing step — e.g., ██████████ in Table 13 below.  Then Stevenson looked at whether there was a "match," whether it was "generally known," "readily ascertainable," etc.  The way Stevenson decided whether it was generally know (or the other columns) was to use the null hypotheses — i.e., he looked at whether there was any evidence to contradict the misappropriation hypothesis (no matter how trivial), and if there was, he put an "x" in the box.  This is exactly what is summarized in the now-struck language preceding the table.

Pickens Rpt. at 143-44.

14

The Pickens Rpt. simply strikes the language explicitly referencing the null hypothesis, and the last column (entitled "Null Hypothesis Rejected").  The problem is that the null hypothesis was the only basis for the "x's" in the other columns in Table 13, as even Pickens admitted.  Pickens Dep. at 126:17-20 ("Q. Well, tables 12 and 13 in Dr. Stevenson's original report reflect the step of his null hypothesis methodology, correct? A. Yes.").  Through these selective deletions, the revised report gives the misleading impression that there was some (unstated) basis for the conclusions in the table, when in fact the only basis was the null hypothesis.

The sleight of hand became clear in Pickens' deposition when he claimed that Stevenson used a methodology "he may not have discussed, but it worked."  Pickens Dep. at 90:16-91:16.  From this, Pickens took the leap to:  "Because his conclusions are entirely consistent with the opinions that I came up with independently by my approach . . . ."  *Id.* at 91:18-20, 90:22-92:3.  In other words, Pickens just took Stevenson's conclusions and determined whether Pickens could use "my approach" to get there a different way.  This by definition is beyond the confines of the Stevenson Rpt., and must be excluded.  Even Pickens had to acknowledge that his approach — *ipse dixit* as it may be — was not even written down in his report.  *Id.* at 106:14-15 ("[N]owhere was I tasked or asked to write down my -- my scientific method."), 105:12-106:22.

\*\*\*

In sum, the portions of Pickens' Rpt. discussing his no misappropriation theories, analyses, and conclusions should be excluded.

## II.  HAVING DELETED ANY RELEVANT METHODOLOGY, PICKENS' OTHER UNSUPPORTED CONCLUSIONS MUST BE EXCLUDED.

Pickens' selective editing around the null hypothesis affects theories, analyses, and conclusions beyond the overarching no misappropriation opinion.   The methodology section of the Pickens Rpt. discussed above (attached as Exhibit A to this brief) also deleted the Stevenson Rpt.'s methodology as to independent development and as to whether the trade secrets were generally known, readily ascertainable, or reverse engineered.   The methodology for these conclusions was deleted for good reason:  their only basis was the rejected "null hypothesis" methodology.   As a result, there is literally no methodology for reaching conclusions as to these topics. Accordingly, any such theories, analyses, and conclusions should be excluded.

## III.  PICKENS' OTHER NEW OPINIONS SHOULD BE EXCLUDED.

Next, Pickens also disclosed more than half a dozen new opinions not in the Stevenson Rpt. concerning almost every trade secret step.  These must be excluded as being beyond the confines of the Stevenson Rpt.

First, the Pickens Rpt. does an about-face on a key concession in the Stevenson Rpt.  The Stevenson Rpt. admitted that the ███████████████████████ ██████████████████████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ████████████ Stevenson Rpt. at 115; *id.* at 9, 143; Ex. 7, Stevenson Dep. at 195:16-21, 196:10-12 ████████████████████████████████████

[3] ████████████████████████████████████████████

███████████████████████████████ 289:9-15.  Thus, in substance, Stevenson admitted

that ██████████████████████████[4]  Pickens edited this conclusion in the Stevenson

Rpt. as follows:

███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████

Pickens Rpt. at 9, 145.  These edits changed a concession of a "match" (confirmed by

deposition testimony) to mere "similarities."  This is a remarkable and unwarranted

alteration of the Stevenson Rpt., and for that reason should be excluded.[5]  Pickens

attempted to provide underlying opinions justifying this alteration at his deposition, but

none of these opinions are in the Stevenson Rpt., and therefore are inadmissible at trial.[6]

Second, Pickens testified that he based a new opinion of independent

development on emails from UAC employee Vic Dangerfield.  Pickens Dep. at 159:13-

160:1.  But Stevenson did not opine that ██████████████████████████████

████████████████████— that opinion is brand new.  And neither the Pickens

---

[4] ███████████████████████████████████████
███████████████ Stevenson Rpt. at 115, 141.
[5] It is difficult to discern how this alteration would even help UAC at trial when
Pickens would be impeached with the concessions in Stevenson's Rpt. and deposition
testimony.
[6] Pickens Dep. at 132:7-133:13, 133:1-3 ██████████████████████████
██████████████████████████████████████ 94:16-95:9,
95:18-22 ███████████████████████████████████████████████
████████████████████████████ 163:10-13 ███████████████
███████████████████████████████████████████████████
████████████████████████████████████████

