**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| ARCONIC INC. (f/k/a ALCOA INC.), ) | |
| ) | |
| Plaintiff/Counterdefendant, ) | |
| ) | Civil Action No.: 1:15-cv-01466-ELR |
| v. ) | |
| ) | |
| UNIVERSAL ALLOY ) | |
| CORPORATION, ) | |
| ) | |
| Defendant/Counterclaimant. ) | |
| ) | |
| ) | |

**ALCOA'S REPLY IN SUPPORT OF**
**MOTION TO EXCLUDE CERTAIN TESTIMONY OF**
**DEFENDANT'S EXPERT JOSEPH R. PICKENS**

# TABLE OF CONTENTS

INTRODUCTION ......................................................................................................1

ARGUMENT ...........................................................................................................5

    I.     TESTIMONY BASED ON THE NULL HYPOTHESIS HAS BEEN EXCLUDED, AND CANNOT BE RESUSCITATED BY A METHODOLOGY OUTSIDE OF the STEVENSON REPORT.....5

    II.    TABLES 12 AND 13 SHOULD BE EXCLUDED. ............................8

    III.   PICKENS' OTHER NEW OPINIONS SHOULD BE EXCLUDED. .....................................................................................10

    IV.   PICKENS SHOULD BE PRECLUDED FROM TESTIFYING AS TO MATTERS HE DID NOT VERIFY............................................12

    V.    PICKENS CANNOT TESTIFY TO OPINIONS THAT REQUIRE EXPERTISE IN FAA MATERIALS QUALIFICATION. ................14

CONCLUSION .......................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Chapman v. P&G Distrib., LLC,*
766 F.3d 1296 (11th Cir. 2014) ...........................................................................6

*D. H. Pace Co., Inc. v. Aaron Overhead Door Atlanta LLC,*
526 F. Supp. 3d 1360 (N.D. Ga. 2021) ................................................................7

*Hertz v. Luzenac Am., Inc.,*
2011 WL 1480523 (D. Colo. Apr. 19, 2011) .......................................................8

*Kramer v. Gwinnett Cty.,*
306 F. Supp. 2d 1219 (N.D. Ga. 2004) ..............................................................15

*Lemons v. Principal Life Ins. Co.,*
2021 WL 3508685 (N.D. Ala. Aug. 9, 2021) .....................................................14

*Lummus Corp. v. Cherokee Fabrication Co., Inc.,*
2007 WL 9698294 (N.D. Ga. Jan. 23, 2007) ........................................................7

*Miller UK Ltd. v. Caterpillar, Inc.,*
2015 WL 10818831 (N.D. Ill. Nov. 1, 2015) .......................................................7

*Moore v. Intuitive Surgical, Inc.,*
995 F.3d 839 (11th Cir. 2021) ...........................................................................14

*In re Sulfuric Acid Antitrust Litig.,*
235 F.R.D. 646 (N.D. Ill. 2006) .........................................................................11

*Trilink Saw Chain, LLC v. Blount, Inc.,*
583 F. Supp. 2d 1293 (N.D. Ga. 2008) ..............................................................14

*United States v. Frazier,*
387 F.3d 1244 (11th Cir. 2004) ...........................................................................8

## INTRODUCTION

Stevenson's expert report reached certain conclusions based solely on the null hypothesis. The Court excluded testimony based on the null hypothesis under *Daubert*. At the time, UAC contended that the null hypothesis could simply be dropped and the remainder of his opinion stand. The Court expressly rejected this argument, concluding that "[i]n whatever form or name, the Court agrees with Plaintiff that Stevenson did not provide sufficient explanation to support his methodology." Dkt. 774 at 36.

The Court was very clear when it permitted UAC a new expert that the expert must stay in the confines of Stevenson's expert report, as modified by the *Daubert* order. Instead, what UAC did was strike certain language about the null hypothesis from the Stevenson report, yet keep the conclusions that were based solely on the null hypothesis. As a threshold matter, cutting language from Stevenson's report cannot transform an explanation that was insufficient to one that is sufficient. By striking only the "null hypothesis" methodology, UAC is attempting precisely what the Court already rejected – simply deleting the term and keeping the remainder of the conclusions. UAC's response brief doubles down on this sleight of hand, claiming that Stevenson had a third, unstated methodology behind his report, therefore allowing Pickens to testify as he pleases. UAC's approach has compounded the problem – it now has a host of facts that are of little consequence, no analysis or methodology, and a series of conclusions that are based on nothing in Stevenson's report.

