**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| ARCONIC CORPORATION, and HOWMET AEROSPACE Inc., | ) ) ) | |
| Plaintiffs and Counterclaim-Defendants, | ) ) | Civil Action No.: 1:15-cv-01466-ELR |
| v. | ) ) | Jury Trial Requested |
| UNIVERSAL ALLOY CORPORATION, | ) ) ) | |
| Defendant and Counterclaim-Plaintiff. | ) | |

**ALCOA'S MOTION IN LIMINE #3
AND MEMORANDUM OF LAW IN SUPPORT THEREOF
TO EXCLUDE UAC'S EVIDENCE RELATING TO
UNIDENTIFIED PUBLIC LITERATURE**

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................1

BACKGROUND ................................................................................2

A.    UAC Fails to Disclose Public Literature in
      Discovery Responses.............................................................3

B.    UAC Identifies Public Literature After the Close
      of Fact Discovery. ................................................................6

ARGUMENT......................................................................................7

I.    UAC FAILED TO DISCLOSE THIS
      INFORMATION IN A TIMELY MANNER. ....................................8

II.   UAC'S FAILURE TO DISCLOSE WAS NOT
      SUBSTANTIALLY JUSTIFIED.......................................................10

III.  UAC'S FAILURE TO DISCLOSE WAS NOT
      HARMLESS.................................................................................12

CONCLUSION.................................................................................16

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Am. Pegasus SPC by and through Sybersma v. Clear Skies Holding
Co., LLC,*
2016 WL 11710067 (N.D. Ga. Jan. 14, 2016) (Ross, J.) ..................................14

*Bayer Healthcare Pharms., Inc. v. River's Edge Pharms., LLC,*
2015 WL 11142427 (N.D. Ga. May 21, 2015)....................................................15

*Bayer Healthcare Pharms., Inc. v. River's Edge Pharms., LLC,*
2015 WL 11142425 (N.D. Ga. July 31, 2015) ....................................................9

*Bell v. Guardian Automotive Corp.,*
2021 WL 3017987 (N.D. Ga. Jan. 21, 2021) (Ross, J.).....................................15

*C.f., McKesson Info. Sols. LLC v. Epic Sys. Corp.,*
242 F.R.D. 689 (N.D. Ga. 2007) .......................................................................9

*Cable Broadband & Telecommunications, LLC v. Depositors Ins. Co.,*
2018 WL 10647207 (N.D. Ga. Feb. 28, 2018) (Ross, J.)...................................12

*Canon, Inc. v. Color Imaging, Inc.,*
2016 WL 11745665 (N.D. Ga. Jul. 5, 2016) ......................................................12

*Hill v. Konecranes, Inc.,*
2019 WL 3842072 (S.D. Ga. Apr. 15, 2019) .....................................................14

*Knight through Kerr v. Miami-Dade Cty.,*
856 F.3d 795 (11th Cir. 2017) ............................................................................11

*Little v. Ford Motor Co.,*
2017 WL 6994586 (N.D. Ga. Dec. 21, 2017) (Ross, J.) .....................................7

*Mee Indus. v. Dow Chem. Co.,*
608 F.3d 1202 (11th Cir. 2010) .........................................................................14

*Mitchell v. Ford Motor Co.*,
    318 F. App'x 821 (11th Cir. 2009) ...........................................................7, 13, 14

*Reese v. Herbert*,
    527 F.3d 1253 (11th Cir. 2008) ...........................................................................13

*Thermolife Int'l, LLC v. Hi-Tech Pharms., Inc.*,
    2021 WL 4185899 (N.D. Ga. Aug. 3, 2021) (Ross, J.) .....................................10

*Thibeault v. Square D Co.*,
    960 F.2d 239 (1st Cir. 1992) ...............................................................................12

*United States v. Proctor*,
    356 U.S. 677 (1958) .............................................................................................16

*Woods v. DeAngelo Marine Exhaust, Inc.*,
    692 F.3d 1272 (Fed. Cir. 2012) .......................................................................9, 15

**Rules**

Fed. R. Civ. P. Rule 16 ..........................................................................................10

Fed. R. Civ. P. Rule 26 .......................................................................7, 12, 13, 16

Fed. R. Civ. P. Rule 37 ..........................................................................2, 7, 10, 11

NOW COME Arconic Corporation and Howmet Aerospace Inc. (f/k/a Alcoa Inc., collectively "Alcoa"),[1] and respectfully file this Motion in Limine #3 and Memorandum of Law in Support Thereof to Exclude Evidence Relating to Unidentified or Unproduced Public Literature (the "Motion").