17

Rpt. nor the Stevenson Rpt. even discuss the ███████████████. Pickens
Dep. at 163:3-16, 153:5-14.  To make matters worse, at his deposition, Pickens could
not even identify ████████████ in question.  *Id.* at 160:17-21.  Pickens
suggested that he sufficiently disclosed his opinions because he cites █████████
████ without discussion, somewhere in his report.  *Id.* at 160:12-16 ("I said in the
beginning of my report that I base my opinions on -- on all the documents cited and the
communications and discussions with people. So I think that is the report.").

Finally, Pickens offered a variety of other new opinions throughout his
deposition.  None of these opinions were disclosed in the Stevenson Rpt., and therefore
they should be excluded.  They are as follows:



(1) ██████████████████████████████
████████████████████████████████████
████████████████████████████████████
███████████████████Pickens Dep. at 114:11-20, 195:16-22.[7]

(2) █████████████████████████████████
█████████ Pickens Dep. at 70:18-71:17, 72:4-9, 240:18-242:1, 261:4-21, 66:2-
9.[8]

(3) ████████████████████████████████
██████████████████████████Pickens Dep. at
139:7-16.

---

[7] This new opinion is contrary to the Stevenson and Pickens reports, which note
that the expert is not ███████████████████████████████
██████████████████████ Pickens Rpt. at 91.

[8] Pickens explained that he did not disclose his opinions because he "d[id]n't
believe it was [his] purview to rewrite [Stevenson's report]."  Pickens Dep. at 262:4-15
("I don't think that's what I was chartered to do."), 266:11-16.



(4) ████████████████████████████████
████████████████ Pickens Dep. at 222:7-18.

(5) ████████████████████████████████
████████████████████████████████████
██████████████████ Pickens Dep. at 169:9-171:20.

(6) ████████████████████████████████
████████████████████████████████████
████████ Pickens Dep. at 192:1-6, 192:7-193:7.

(7) ████████████████████████████████
████████████████████████████████████
██████████████ Pickens Dep. at 206:13-208:6.

## IV.   PICKENS SHOULD BE PRECLUDED FROM RELYING ON THE WORK PRODUCT OF UNIDENTIFIED ESI PERSONNEL.

Pickens testified that in preparing his report, he had relied on some 94 spreadsheets and memos prepared by unnamed personnel at ESi, with which Pickens has no affiliation (hereinafter the "ESi Memos").  Pickens Dep. at 51:12-54:6; Ex. 3 (Materials Relied Upon) at 16-19.  The Stevenson Rpt. did not disclose the ESi Memos, and for this reason alone Pickens' reliance on them is beyond the scope of the Stevenson Rpt. and should be excluded.[9]

Pickens claimed that, based upon the ESi Memos, he made changes to the Stevenson Rpt. to correct supposed errors.  Ex. 1 ¶ 5.  Moreover, Stevenson admitted

---

[9] Even worse, for three years UAC refused to produce these memos, now only doing so for its own purposes.  *See* Dkts. 387-1, 781 at 1-2.  In addition to being beyond the Stevenson Rpt., the ESi Memos also merit exclusion under Rule 37(c), as they are untimely under Rule 26(a)(2) and the late disclosure is neither justified nor harmless. *See* Fed. R. Civ. P. 26(a)(2), 37(c); *Lips v. City of Hollywood*, 350 F. App'x 328, 340 (11th Cir. 2009).

that he relied on the memos without having had any communication with anyone at ESi.  Pickens Dep. at 19:18-20:3.  He did not even fully vet the ESi Memos for accuracy — he only checked the things that he determined "matter[ed] for the actual conclusions," and trusted the ESi team's analysis as to the other content of the memos.  Pickens Dep. 78:17-20 ("So there were some things that I basically assumed he did correct, but the things that matter for the actual conclusions I did check in detail.").

### A. Pickens Should Be Precluded From Relying On The ESI Memos Because He Cannot Be Cross-Examined On Them.

"Particularly when parties do not have the opportunity to examine the information relied upon, courts must ensure that an expert witness is sufficiently familiar with the reasoning or methodology behind the information to permit cross-examination."  *In re Polypropylene Carpet Antitrust Litig.*, 93 F. Supp. 2d at 1357.  In *ResCap*, the court barred expert testimony that relied on an unidentified, non-testifying expert, reasoning that failing to do so would "result[] in serious prejudice" to the opponent "because it could not critique the underlying expert opinion through either cross-examination or deposition."  *In re ResCap Liquidating Tr. Litig.*, 432 F. Supp. 3d 902, 932 (D. Minn. 2020).