This massive gap between the facts and the conclusions could only be filled by

information outside the Stevenson report. UAC argues that the information is, in fact, in the report. But where it makes this argument, it has no citation to Stevenson's report – for good reason: it is not in there. Instead, it backpedals to the assertion that Alcoa has not shown where in Stevenson's report the methodology is missing. Alcoa cannot, of course, prove a negative. It pointed out that there is nothing in the report to fill this gap, and that UAC cannot point to any such methodology speaks volumes.

UAC also contends that the Court did not strike testimony based on the null hypothesis, only the null hypothesis itself. This is directly contradicted by the Court's Order, which states: "In sum, the Court grants Plaintiff's motion to exclude Stevenson's testimony based on his null hypothesis methodology." Dkt. 774 at 37. It is further contradicted by the Court having previously rejected the notion that UAC could simply strike the term "null hypothesis" or substitute a different label for it. Indeed, UAC's approach has made the problem altogether worse than in the first Stevenson report. That report relied on the junk science "null hypothesis" to reach its conclusion. Now UAC relies on what it has variously called phenomenology, intuition, "experience," or empirical observation without any explanation, making it all the murkier. It defies logic that the Court struck testimony based on the null hypothesis, and by so doing implicitly permitted UAC to introduce that same testimony based on nothing in the report.

UAC's approach to Tables 12 and 13, as modified by Pickens, are emblematic of the problem. The tables contain several columns labelled with predicates related to misappropriation. For example, there are columns for whether the information was

"generally known," "readily ascertainable," "reverse engineered," and "independent[ly] develop[ed]." Pickens Rpt., Dkt. 787-5, at 143-44. The last column was whether the "null hypothesis" was rejected. Pickens merely lopped off the last column, claiming that the table stands without it. UAC now claims – for the first time – that the other columns can be presented to the jury because Stevenson actually *found* the trade secrets were generally known, readily ascertainable, reverse engineered, or independently developed. As a matter of logic alone, this is not possible. Why would there be a need for the last column – whether the "null hypothesis" was rejected – if Stevenson concluded the trade secrets were generally known, readily ascertainable, reverse engineered, or independently developed? If Stevenson actually had found these things, the last column (and the null hypothesis) would have been unnecessary. The only reason for the last column is that the other columns themselves were based only on the null hypothesis – i.e., whether there was any evidence supporting the proposition (no matter how inconsequential). And indeed, this is precisely what the report says and precisely what Pickens testified to. There is no stated basis in his report for reaching these conclusions beyond the null hypothesis, and UAC has pointed to none.

There was a good reason Stevenson had to rely on the null hypothesis – the only credible interpretation of this overwhelming record is that UAC misappropriated Alcoa's trade secrets. Unable to conclude otherwise, he had to employ a bogus methodology. It is extraordinary and telling that Pickens did not bother to talk to the large staff at Stevenson's firm, ESi, who spent four years and 10,000 hours preparing

Stevenson's report. He purports to rely on their work, yet suspiciously avoided talking with them, presumably to avoid being tainted by their actual conclusions.

In its opening brief, Alcoa pointed out the problem with relying on ESi memos without Pickens independently validating their conclusions. UAC's response makes the problem even worse. Now UAC contends Pickens' opinions are based on Stevenson's report itself. In other words, Pickens is reduced to entirely circular reasoning: the report is cited as the support for the report. Alcoa cannot cross examine the report. The report needs some external analysis and validation. Pickens should not be permitted to testify to anything he did not independently analyze and validate.