## INTRODUCTION

UAC again seeks to introduce documents it failed to identify or produce during discovery.  This is part of a pattern and practice – it is not an isolated occurrence.  The Court already sanctioned UAC and excluded its reverse engineering and statute of limitations theories and evidence at summary judgment for failing to disclose these materials during discovery – undeterred, UAC now seeks to admit them at trial. (*See* MIL #1).  UAC also seeks to introduce documents it produced only after depositions and expert reports. (*See* MIL #2).  What is more, UAC also seeks to introduce the testimony of Julian Gheorghe after having told Arconic during discovery that he has no relevant information. (*See* MIL #4).  This time, UAC seeks to rely on documents purportedly showing Alcoa's trade secrets were common knowledge or readily ascertainable when it never identified those documents during fact discovery despite a clear obligation to do so.

---

[1] Arconic was formerly known as "Alcoa."  Because many historical documents refer to "Alcoa," for simplicity, Plaintiff is referred to as "Alcoa" herein.

1

Alcoa served multiple written discovery requests asking for these documents. Instead of complying with its discovery obligations, UAC attempts to ambush Alcoa at trial. UAC only identified one source during fact discovery. Now, it lists almost 70 (if not more) sources of public literature on its Trial Exhibit List. Rule 37(c) does not permit such an outcome. Alcoa respectfully asks this Court to exclude any late or undisclosed public documents from trial. [2]

## **BACKGROUND**

Alcoa spent two and a half years seeking discovery into one of UAC's primary defenses — namely, that Alcoa's trade secrets are not secrets at all because they are common knowledge or readily ascertainable from the public domain. Considering the importance of this defense, one would think that UAC would have bent over backwards to prove it up. Instead, UAC refused to offer substantive responses to relevant discovery requests and withheld documents. UAC had ample opportunity to identify whatever public literature that it contends contains Alcoa's trade secrets. It did not do so until well after the close of discovery, withholding much of the

---

[2] Exhibit 1 to the accompanying Declaration of Caroline M. Walters ("Walters Decl.") is a non-exhaustive list of public literature that is included on UAC's Trial Exhibit List. For clarity, Alcoa seeks to exclude all public literature that was not identified in fact discovery – which is everything but one chapter of one book (and that one chapter, in any event, does not appear to be on UAC's Trial Exhibit List).

information until it submitted its technical rebuttal expert report and still more until it submitted its Trial Exhibit List in connection with the Proposed Pretrial Order. *See* Walters Decl., Ex 1.

## A.     UAC FAILS TO DISCLOSE PUBLIC LITERATURE IN DISCOVERY RESPONSES.

On June 10, 2015, five days after filing its Amended Complaint, Alcoa issued its first set of Requests for Production ("RFP"), which asked UAC to produce, among other things, "documents, books, treatises or other material on which you, your expert witness or any other witness may rely upon at the trial of this case." Walters Decl., Ex. 2.  UAC objected and never responded in substance.  *See* Walters Decl., Ex. 3; *see also* Walters Decl., Ex 4.

On June 22, 2015, UAC served its initial disclosures.  *See* Walters Decl., Ex. 5.  Therein, UAC said: "The information Alcoa claims UAC misappropriated is not secret or confidential, but is public knowledge, disclosed voluntarily by Alcoa to third parties, and/or in use or readily ascertainable by others in the industry."  *Id.* at 3.  However, UAC did not identify any public literature or other such disclosures as a category of documents that UAC would "use to support its claims and/or defenses." *See id.*, Att. C.  UAC never supplemented these disclosures.