Here, Alcoa is prejudiced by being faced with a testifying expert who admits he relied on memos he did not write or direct from other "experts."  Pickens did not supervise or take part in the preparation of the documents and has had *no communication* with anyone on ESi's 12+ person team involved in preparation of the ESi Memos.  Pickens Dep. at 19:18-20:3.  His lack of *any* knowledge about the

preparation of the ESi Memos insulates him from cross-examination. Pickens effectively is serving as the mouthpiece for the ESi consultants, while insulating them from cross-examination.

The prejudice is more than theoretical. For example, the Pickens Rpt. describes Figures 69 and 70 as follows: ███████████████████ ████████████████████████████████████████████ ██████████████ ██████████████ Pickens Rpt. at 129. But that analysis is not, as Pickens suggests, an analysis of all ████████████████ Instead, the ESi Memo describing the creation of Figures 69 and 70 reveals that the data is based on ████████████ ██████████████ *See* Ex. 11 (UAC02001752-53); Pickens Rpt. at 129, 133. That is, an unnamed ESi employee chose ████████████████ ███████████████████████████████████████████ ███████████████████████████████████████████ ████████████████ but Alcoa never had the opportunity to investigate the basis and reliability of that methodology, and Pickens knows nothing about it.

Likewise, some ESi Memos describe and correct supposed errors in Stevenson's report, which Pickens then implements in his report, but because Pickens did not make these corrections himself, he cannot answer questions about them, for example, how they came to be identified. *See* Ex. 1. ████████████████████ ███████████████████████████████████████████ ███████████████████████████████████████████

### B. Pickens' Reliance On Incompletely Verified Work Of Other Experts Renders His Testimony Unreliable And Inadmissible.

Pickens' testimony relying on the ESi Memos also is inadmissible under *Daubert* because he did not independently ensure the accuracy of all of the facts and methodology in the ESi Memos. "An expert . . . may not simply repeat or adopt the findings of another expert without attempting to assess the validity of the opinions relied upon." *In re Polypropylene Carpet Antitrust Litig.,* 93 F. Supp. 2d at 1357 (citing *In re TMI Litig.*, 193 F.3d 613, 715–16 (3d Cir. 1999); *TK–7 Corp. v. Estate of Barbouti*, 993 F.2d 722, 732–33 (10th Cir. 1993)). When an expert relies upon the work of another expert without verifying it, courts exclude that testimony. *See, e.g.*, *In re TMI Litig.*, 193 F.3d at 716 (affirming exclusion where expert's "failure to assess the validity of the opinions of the experts he relied upon together with his unblinking reliance on those experts' opinions, demonstrates that the methodology he used to formulate his opinion was flawed under *Daubert* as it was not calculated to produce reliable results."); *In re ResCap Liquidating Tr. Litig.*, 432 F. Supp. 3d at 932 (precluding expert from "opin[ing] about an unidentified . . . expert's opinion, without offering any discussion about his assessment of the validity of, the methodology used within, or the reasoning underlying the opinion, much less its factual basis"); *Mamani v. Sanchez Berzain*, 2018 WL 1090546, at *4–5 (S.D. Fla. Feb. 28, 2018) (precluding expert from referencing other expert's opinions where they "didn't take any particular steps to check the veracity" of the other report and merely "presumed the accuracy of the information").

Here, Pickens admitted that he relied upon the ESi Memos but only verified parts of them:  "So there were some things that I basically assumed he did correct, but the things that matter for the actual conclusions I did check in detail." Pickens Dep. 78:17-20, 81:1-3 (Q. "So you did not check all the data points in your report, correct?" A. "That's correct.").  When asked whether there are parts of his report that might not be accurate, Pickens responded, "**I think Dr. Stevenson and his staff said they were accurate, and I take them at their word because they put a lot of time into it and by all my readings he was a very good engineer.**"  Pickens Dep. at 79:13-16 (emphasis added), 80:14-19 (testifying that he "had to rely on the accuracy of some of the underlying documents and my predecessor did that and I have no reason to believe that they were not accurate . . . .").