These problems are entirely of UAC's own making. Rather than approach the process of expert reports in a straightforward manner, it has persistently attempted to sneak through baseless opinions, and when caught, attempted deception to avoid the consequences, just as it did when it was caught violating the discovery rules by coming up with highly suspicious evidence for first time at summary judgment. As the Court already determined, Pickens may testify only within the confines of Stevenson's report as modified by the *Daubert* order. This means Pickens can testify as to the underlying facts set forth in Stevenson's report (without the alterations and modifications Pickens added). He cannot testify as to matters – be they conclusions, opinions, or other – that were based on the null hypothesis. Conclusions based solely on the null hypothesis include misappropriation and whether the trade secrets were generally known, readily ascertainable, independently developed, or reverse engineered. No matter how UAC

tries to repackage the methodology – as phenomenology, intuition, experience, or empirical observation – none of it was in Stevenson's report.

Accordingly, Alcoa respectfully requests that the Court grant its Motion to Exclude as requested in its opening brief and proposed order.

## ARGUMENT

### I. TESTIMONY BASED ON THE NULL HYPOTHESIS HAS BEEN EXCLUDED, AND CANNOT BE RESUSCITATED BY A METHODOLOGY OUTSIDE OF THE STEVENSON REPORT.

As described *supra*, Stevenson's conclusions were based solely on the struck null hypothesis. Without that methodology, there is a massive gap where the null hypothesis used to be, leaving conclusions unsupported by any methodology in Stevenson's report. At deposition, Pickens admitted that his analysis was just looking at the evidence and concluding there was no misappropriation, and when questioned on his methodology, he referenced the obscure label of "phenomenology" and his intuition. UAC now defends Pickens on the grounds that the Stevenson Report ("Stevenson Rpt."). had some other – unstated – basis for his conclusions other than the null hypothesis (or scientific method), and that Pickens has his own methodology that "aligns" with Stevenson's. Dkt. 792-1 at 16-18.

The problem is that Pickens' methodology is nowhere to be found in Stevenson's report. Tellingly, UAC offers no citation for its one-sentence assertion that "[t]he Stevenson Report adequately discloses bases for [the no misappropriation] theories,

analyses, and conclusions separate from the 'null hypothesis.'" Dkt. 792-1 at 16.[1]

UAC suggests that Alcoa "invented" the "phenomenology methodology." To the contrary, Alcoa had not even heard of the term until Pickens himself testified to it, explaining that "the actual thought process" of "how [he] formulated [his] opinions" was "looking at the phenomenology." *See* Dkt. 787-8 at 103:2-10. UAC now retreats to suggesting that Pickens was using the term "as a synonym for 'empirical observation.'" Dkt. 792-1 at 14. This is not what the dictionary says "phenomenology" means – more importantly, it is not what Pickens testified to. In any event, such "empirical observation" also is absent from the Stevenson report. If it was in there, surely UAC could have cited to it. If an expert came into court and cited a host of inconsequential facts, and then simply stated that based on his "empirical observation" there was no misappropriation, the opinion would not withstand a *Daubert* challenge. *Chapman v. P&G Distrib., LLC*, 766 F.3d 1296, 1305 (11th Cir. 2014) (Opinions that are "connected to existing data only by the *ipse dixit* of the expert" are not reliable.). And whatever UAC now calls these methodologies – phenomenology, intuition, experience, or empirical observation – none are in Stevenson's report.

UAC attempts to characterize Pickens' testimony as providing the necessary explanation, Dkt. 792-1 at 18, but the cited testimony at best describes Pickens' experience and the initial steps of his analysis, but he never explains "*how* that

---

[1] UAC's quotations of Pickens' deposition are of no help, since UAC makes no effort to connect them to the report.

experience leads to the conclusion reached, *why* that experience is a sufficient basis for the opinion [of no misappropriation], and how that experience is reliably applied to the facts." *D. H. Pace Co., Inc. v. Aaron Overhead Door Atlanta LLC*, 526 F. Supp. 3d 1360, 1368 (N.D. Ga. 2021). A similar explanation for Stevenson was already found insufficient, but in all events, Pickens' new testimony is not in the Stevenson Rpt.