On January 28, 2016, Alcoa served interrogatory requests asking, for each of Alcoa's trade secrets that UAC contends "is not a trade secret," to "identify all

reasons why you so contend and all of the facts supporting such contention" and to identify all "affirmative defenses" for both these requests, Alcoa asked UAC to identify persons with knowledge and supporting documents. *See* Walters Decl., Ex. 6 at Interrogatory Nos. 18, 19. On the same day, Alcoa requested documents relating to UAC's claims in its Answer to Amended Complaint that certain of Alcoa's trade secret processes are "consistent with well-known science" (¶¶ 23-24) and are "generally known or readily ascertainable" (¶ 43). *See* Walters Decl., Ex. 7 at RFPs 41, 44. UAC initially provided no information in response to Interrogatories 18 and 19; and while it promised to produce responsive documents to RFP Nos. 41 and 44 (subject to a host of objections), it never did. *See* Walters Decl., Exs. 8-9; *see also* Walters Decl., Ex. 10.

On August 31, 2016, UAC filed an Amended Answer and Counterclaim, *see* [Dkt. 159], that alleged: "The process for creating aluminum extrusions involves the use of well-known science, including standards and process steps that have been published in engineering books and similar publications for decades." *Id.* ¶ 25.[3] The

---

[3] UAC further alleged: "The process by which aluminum extrusions are stretch-formed also involves use of well-known science that is generally known and readily accessible, although it takes an enormous investment to acquire stretch-forming equipment that is big enough and powerful enough to stretch-form extrusions that are as big as spar chords." *Id.*

same paragraph identified the first public literature reference disclosed by UAC in this case: "a chapter on 'Stretch Forming'" in "the 1961 edition of Alcoa's book, 'Forming Alcoa Aluminum.'"  *Id.*  UAC also claimed: "If an aluminum extrusion company wants to develop a stretch-forming capability, it can read about the process in readily available literature and watch the process on widely available websites such as YouTube."  *Id.* ¶ 26.   Given the additional allegations, Alcoa again propounded RFPs seeking all documents relating to UAC's new allegations.  *See* Walters Decl., Ex. 11 at RFPs 120-121.   UAC did not produce any documents responsive to RFP 121, but promised to produce documents responsive to RFP 120 — but it never did.  *See* Walters Decl., Ex. 12.   In September 2016, in response to Alcoa's motion to compel, Magistrate Judge Russell G. Vineyard ordered UAC to produce discovery as to "how UAC developed [the] process [for manufacturing the parts at issue]," "the extent to which Alcoa's information was used to develop that process," and "UAC's defenses."   Dkt. 160 at 12-13.   The Court subsequently directed UAC to comply with its discovery obligations two more times.   Walters Decl., Exs. 13 & 14.

Finally, on June 29, 2017, UAC provided a limited, substantive response to Interrogatories 18 and 19.  *See* Walters Decl., Ex. 15.  ████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████

On October 11, 2017, Alcoa wrote to UAC ████████████████████

██████████████████████████████████████████

████████████████████████████  Accordingly, Alcoa noted: "As the Interrogatory seeks all facts supporting UAC's contentions, we assume UAC does not intend to attempt to offer at trial any additional evidence regarding the claimed common knowledge of the trade secrets." *Id.*  It further warned: "To the extent UAC does intend to offer any additional evidence in this regard, it must identify the evidence in response to this interrogatory." *Id.*  On October 19, 2017, UAC refused to further amend its response to Interrogatory 18.  *See* Walters Decl., Ex. 17.

In short, UAC identified only one book in support of its allegation that Alcoa's trade secrets were common knowledge or readily ascertainable.

## B.    UAC IDENTIFIES PUBLIC LITERATURE AFTER THE CLOSE OF FACT DISCOVERY.

Fact discovery finally closed on December 20, 2017.  *See* Order [Dkt. 324]. On May 4, 2018, UAC issued a rebuttal report by a technical expert (Dr. Stevenson), and for the first time identified public literature beyond the one chapter of the book referenced in UAC's counterclaims.  Dkt. 722.5.  Dr. Stevenson referenced almost

6

70 sources of public literature which he opined disclosed aspects of Alcoa's trade secrets. *See* Walters Decl. Ex. 1. Two years later, UAC identified more than a dozen additional public literature references on its Trial Exhibit List. *See* Walters Decl., Ex. 1 (entries not previously identified by ESi).