Pickens testified that he did not check every document cited in the ESi Memos. *Id.* at 53:17-54:6.  Indeed, many documents cited in the ESi Memos are not on Pickens' list of materials considered, which he confirmed were the only materials he considered. *See* Pickens Dep. at 18:10-13.  While the "Materials Considered" list of the original ESi report includes almost 8,000 documents, Pickens lists less than 500.  *Compare* Stevenson Rpt. at App'x C *with* Ex. 3.  It is therefore clear that Pickens did not review the data and information underlying the conclusions in the ESi memos.

This is confirmed by several instances at deposition.  For example, ▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

 Pickens Dep. at 72:18-75:21 (discussing Pickens Dep. Ex. 6 (Ex. 15 hereto)); *see* Pickens Rpt. at 140.

Pickens Dep. at 61:5-21 (discussing Pickens Dep. Ex. 5 (Ex. 16 hereto) at -1940).

\*\*\*

Accordingly, the ESI Memos, as well as analyses and conclusions based on them, should be excluded.

## V.   PICKENS IS NOT AN EXPERT IN FAA PRODUCTION QUALIFICATION.

Pickens also opines outside of his technical qualifications.  *Daubert* requires courts to "engage in a rigorous inquiry to determine whether '(1) the expert is qualified to testify competently regarding the matters he intends to address . . . .'"  *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005).  This case centers on whether

*See* Ex. 14, Eagar Rpt. ¶¶ 79, 83, 98–99, 111–15; Pickens Rpt. at 31.

Pickens has no qualifications on FAA qualification.  He testified that "the extent

of [his] experience" working with the FAA was "war stories" from a former colleague. Pickens Dep. at 270:1–2. He has no experience in the FAA certification process. *Id.* at 271:5–7. He has no experience with the FAA qualification process. *Id.* at 271:9–18. He does not know what UAC had to prove for its stretched-form spar chords to meet FAA qualification standards. *See id.* at 278:20–282:8. Put simply, he is not an expert in material qualification to the FAA. *See id.* at 282:15–17 ("Q. So you're not an expert in material qualification to the FAA, right? A. To the FAA, yes, that's correct.").

Accordingly, Pickens should be precluded from opining as to FAA qualification or certification, contesting Alcoa's expert on these subjects, or ████████████ ██████████████████████████████████████████████ ██████████████████████████████████████████████ █████████████████████████

## **CONCLUSION**

Accordingly, for the foregoing reasons, Alcoa respectfully requests that the Court exclude Pickens' testimony beyond the confines of the prior expert's report, or on which Pickens is not qualified as an expert. A proposed Order is attached to the Motion submitted concurrently with this brief.

Dated: October 8, 2021                    Respectfully submitted,

                                          */s/ Courtland L. Reichman*
Caroline Walters *(Admitted pro hac vice)*     Courtland L. Reichman
Jennifer P. Estremera *(Admitted pro hac vice)*   (Georgia Bar No. 599894)
Sara M. Edelstein *(Admitted pro hac vice)*    Sarah Jorgensen

25

Kate M. Falkenstien *(Admitted pro hac vice)*
REICHMAN JORGENSEN
LEHMAN AND FELDBERG LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Tel: (650) 623-1401
Fax: (650) 623-1449
cwalters@reichmanjorgensen.com
jestremera@reichmanjorgensen.com
sedelstein@reichmanjorgensen.com
kfalkenstien@reichmanjorgensen.com
jsteinberg@reichmanjorgensen.com

(Georgia Bar No. 541130)
REICHMAN JORGENSEN
LEHMAN AND FELDBERG LLP
1201 West Peachtree Street
Suite 2300
Atlanta, GA 30309
Tel: (404) 609-1040
creichman@reichmanjorgensen.com
sjorgensen@reichmanjorgensen.com

Michael Matulewicz-Crowley
(Admitted pro hac vice)
REICHMAN JORGENSEN LLP
750 Third Avenue Suite, Suite 2400
New York, NY 10017-1965
Tel: 212-381-1965
mmatulewicz-
crowley@reichmanjorgensen.com

*Attorneys for Plaintiff Arconic Inc.*

## CERTICATE OF COMPLIANCE WITH LR 5.1(C)

This is to certify that the foregoing document was prepared using Times New

Roman 14 point font in accordance with LR 5.1(C).

Dated: October 8, 2021                */s/ Courtland L. Reichman*
                                       Courtland L. Reichman

## **EXHIBIT A**
## **PAGE 90 OF PICKENS RPT. (EX. 2)**



## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that I have electronically filed the above

document with the Clerk of the Court using CM/ECF which will send electronic

notification of such filing to all registered counsel.

This 8th day of October, 2021                    */s/ Courtland L. Reichman*
                                                 Courtland L. Reichman