UAC's cited authority, *Lummus Corp. v. Cherokee Fabrication Co., Inc.*, in fact illustrates why Pickens' testimony should be excluded. In that case, the expert analyzed and compared the parties' drawings and concluded that 12 of 74 groups contained evidence of copying. *Lummus Corp. v. Cherokee Fabrication Co., Inc.*, 2007 WL 9698294, at *5 (N.D. Ga. Jan. 23, 2007). The expert described his methodology of comparison in detail, including "observing details such as machine tolerances, wordings, descriptions, symbols, and placement . . . ." *Id.* at *6. Thus, in *Lummus*, the conclusion—evidence of copying—flowed directly from the expert's observations. Pickens has no such basis for reaching his conclusion – Stevenson got there only by using the null hypothesis. Any new explanation by Pickens by definition is outside Stevenson's report.[2]

UAC puts the cart before the horse in suggesting that Alcoa's concerns with Pickens' methodology be handled at trial through cross-examination. Dkt. 792-1 at 19. Under *Daubert*, an unreliable methodology subjects the testimony to exclusion. *See*

---

[2] UAC's other case, an unpublished out-of-circuit opinion, has no bearing here; it simply stands for the undisputed proposition that experience, properly applied, can be a reliable methodology. *Miller UK Ltd. v. Caterpillar, Inc.*, 2015 WL 10818831, at *9 (N.D. Ill. Nov. 1, 2015).

*United States v. Frazier*, 387 F.3d 1244, 1262 (11th Cir. 2004). A lack of reliable methodology is not simply handled by cross-examination at trial, because it has the potential to mislead the jury with the imprimatur of "expert" testimony. The case cited by UAC is inapposite, because the court was addressing the factual basis for the opinion rather than the reliability of the methodology. *See Hertz v. Luzenac Am., Inc.*, 2011 WL 1480523, at *7 (D. Colo. Apr. 19, 2011).

UAC suggests that it be allowed to correct deficiencies in Pickens' explanation of his purported methodology by having Pickens testify at a *Daubert* hearing. This makes no sense. Nothing Pickens could say at a hearing would matter if it is not in the Stevenson Rpt. Anything outside of the Stevenson Rpt. should be excluded.

## II. TABLES 12 AND 13 SHOULD BE EXCLUDED.

Tables 12 and 13 of the Pickens Report ("Pickens Rpt.") are emblematic of the problem discussed *supra* – namely, that UAC seeks to keep conclusions that were based only on the null hypothesis, substituting Pickens' *ipse dixit* in lieu of the struck methodology.[3] Consider Table 13, reprinted in Exhibit A attached to this brief. UAC contends that by striking the last column, Pickens addressed the exclusion of the null hypothesis. UAC now claims that the Xs indicate that Stevenson concluded the trade secrets were generally known, readily ascertainable, reverse engineered, or independently developed. This is highly deceptive. All of the Xs in the table are based

---

[3] As discussed in Part I, all testimony based on the null hypothesis is excluded. That includes testimony that the trade secrets are independently developed, reverse engineered, generally known, or readily ascertainable. This Part brings particular attention to Tables 12 and 13, which also are based on the null hypothesis.

on the null hypothesis alone – i.e., the examination of whether there is any evidence, no matter how inconsequential, to support the proposition. Logic alone demonstrates this point. Why would the last column and the null hypothesis even be needed if Stevenson actually had determined these things were true? The column and the null hypothesis would have been entirely unnecessary – e.g., if the trade secret is generally known, then there can be no misappropriation, and no need for the null hypothesis. In short, the Xs in the table only have meaning in the context of the null hypothesis methodology. Stevenson had to use the null hypothesis because it allowed him to testify there was no misappropriation without having to actually address the overwhelming evidence to the contrary.