## **ARGUMENT**

The Federal Rules of Civil Procedure and Local Rules of the Northern District make clear that parties ignore their discovery obligations at their own peril. "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is *not allowed to use that information or witness to supply evidence . . .* at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c) (italics added). "The burden of establishing that a failure to disclose was substantially justified or harmless rests on the nondisclosing party." *Little v. Ford Motor Co.*, 2017 WL 6994586, at *5 (N.D. Ga. Dec. 21, 2017) (Ross, J.) (quoting *Mitchell v. Ford Motor Co.*, 318 F. App'x 821, 824 (11th Cir. 2009)).

As this Court recently noted: "Late disclosure of information, witnesses, and theories—particularly after the deposition phase of discovery—undermines the purposes of discovery and warrants exclusion at . . . trial." Order at 6 n.3 [Dkt. 676] (quoting [Dkt. 598 at 4]). Here, UAC failed to disclose public literature references in support of its defenses in a timely manner and this failure was neither substantially

justified nor harmless, accordingly, this evidence and argument should be excluded. This later disclosure is particularly prejudicial.   Fairly extensive and technically oriented discovery would be necessary on documents and materials that allegedly disclose Alcoa's trade secret.  Alcoa has been deprived of the ability to conduct fact discovery to establish that these sources are different than its trade secret.

## I.   UAC FAILED TO DISCLOSE THIS INFORMATION IN A TIMELY MANNER.

As the procedural history above shows, despite multiple requests and a Court Order requiring UAC to produce information on the development of its process, whether it used Alcoa information, and its defenses, UAC did not identify any public literature or other references in support of a claim of common knowledge or that the trade secrets were readily ascertainable until *well after* the close of fact discovery. With the exception of one source (that does not even appear to be listed on UAC's exhibit list), UAC did not identify any public literature it contended showed that Alcoa's trade secrets were common knowledge or readily ascertainable until it provided its technical *rebuttal* reports. It identified further public literature on its Trial Exhibit List.  However, the identification of public literature after the close of fact discovery and the deadline for Alcoa's opening reports comes too late.

UAC was required to disclose the information in fact discovery.  "Contention interrogatories—like the interrogatory here—serve an important purpose in helping

to discover facts supporting the theories of the parties. Answers to contention interrogatories also serve to narrow and sharpen the issues thereby confining discovery and simplifying trial preparation." *Woods v. DeAngelo Marine Exhaust, Inc.*, 692 F.3d 1272, 1279-80 (Fed. Cir. 2012).   Indeed, the Rules contemplate discovery of information that may undercut a party's claims be provided upfront. *C.f.*, *McKesson Info. Sols. LLC v. Epic Sys. Corp.*, 242 F.R.D. 689, 692 (N.D. Ga. 2007) ("the rules contemplate that a party receive this information [with respect to a patent's priority date] up front, during discovery, so that when the time comes to discharge its burden [on invalidity] it has the ammunition necessary to do so."). Whether expertise may be necessary to opine on the relevance of the evidence does not relieve a party of its obligation to provide the underlying evidence during fact discovery. *Bayer Healthcare Pharms., Inc. v. River's Edge Pharms., LLC*, 2015 WL 11142425, at *7 (N.D. Ga. July 31, 2015) ("The fact that an expert would ultimately put the facts together to support the legal theory in an opinion is of no consequence as to whether a responding party must timely supplement such an interrogatory.").

Accordingly, when UAC disclosed new evidence and defenses (reverse engineering and the basis for statute of limitations) for the first time in its rebuttal technical report, the Court agreed with Alcoa that "late disclosure warrants exclusion." *See* Dkt. 676 at 12.  So too here.  UAC should not be permitted to rely

9

on public literature disclosed for the first time in Stevenson's rebuttal report (half a year after the close of fact discovery) or in UAC's Trial Exhibit List (two and half years after the close of fact discovery). As addressed below (Sections II and III), this failure to disclose was neither substantially justified nor harmless, and therefore should lead to exclusion under Rule 37(c).