In addition to this logic, the record demonstrates that the Xs in the columns use the null hypothesis. An "X" for independent development did not mean that Stevenson was *opining* that UAC independently developed that trade secret; it meant, instead, only that there was *some evidence* (no matter how trivial) of independent development. *See* Dkt. 787-9 at 90, 141. Even Pickens agreed that the tables reflect the step of Stevenson's methodology where he "was looking to see if there was *any evidence* that an alleged trade secret was independently developed, readily ascertainable, generally known, or reverse engineered . . . and then he would reject the null hypothesis if he found *any of that evidence*." Dkt. 787-8 at 126:4-20 (emphasis added). Furthermore, the Stevenson Rpt. in its textual analysis does not reach the conclusions UAC now claims the tables represent. UAC has pointed to nowhere in the report Stevenson actually concluded that

the trade secrets were not misappropriated, or were generally known, readily ascertainable, reverse engineered, or independently developed, other than by use of the null hypothesis.

UAC raises two other arguments that are equally misplaced. First, UAC suggests that Alcoa is seeking to exclude everything, and provides a list of "opinions" supposedly threatened by Alcoa's motion. Dkt. 792-1 at 11-12. This is a strawman argument. Alcoa moved to exclude testimony (be it theories, analyses, or conclusions) that are *based on* the null hypothesis, not the underlying evidentiary observations. Alcoa's *Daubert* motion did not seek to exclude the facts themselves – and it has made that clear. Dkt. 787-1 at 16 ("Having deleted any relevant methodology, Pickens' other unsupported conclusions must be excluded.").

Second, UAC suggests the Court already concluded that reverse engineering and independent development are not tainted by the null hypothesis because it addressed Alcoa's argument that those conclusions must be excluded for discovery violations (although the Court determined that issue should be taken up in motions *in limine*). Dkt. 792-1 at 10-11. The Court's discussion of the discovery sanctions point cannot be taken as an indication that the Court was allowing in testimony based on the null hypothesis that it had just excluded.

III.    **PICKENS' OTHER NEW OPINIONS SHOULD BE EXCLUDED.**

Pickens departed from the Stevenson Rpt., changing a key concession of ▮ ███████████████████████████████████████████████ UAC dismisses

this change as simply "clarifying," and takes the untenable position that it is "consistent" with Stevenson because Pickens agrees that ████████████████ in UAC's document "match" Alcoa's document. Dkt 792-1 at 20-21. But Pickens nonetheless changed the language ████████████████████ of this trade secret manufacturing step that is not addressed in the Stevenson Rpt. Pickens admitted that the basis for his change was not in either the Stevenson or Pickens Rpt. *See* Dkt. 787-1 at 17 n.6. The change thus cannot be "consistent" with what Stevenson did – without considering data outside the Stevenson Rpt., there is no basis for Pickens' change.[4] Alcoa's objection to this substantive change and to Pickens' new ████████ opinion is a far cry from "quibbling over word choices." In all events, if it were mere quibbling, Pickens would not have changed the language.

Further, UAC seeks to lay blame on Alcoa for Pickens' deposition testimony that fell outside the Stevenson Rpt., claiming that Alcoa was required every time Pickens spoke to ask him if he planned to testify at trial as he testified in his deposition. There is no such requirement – and in any event, if as UAC states, Pickens "does not intend to offer opinions beyond the Stevenson Report," Dkt. 792-1 at 20, then UAC should agree to an order excluding the new opinions Alcoa identified.

Finally, UAC's reliance on *In re Sulfuric Acid Antitrust Litig.*, 235 F.R.D. 646, 660–61 (N.D. Ill. 2006), to suggest that Pickens' new opinions were adequately disclosed is misplaced. In that case, the supposedly undisclosed testimony was an

---

[4] It is difficult to discern how this change even helps UAC when Pickens can be impeached with Stevenson's Rpt. and prior statements at trial.

obvious paraphrase of the expert report. That is not the case here, where Alcoa has identified specific new opinions not in the Stevenson Rpt.—and the Court has required Pickens to confine his testimony to the Stevenson Rpt. UAC fails to point to where exactly these opinions are disclosed, instead simply citing to 12 pages in the report.