In addition, there is a separate basis for exclusion for the late identification of public literature and references because UAC failed to adhere to this Court's Scheduling Order, which required the completion of fact discovery by December 20, 2017. Dkt. 324. As this Court recently held, "[f]ailing to comply with a court's scheduling order is a violation of Rule 16" and "the standard set forth in Rule 37(c)(1) does not govern sanctions for violating scheduling orders." *Thermolife Int'l, LLC v. Hi-Tech Pharms., Inc.*, 2021 WL 4185899, at *4 (N.D. Ga. Aug. 3, 2021) (Ross, J.). Further, UAC defied a Court Order requiring production of evidence supporting its defenses. Dkt. 160 at 13–14. Accordingly, UAC failed to "obey a scheduling or other pretrial order," and exclusion is warranted. *See Thermolife Int'l, LLC*, 2021 WL 4185899, at *4 (quoting Fed. R. Civ. P. 16(f)).

## II.   UAC'S FAILURE TO DISCLOSE WAS NOT SUBSTANTIALLY JUSTIFIED.

Late-produced evidence may only be used at a trial if the production was

"substantially justified" or "harmless." *See* Fed. R. Civ. P. 37(c). "Substantially justified means that reasonable people could differ as to the appropriateness of the contested action." *Knight through Kerr v. Miami-Dade Cty.*, 856 F.3d 795, 812 (11th Cir. 2017). Here, there is no substantial justification for UAC's long delay.

As an initial matter, UAC is the party who placed these documents at issue. From its first set of initial disclosures, UAC claimed that Alcoa's trade secrets were in the public domain. UAC doubled down on this claim in its Counterclaim. Accordingly, it should come as no surprise that UAC would have to produce and identify *evidence* to back such claims up. Its failure to even attempt to do so until months to years after the close of fact discovery is anathema to the very purpose of discovery. *See* Order at 6 n.3 [Dkt. 676].

Alcoa diligently pursued this information at all stages of the litigation, over the course of several years, beginning with RFPs issued days after filing the operative complaint. It even moved to compel this information and the Court ordered it to be produced. ██████████████████████████████████████ ████████████████████████████████ and warned UAC that Alcoa intended to rely on its non-production. *See* Walters Decl., Ex. 16. Despite Alcoa's repeated requests and warning and the Court's Order, UAC still failed to produce or identify relevant documents during discovery.

11

Moreover, Rule 26(e) "itself furnishes fair warning" and, when "flouted, district courts possess the power to impose sanctions without first issuing a firm discovery deadline or admonitory order." *Thibeault v. Square D Co.*, 960 F.2d 239, 245 (1st Cir. 1992); *see also, e.g., Cable Broadband & Telecommunications, LLC v. Depositors Ins. Co.*, 2018 WL 10647207, at *12 (N.D. Ga. Feb. 28, 2018) (Ross, J.) ("Parties have certain discovery obligations that arise automatically" and "must . . . respond to proper discovery requests from opposing parties."). In short, UAC's failure to disclose was not substantially justified.

### III.   UAC'S FAILURE TO DISCLOSE WAS NOT HARMLESS.

When considering whether a late disclosure is harmless, courts consider five factors: "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence." *Canon, Inc. v. Color Imaging, Inc.*, 2016 WL 11745665, at *2 (N.D. Ga. Jul. 5, 2016) (attribution omitted). Here, all five factors lean against a finding that UAC's late disclosures are harmless.

*First*, UAC's decision to identify a host of public literature references *months to years* after the close of fact discovery came as a surprise, considering Alcoa's

diligence in pursuing the information for years and formal notice that it intended to rely on UAC's nondisclosure. "Because . . . discovery rules are designed to allow both sides in a case to prepare their cases adequately and to prevent surprise, compliance with the requirements of Rule 26 is not merely aspirational." *Reese v. Herbert*, 527 F.3d 1253, 1266 (11th Cir. 2008) (citation omitted).