## IV. PICKENS SHOULD BE PRECLUDED FROM TESTIFYING AS TO MATTERS HE DID NOT VERIFY.

UAC's response on the ESi Memos brings into sharp relief the problem that Alcoa identified early on: it is inconceivable that an expert could duplicate four years and 10,000 hours' worth of work, including review of nearly 8,000 documents, in only two months. UAC nonetheless chose to assume the risk and engage a new expert, then took a shortcut. It simply had Pickens rely on the previously undisclosed ESi Memos. Pickens spent only about 400 hours and reviewed less than 500 documents, and that included the many ESi Memos which never had been produced. Because Pickens had not looked at all the underlying data or directed the analysis, Alcoa had no ability to cross-examine on the reliability of the ESi Memos. Indeed, Pickens chose not to consult with ESi on the work it had done and did not fully verify the accuracy or reliability of the information. As set forth in Alcoa's Motion, the result of these choices is that Alcoa cannot cross-examine on the reliability of the information upon which Pickens bases his opinion. The appropriate remedy is to preclude Pickens from relying upon the ESi Memos. *See* Dkt. 787-1 at 19-24.

UAC now attempts to downplay Pickens' reliance on the ESi Memos, arguing that the "ESi Memos do not play a central role," and suggesting that Pickens relied more

on the Stevenson Rpt. itself. Dkt. 792-1 at 23.[5] If true, this is even more troubling. Pickens would be moving farther away from the actual underlying evidence to rely primarily on the Stevenson Rpt. itself. This reliance is completely circular – Pickens would be relying for his report on the *same report* (albeit with some parts redlined). In short, if Pickens' mainly took Stevenson's word for it, it calls into question whether Pickens' report has any reliable basis.

UAC tries to suggest that these circumstances are akin to an expert reasonably relying on the report of another, unrelated expert. For example, a damages expert may use the results of a survey expert as the basis for a damages calculation, when the survey expert is subject to deposition and cross-examination at trial. This is comparing apples to oranges. A first expert can rely on a second expert's conclusions if not within the first expert's expertise and if the second expert testifies. Alcoa knows of no case where an expert was allowed to rely (without verification) on another expert for the expert's entire opinion on the same subject, making the expert merely a mouthpiece for the hidden expert behind the curtain. And Alcoa had no access to depose ESi on the Memos.[6]

Moreover, UAC has not demonstrated that Pickens' verification of the Memos

[5] UAC implies that Pickens testified the ESi Memos did not impact his opinions. Dkt. 792-1 at 23. But in fact, Pickens averred that the *corrections* to the original Stevenson Rpt. that were contained in *some* of the ESi Memos did not impact his opinions. Dkt. 787-4 at 2-3.

[6] UAC misleadingly suggests that Alcoa previously cross-examined Stevenson on the ESi Memos – but Alcoa could not have done so, when UAC refused to produce them. UAC's cited testimony was on a different process step. Dkt. 792-1 at 24 (citing ███████████████

was adequate such that he could reasonably rely on them under *Daubert*. *See* Dkt. 787-1 at 22. Pickens verified only some of the Memos—those he viewed as "more important." Dkt. 792-1 at 23. This is not adequate verification. UAC's own case, *Lemons v. Principal Life Ins. Co.*, found the investigation of another expert's findings "reasonable" where it "independently determin[ed] that the [other expert's] report is based on sound methodology *and accurately sourced to Company documents*" and "conduct[ed] a detailed review of [the] report *and the supporting documents.*" 2021 WL 3508685, at *5 (N.D. Ala. Aug. 9, 2021) (emphasis added).

## V. PICKENS CANNOT TESTIFY TO OPINIONS THAT REQUIRE EXPERTISE IN FAA MATERIALS QUALIFICATION.

Pickens testified that he has no expertise in FAA materials qualifications. Dkt. 787-1 at 24-25. He did not even know what UAC had to prove for its stretch-formed spar chords to meet FAA standards, and thus has no experience or knowledge that would qualify him to testify on the development timelines for FAA qualification. *Id.* While an expert need not be a specialist in all areas, the expert must be qualified to opine on the particular subject matter at issue. *See, e.g., Moore v. Intuitive Surgical, Inc.*, 995 F.3d 839, 852, 854 (11th Cir. 2021); *Trilink Saw Chain, LLC v. Blount, Inc.*, 583 F. Supp. 2d 1293, 1304–05 (N.D. Ga. 2008) (collecting cases). Pickens' qualifications cited by UAC—general familiarity with airline qualification requirements and direct experience with the NASA qualification process—are not sufficient, particularly in light of Pickens' own disclaimer at deposition on the extent of