*Second*, by waiting *months* after the close of fact discovery and well after initial expert reports to identify any references other than the 1961 Alcoa book, UAC deprived Alcoa of the opportunity to examine these references in further written discovery, witness depositions, or with experts. *See* Order at 11 [Dkt. 676] (noting UAC's late disclosures "prejudiced Plaintiff by denying it the opportunity to properly oppose Defendant's defenses"). In other words, UAC deprived Alcoa of any meaningful opportunity to cure the surprise by conducting additional written discovery or depositions of fact and expert witnesses. *See, e.g., Mitchell v. Ford Motor Co.*, 318 F. App'x 821, 824–25 (11th Cir. 2009) (affirming exclusion of expert witness testimony based on references undisclosed during discovery).[4]

---

[4] Even if some of these references were included in earlier productions, they were not identified in response to Alcoa's interrogatories, and Alcoa should not be forced to "trawl through a 'mountain of other evidence' to ferret out the facts and evidence" it specifically requested to be identified in an interrogatory. *See Hill v. Konecranes, Inc.*, 2019 WL 3842072, at *3 (S.D. Ga. Apr. 15, 2019); *see also, e.g.,*

For example, Alcoa has no understanding as to the relevance of the 2002 Materials Science and Engineering A338 publication by De Robinson, JD, entitled "Optimizing the homogenization of zirconium containing commercial aluminum alloys using a novel process model. " Dkt. 719, G-2(a) (UAC's Trial Exhibit List) at PTX 1367.  Similarly, what is the relevance of the Defense Department publication DOD 5200.2-R dated January 1987?  *Id.* at PTX 1337.  Alcoa was denied the opportunity to discover, among other things, witnesses' knowledge of these materials, use of the information therein by UAC, or similarity between any information therein and UAC's processes.  The same is true of the other 67 plus public literature entries on UAC's Trial Exhibit List.  This situation is very analogous to the requirement to identify prior art on which a party seeks to invalidate a patent in a patent case.  The rules require such identification because the patent owner must be afforded an opportunity to take fact discovery to determine the

---

*Mee Indus. v. Dow Chem. Co.*, 608 F.3d 1202, 1221–22 (11th Cir. 2010*); Am. Pegasus SPC by and through Sybersma v. Clear Skies Holding Co., LLC*, 2016 WL 11710067, at *4 (N.D. Ga. Jan. 14, 2016) (Ross, J.) (noting "Plaintiff was under no obligation to hunt down the promised [and unproduced] documents").  As this Court already said, UAC produced "over two million documents in discovery" and "isolated, unidentified documents are not equivalent to putting your opponent on notice—especially when there are voluminous records."  Order at 11–12 [Dkt. 676].  Notably, at least the 69 public literature references Alcoa has identified on UAC's Trial Exhibit List were not identified with bates stamps.  *See* Walters Decl., ¶ 3.

technical nature of the prior art. *Woods v. DeAngelo Marine Exhaust, Inc.*, 692 F.3d 1272, 1282 (Fed. Cir. 2012) (failure to disclose prior art until the last day of discovery strips party of meaningful opportunity to prepare); *Bayer Healthcare Pharms., Inc. v. River's Edge Pharms.*, LLC, 2015 WL 11142427, at *8 (N.D. Ga. May 21, 2015), report and recommendation adopted, 2015 WL 11142424 (N.D. Ga. June 16, 2015) (opportunity to conduct expert discovery on an untimely disclosure does not rend the failure to disclose harmless, and "defeats the entire purpose of the Patent Local Rules, which is to require the early disclosure of parties' positions").

*Third,* allowing this evidence at trial would be disruptive and would unfairly prejudice Alcoa.  Every trial lawyer knows the adage that one should not ask a question on cross-examination without knowing the answer.  But Alcoa had no way of testing the answers of any UAC witness on any of these late-identified references, and thus is subject to ambush at trial.