his knowledge.[7] UAC's attempt to reframe the matter at hand as simply "development timing" fails to confront the problem: Pickens is not qualified to opine as to "development timing" that involves FAA materials qualification, i.e., whether UAC could meet the FAA standards for materials qualification within the necessary timeframe, *see* Dkt. 787-5 at 31. Likewise, he has no knowledge or qualifications to contest any of Dr. Eager's opinions concerning FAA requirements and the consequences thereof on stretched-form spar chord development, *see, e.g.*, Eagar Rpt. ¶¶ 79, 83, 98–99, 111–15.

UAC does not contest Alcoa's request to exclude Pickens' "opinion as to FAA qualification or certification, [or] disagreement with Alcoa's expert on these subjects." Dkt. 787 at 3; 787-1 at 25. UAC does not attempt to defend the section of Pickens' Rpt. called "Material Qualification." 787-5 at 31. Accordingly, these requests should be granted. *Kramer v. Gwinnett Cty.*, 306 F. Supp. 2d 1219, 1221 (N.D. Ga. 2004).

## CONCLUSION

Alcoa respectfully requests that the Court grant its Motion.

---

[7] Pickens' qualifications do not present the same issue as Alcoa's expert, Professor Eagar. UAC argued Alcoa's expert was unqualified on commercial development timelines. Dkt. 708-1 at 21-22. The Court never reached the issue of qualification because it agreed with Alcoa that Eager did not opine on *commercial* development timelines but rather *technical* development timelines. Dkt. 774 at 27.

Dated: November 19, 2021

Respectfully submitted,

*/s/ Courtland L. Reichman*

Caroline Walters
(*Admitted pro hac vice*)
Jennifer P. Estremera
(*Admitted pro hac vice*)
Kate M. Falkenstien
(*Admitted pro hac vice*)
Sara Edelstein
(*Admitted pro hac vice*)
Leaf Williams
(*Admitted pro hac vice*)
REICHMAN JORGENSEN
LEHMAN & FELDBERG LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Tel: (650) 623-1401
Fax: (650) 623-1449
cwalters@reichmanjorgensen.com
jestremera@reichmanjorgensen.com
kfalkenstien@reichmanjorgensen.com
sedelstein@reichmanjorgensen.com
lwilliams@reichmanjorgensen.com

Christine Lehman
(*Admitted pro hac vice*)
REICHMAN JORGENSEN
LEHMAN & FELDBERG LLP
1710 Rhode Island Avenue, NW, 12th
Floor
Washington, DC 20036
Tel: (202) 894-7310
Fax: (650) 623-1449
clehman@reichmanjorgensen.com

Courtland L. Reichman
(Georgia Bar No. 599894)
Sarah Jorgensen
(Georgia Bar No. 541130)
REICHMAN JORGENSEN
LEHMAN & FELDBERG LLP
1201 West Peachtree Street
Suite 2300
Atlanta, GA 30309
Tel: (404) 609-1040
creichman@reichmanjorgensen.com
sjorgensen@reichmanjorgensen.com

Michael Matulewicz-Crowley
(*Admitted pro hac vice*)
REICHMAN JORGENSEN
LEHMAN & FELDBERG LLP
750 Third Avenue Suite, Suite 2400
New York, NY 10017-1965
Tel: 212-381-1965
mmatulewicz-
crowley@reichmanjorgensen.com

Attorneys for Plaintiff Arconic Inc.

## <u>CERTICATE OF COMPLIANCE WITH LR 5.1(C)</u>

This is to certify that the foregoing document was prepared using Times New Roman 14 point font in accordance with LR 5.1(C).

Dated: November 19, 2021 */s/ Courtland L. Reichman*
Courtland L. Reichman

**EXHIBIT A**



**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that I have electronically filed the above document with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to all registered counsel.

This 19th day of November, 2021          */s/ Courtland L. Reichman*
Courtland L. Reichman