*Fourth*, this evidence appears intended to bolster UAC's defenses that Alcoa's trade secrets were common knowledge or readily ascertainable, and as such, their late disclosure prejudiced Alcoa's ability to prepare its case and would result in ambush at trial.  *See Bell v. Guardian Automotive Corp.*, 2021 WL 3017987, at *3 (N.D. Ga. Jan. 21, 2021) (Ross, J.) ("A party cannot abuse Rule 26(e) to merely bolster a defective or problematic expert witness report.").

*Fifth*, the only rationale UAC has ever provided for not producing relevant information is that it was entitled to withhold the information as attorney work-product because Alcoa asserted work product privilege over a separate and distinct interrogatory dispute.  *See* Walters Decl. Ex. 17.  The situations are not analogous,[5] and the Court has already rejected a similar argument by UAC in connection with its failure to identify evidence in support of its other defenses within the discovery period.  Dkt. 676 at 11 (explaining that "the purpose of modern discovery is to 'make a trial less a game of blindman's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent.'") (quoting *United States v. Proctor*, 356 U.S. 677, 682 (1958)).

## CONCLUSION

For all these reasons, UAC's failure to disclose public literature references (beyond the one book chapter timely disclosed, if it is even listed on UAC's Exhibit List) is neither substantially justified nor harmless, and all references and related testimony should be excluded at trial.

---

[5] Alcoa asserted attorney work product over UAC's request that Alcoa identify information in *UAC's* production that supports Alcoa' claims.  Dkt. 221.  Here, in contrast, Alcoa asked UAC to identify the public information that UAC claimed existed and supported its case.

Dated: March 8, 2022                                Respectfully submitted,

                                                    */s/ Courtland L. Reichman*

Jennifer Estremera (Pro Hac Vice)          Courtland L. Reichman (Pro Hac Vice)
Kate S. Falkenstien (Pro Hac Vice)         Sarah O. Jorgensen (Pro Hac Vice)
Leaf Williams (Pro Hac Vice)               REICHMAN JORGENSEN LEHMAN &
Sara Edelstein (Pro Hac Vice)              FELDBERG LLP
REICHMAN JORGENSEN LEHMAN &                1201 West Peachtree Street, Suite 2300
FELDBERG LLP                               Atlanta, GA 30309
100 Marine Parkway, Suite 300              Tel: (404) 609-1040
Redwood Shores, California 94065           creichman@reichmanjorgensen.com
Tel: (650) 623-1401                        sjorgensen@reichmanjorgensen.com
jestremera@reichmanjorgensen.com
kfalkenstien@reichmanjorgensen.com
lwilliams@reichmanjorgensen.com            Christine E. Lehman (Pro Hac Vice)
sedelstein@reichmanjorgensen.com           REICHMAN JORGENSEN LEHMAN &
                                           FELDBERG LLP
Caroline M. Walters (Pro Hac Vice)         1710 Rhode Island Avenue, NW
Michael Matulewicz-Crowley (Pro Hac        12th Floor
Vice)                                      Washington, DC 20036
REICHMAN JORGENSEN LEHMAN &                Tel: (202) 894-7310
FELDBERG LLP                               clehman@reichmanjorgensen.com
750 Third Avenue, Suite 2400
New York, NY 10017
Tel: (212) 381-1965
cwalters@reichmanjorgensen.com
mmatulewicz-
crowley@reichmanjorgensen.com              *Attorneys for Arconic Corporation and Howmet*
                                           *Aerospace Inc. (Plaintiffs and Counterclaim-*
                                           *Defendants)*

17

## <u>CERTICATE OF COMPLIANCE WITH LR 5.1(C)</u>

This is to certify that the foregoing document was prepared using Times New

Roman 14 point font in accordance with LR 5.1(C).

Dated: March 8, 2022                          <u>*/s/ Courtland L. Reichman*</u>
                                              Courtland L. Reichman

18

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that I have electronically filed the above document with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to all registered counsel.

This 8th day of March, 2022                    */s/ Courtland L. Reichman*
                                               Courtland L. Reichman