**FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| ARCONIC CORPORATION AND HOWMET AEROSPACE INC., | ) ) ) | |
| Plaintiffs and Counterclaim-Defendants, | ) ) | Civil Action No.: 1:15-cv-01466-ELR |
| v. | ) ) | |
| UNIVERSAL ALLOY CORPORATION, | ) ) ) | |
| Defendant and Counterclaim-Plaintiff. | ) ) | |

**UAC'S MOTION IN LIMINE TO PRECLUDE ARGUMENT, EVIDENCE,
AND TESTIMONY REGARDING SHORTENED DEVELOPMENT TIME**

The present case regards the manufacture of stretch formed spar chords by two competing aluminum alloy aerospace component manufacturers: Plaintiffs Arconic Corporation and Howmet Aerospace Inc. (collectively, "Arconic") and Defendant Universal Alloy Corporation ("UAC"), whom Arconic accuses of misappropriating its trade secrets.  There is no real dispute that UAC was capable of developing stretched formed spar chords on its own, so Arconic's damages theory is based on the premise that use of its trade secrets saved UAC **enough time** to meet a critical January 2016 deadline.  And on that basis, Arconic is seeking **over $300 million in combined damages**.

However, as his recent deposition has revealed, Arconic's replacement technical expert, Prof. Richard Neu, will offer **no opinion** on how much development time was saved by the alleged misappropriation[1]—whether it was a year, a month, or a matter of days.  But, despite this absence of support, Arconic's damages expert—in purported reliance on the technical expert—intends to present to the jury an enormous damages figure based on his assumption that the alleged misappropriation enabled UAC to bring its stretch formed spar chords to market by January 2016, rather than by some unidentified future date.  Arconic's damages case rests on this house of cards, and accordingly Arconic intends to submit unsupported guesswork on UAC's development time to a jury, in direct violation of the Federal Rules of Evidence.  Accordingly, UAC moves to preclude Arconic from presenting evidence, testimony, and argument quantifying or otherwise specifying the amount of time purportedly saved by UAC due to its alleged misappropriation of Arconic's trade secrets, and damages theories based on this unreliable assumption.

## I.    FACTUAL BACKGROUND

Earlier this year, Arconic engaged Prof. Richard Neu as a replacement technical expert, following the unfortunate passing of its original technical expert,

---

[1] Notably, with regard to the alleged trade secret misappropriation, Prof. Neu could not identify which trade secrets he opines on, nor could he even provide the number for how many trade secrets are at issue in this case, stating only that ███████████ ████████████████████████████████████████████████████ ████████  See Ex. B (Neu Dep. Tr.) at 9:8-12, 11:2-15:22.

Prof. Thomas Eagar.  On March 1, 2023, Prof. Neu served UAC with an expert report.  Ex. A.  In that report, Prof. Neu "adopt[ed]" the November 14, 2017 expert report of Prof. Eagar "as [his] own" ("Neu Report").  Ex. A ¶ 5; Ex. C (Excerpt from Neu Report).

Section VI of the Neu Report claims that UAC "  " but does not provide any opinion as to: (1) how much time this "substantial reduction" amounts to, (2) what is the ███████ ██████████████████████████████████████████ " or (3) a date on which he believed UAC began to save development time.  Ex. C ¶¶ 298-302.[2]  Notably, the Neu Report does not address whether UAC could or could not have been able to develop its stretch formed spar chords by January 2016 in the absence of the alleged misappropriation.  Ex. C ¶¶ 298-302.  Likewise, Prof. Neu's March 1, 2023 report does not provide any opinion on any amount of "saved time." *See id.* Ex. A ¶¶ 1-7; Ex. C ¶¶ 289-302.

---

[2]  UAC previously moved to exclude these paragraphs under *Daubert* as providing improper opinions by Prof. Eagar on commercial development. Dkt. No. 707 at 19-22.  The instant motion is distinct because it does not involve any challenge to Prof. Neu's area of expertise, but instead challenges whether Arconic can reliably present to the jury a position on *how much* time UAC saved but for its alleged misappropriation based on Prof. Neu's adoption of Prof. Eager's report and Prof. Neu's specific responses at deposition.

Prof. Neu was deposed on April 5, 2023.  Ex. B (Excerpt from Neu Deposition Tr.).  At that deposition, counsel for UAC questioned Prof. Neu on his opinion that UAC had allegedly saved some amount of development time.  Prof. Neu responded that he would not quantify the amount of time saved:



Ex. B at 219:10-20; *see also id.* at 216:20-24 (" ███████████████████████████

███████████████████████████████████████████████

███████████████████ (emphasis added)); *id.* at 218:7-15 ████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████)).  And as to specific steps, Prof. Neu's testimony was equally vague.  For example, he " ███████████████ how much time " ████████████████

noting that he ██████████████████████████," *Id.* at 171:1-7, or speculating

that a heat treat soak study could ██████████," *Id.* at 108:25-109:21.

Moreover, Prof. Neu made numerous concessions about the limited time

needed to develop stretch formed spar cords, even in the absence of trade secret

misappropriation.  For example, Prof. Neu admitted that ████████████████

████████████████████████████████ Ex. B at 220:18-

221:7.  Similarly, though a basic fact relevant to any determination of *how much*

development time UAC purportedly saved by using Arconic's trade secrets, Prof.

Neu admitted that he ████████████████████████████████████

██████████████████████ *Id.* at 221:8-17.

Despite the absence of any technical opinion on the amount of time allegedly

saved by UAC, Arconic's damages expert, Mr. Jim Bergman, offers damages

opinions (lost profits and unjust enrichment) based on a specific date—and thus, on

a specific amount of time UAC purportedly saved assuming misappropriation.  In

his May 3, 2018 report ("Bergman Report"), Mr. Bergman opined that ████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████ starting in January 2016.  Ex. D (Excerpts from Bergman

Report) ¶¶ 91, 144 (stating that the ████████████████████████████

██████████████████████████████"); Ex. E (Excerpts from

Bergman Deposition Tr.) at 149:14-20 (confirming his estimate of damages was contingent upon UAC's misappropriation of a trade secret that was █████████ ████████████████████████). Because Mr. Bergman assumes that UAC could not have come to market by that date, he opines that ████████████████ ████████████████████████████████████ Ex. D ¶¶ 93, 101.

Mr. Bergman, however, does not cite to any factual basis for the assumption that UAC would not have been able to develop its stretch formed spar chords prior to January 2016, and cites to no facts, documents, or other expert testimony as underlying his assumption. *See* Ex. D ¶¶ 91, 93, 101, 144. Indeed, he conceded at his deposition that, despite his review of the Neu Report, he ████████████ ████████████████████████████████████████ ████████████████████████████████████████ ██████████████████████████ Ex. E at 143:18-144:6. Instead, Mr. Bergman admits that he relied on the Neu Report for his assumption that UAC could not have supplied stretch formed parts to Boeing in 2016 without misappropriation. Ex. E. at 142:21-143:13; 152:2-10.

## II.   LEGAL STANDARD

### A.   <u>Federal Rule of Evidence 702 and *Daubert*</u>

Federal Rule of Evidence 702 requires that expert testimony be "based on sufficient facts or data," "is the product of reliable principles and methods," and that

"the expert reliably applied the principles and methods to the facts of the case."  Fed. R. Evid. 702.  In short, any expert testimony "must be derived by the scientific method," and "must be supported by appropriate validation" such that the expert's testimony "establishes a standard of evidentiary reliability."  *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590 (1993).  Courts must ensure that "an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).  District Courts have "considerable leeway" in evaluating the reliability of expert testimony, even if "a ruling on the admissibility of expert evidence may be outcome determinative."  *Kilpatrick v. Breg*, 613 F.3d 1329, 1335 (11th Cir. 2010).

Moreover, "experience, standing alone, is not a 'sufficient foundation rendering reliable any conceivable opinion the expert may express.'"  *Mama Jo's Inc. v. Sparta Ins. Co.*, 823 F. App'x 868, 876 (11th Cir. 2020) (quoting *U.S. v. Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004).   Thus, even the most experienced experts "must explain how the experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how the experience is reliably applied to the facts."  *Frazier*, 387 F.3d at 1261 (quoting Fed. R. Evid. 702 advisory committee note (2000 amends.)).  This is particularly true when an expert "is relying

solely or primarily on experience."  *Fed. Trade Comm'n v. Nat'l Urological Grp., Inc.*, No. 1:04-CV-0, 2017 WL 6759868, at *41 (N.D. Ga. Oct. 10, 2017).

### B.    Federal Rule of Evidence 403

In addition, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  This Court has broad discretion to exclude evidence if its probative value is substantially outweighed by a danger of unfair prejudice, such as by confusing the issues, or misleading the jury. *See* Fed. R. Evid. 403; *United States v. Davis*, 779 F.3d 1305, 1311 (11th Cir. 2015).

## III.   ARGUMENT

Arconic has no reliable basis to argue that "UAC's theft of Alcoa's trade secrets … allowed UAC to enter a time-sensitive lucrative contract with Boeing for spar chords," but nonetheless intends to present that theory at trial.  *See* Dkt. 718, Attach. C at 2 (Outline of Plaintiff's Case).  Specifically, Arconic intends to argue that UAC saved enough development time to allow it to supply stretch formed spar chords to Boeing starting in January 2016.  But Arconic's experts failed to put forward any reliable opinion or factual basis to support this theory.  Accordingly, Arconic should be precluded from presenting evidence, testimony, or argument that

UAC could not have made sales of stretch formed spar chords to Boeing in January 2016 but for the development time UAC saved by allegedly using alleged Arconic trade secrets because (1) Arconic's technical expert Prof. Neu *refused* to provide any estimate of how much development time UAC allegedly saved, and (2) in the absence of any expert backing, it would unduly prejudicial for Arconic to insinuate or suggest to the jury that UAC was only able to supply Boeing with stretch formed spar chords in January 2016 due to an undisclosed amount of saved development time, or to offer damages figures that depend upon that unsupported assumption.

### A.  Prof. Richard Neu's Opinions On UAC's Saved Development Time Are Unreliable and Should Be Stricken

Prof. Neu's opinions on UAC's saved development time as set forth in paragraphs 298 to 302 of the Neu Report fail to disclose any methodology or factual basis for his conclusion that UAC " ███████████████████████████ ███████████████████████," compared to the " ████████████ ███████████████████████████████." Ex. C ¶¶ 298-302.  Accordingly these paragraphs of the Neu Report should be stricken and Prof. Neu should be precluded from presenting a theory of saved development time at trial under Fed. Rule of Evid. 702.

Prof. Neu makes no attempt to all to estimate *how much* time UAC saved due to its alleged misappropriation.  *Id.*  This fact is undisputed.  Ex. B at 216:20-24 (testifying that he ███████████████████████████

██████████████████████████████████████████████")).  Additionally, the Neu Report is devoid of any opinion or factual basis for establishing when UAC's development of stretch formed spar chords began, or what is the "███████████████████████████████████████████████████████████████████."[3] Ex. C ¶¶ 298-302.

Indeed, with regard to the absence of opinion on "████████████████████," Prof. Neu's deposition confirms that he has no evidence on "t███████████████████████████████████████████████," that would reflect the testing necessary to develop a "████████████," instead relying on his "████████████████████████████████████████.  Ex. B at 216:20-218:6.  And the testimony Prof. Neu offered was non-descript, unsupported, not tied specifically to stretch formed spar chords, and not disclosed in his report—e.g., developing ██████████████████████████████████████ would take ████████████████ ██████████████████" to accomplish  *Id.*

As such, Professor Neu cannot opine as to *how much* time UAC saved through its alleged use of Arconic trade secrets as compared to a "usual development time,"



_____

[3] At most, those paragraphs of the Neu Report suggest that ████████████████████ ████████████████████  Ex. C ¶ 300.  And although Prof. Neu points to the hiring of Henry Sigler as triggering time savings, Mr. Sigler was only briefly employed by UAC and has not been to the UAC facility since 2005—at a time when Prof. Neu opines that ██████████████████████████████████ *Compare* Ex. F (Sigler Dep. Tr.) at 95:17-19, 281:7-8, *with* Ex. C at ¶ 300.

when he has no factual support or even an opinion as to the ███████████ ████" for stretch formed spar chords.  Nor does Prof. Neu make any effort to account for the particularities of UAC's process, such as the skill and expertise of UAC's engineers and employees.  Ex. B at 221:8-17.

It is thus not surprising that at his deposition, Prof. Neu could only speculate that UAC "████████████████████████████████████ ████████████████████████ Ex. B at 218:7-219.  In fact, Prof. Neu *refused* to provide an opinion on UAC's saved development time, stating that he would not ████████████████████" how much time UAC purportedly saved but for its alleged misappropriation of Arconic trade secrets.  *Id.* at 219:10-20. As further evidence that he did not properly consider questions related to development time, Prof. Neu failed to determine what, if any, aspects of manufacturing stretch formed spar chords UAC could have developed in parallel. *Id.* 220:18-221:7; Ex. C ¶¶ 298-302.  And he "████████████████" whether UAC's engineers and employees developing UAC's stretch formed spar chords are more less talented or experienced than Alcoa's engineers who developed Alcoa's stretch formed spar chords."  Ex. B at 221:8-17.

Without taking any of these considerations into account, Prof. Neu cannot reliably opine that UAC achieved a "████████████████████████ ████████████████████████████████" (Ex. C

¶ 298), let alone that UAC would have been unable to manufacture stretch formed spar chords by the specific date of January 2016.  Prof. Neu wholly failed to "explain the engineering principles on which he relied," to reach his conclusion on UAC's supposed saved development time, or "how he applied those principles to reach his opinions." *Jester v. Emerson Climate Techs., Inc.*, No. 1:19-cv-05737-WMR, 2022 WL 1044060, at *4 (N.D. Ga. Jan. 5, 2022) (excluding testimony of an expert engineer as applying an unreliable methodology).  Therefore, as it stands, Prof. Neu's opinion on this matter is not "the product of reliable principles and methods," which Rule 702 and *Daubert* demand.

Notably, the amount of saved development time—rather than just the theoretical existence of saved time—is crucial to the damages question.  Varying orders of magnitude of *how much* time saved over the usual development time—for example whether its months, two years, five years, or a decade—would all result in different damages outcomes, particularly here, where neither Prof. Neu nor Mr. Bergman testify as to *when* UAC's development of stretch formed spar chords actually began.  Mr. Bergman himself acknowledged that this magnitude matters. He testified that, if a trade secret would take a month to develop, that trade secret would not be "███████████████████████████████████████████ ████████████████████████" in January 2016.  Ex. E at 151:12-16 ████████████ ███████████████████████████████████████████████████████████████

███████████████████████████████████

██████████

*In re Denture Cream Prods. Liab. Litig.*, 795 F. Supp. 2d 1345, 1355-67 (S.D. Fla. 2011), is instructive here.  There, the defendant moved to exclude the opinions of three experts, each of whom opined that the use of a product caused an increased risk of certain neurological diseases, in particular, copper-deficiency myelopathy. 795 F. Supp. 2d at 1350.[4]  None of the three experts, however, "kn[e]w the background risk of copper-deficiency myelopathy" in the general population.  *Id.* at 1355.   In excluding the experts' opinions, the court held that, "[a] reliable methodology should take into account the background risk," and the failure to consider background risk was a "serious methodological deficiency."  *Id.* at 1355-56 (quoting *McClain v. Metabolife Intern., Inc.*, 401 F.3d 1233, 1243 (11th Cir. 2005)).  Likewise here, Prof. Neu has no basis to opine that UAC *decreased* any development time because, like the three excluded experts in *Denture Cream Products*, Prof. Neu fails to adduce any facts establishing how long the usual development is to for the typical manufacture of stretch formed spar chords.

Moreover, Prof. Neu cannot simply rely on his expertise to satisfy the requirements of Rule 702.  It is well settled that experience alone is not a "sufficient

---

[4] In *Denture Cream Products*, the court addressed the admissibility of the three experts' opinions together, as they all "use[d] the same information" in reaching their opinions on causation.  795 F. Supp. at 1350.

foundation rendering reliable any conceivable opinion the expert may express.'" *Frazier*, 387 F.3d at 1261; *Fed. Trade Comm'n v. Nat'l Urological Grp., Inc.*, 2017 WL 6759868, at *41; *Jester* 2022 WL 1044060, at *5.  To do so, Prof. Neu would need to "explain how [his] experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how the experience is reliably applied to the facts." *Frazier*, 387 F.3d at 1261.   The Neu Report and Prof. Neu's deposition testimony make no effort to meet this standard.  *See* Ex. C ¶¶ 298-302.  Accordingly, the Court should strike paragraphs ¶¶ 298-302 of the Neu Report and exclude any testimony from Prof. Neu that suggest that "UAC's theft of Alcoa's trade secrets … allowed UAC to enter a time-sensitive lucrative contract with Boeing for spar chords," as Arconic has indicated it intends to argue at trial.  Dkt. 718, Attach. C at 2.[5]

---

[5] Moreover, to the extent Prof. Neu provided any testimony on development time related to the specific steps in the stretch formed spar chord process, he indicated ██████████████████████████████████████████████████████████████. Ex. B at 171:1-7 ██████████████████████████████); *id.* 108:25-109:21 (████████████ ██████████████████████████). Prof. Neu at provides no opinions on how development of each of these steps amounts to several years—further indicating that Prof. Neu's basis for opining that UAC saved ████████ of development time is unreliable and lacks factual support.

**B.** **The Court Should Strike Opinions Of Mr. Bergman That Rely On Prof. Neu's Opinions and Related Erroneous Factual Assumptions on UAC's Time Savings**

Relatedly, Mr. Bergman's opinions that rely upon these flawed assumption on time savings should be excluded.  Expert opinion that rests on "erroneous" factual assumptions is "insufficient as a matter of law" and must be excluded.  *United States v. City of Miami*, 115 F.3d 870, 873-74 (11th Cir. 1997); *see also Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993) (expert opinion that is "not supported by sufficient facts to validate it in the eyes of the law," or that is "contradict[ed] or otherwise render[ed] unreasonable" by the record, "cannot support a jury's verdict").  Similarly, it is "not [] appropriate" for an expert witness to "rely on [another expert's] flawed and speculative report" in reaching his or her opinions. *Gbarabe v. Chevron Corp.*, No. 14-cv-00173-SI, 2017 WL 956628, at *17 (N.D. Cal. Mar. 13, 2017).

Mr. Bergman, Arconic's damages expert, testified that "[i]t's beyond the scope of [his] opinion" whether "UAC could have gotten into the stretch form business in the timing they did without using Alcoa's trade secrets." Ex. E at 121:11-122:4.  Nonetheless, Mr. Bergman opines in his Report (without citing to any factual support) that:

- ████████████████████████████████████████
  ████████████████████████████████████████
  ████████████████████████████████████████
  ████████████████████████████████████████



Ex. D ¶¶ 91, 93, 101.

Mr. Bergman admits that the "█████████████████ for these opinions is that UAC would have not have been able to manufacture or sell stretch formed spar chords for Boeing "████████████████" in the absence of the alleged trade secret misappropriation.  Ex. E at 142:21-143:14. He also "███████████████████

████████████████████████████████████████████████████████████

██████" prior to 2016.  *Id.* at 145:14-146:1.

In addition, Mr. Bergman's estimates of Arconic's actual damages and UAC's unjust enrichment—as set forth in Sections XIX and XX of the Bergman Report—are premised on the same assumptions.  There is no dispute that his opinions as to Arconic's actual damages and UAC's unjust enrichment are based on UAC being awarded the 2016 Boeing contract as a result of the alleged misappropriation.  *See* Ex. D ¶ 93 (explaining lost profits as ████████████████████████

████████████████████████████████████"); *id.* ¶ 144 (stating that the "█

████████████████████████████████████████████████████████████████

████████████████). Further, Mr. Bergman confirmed in his deposition that his estimate

of damages was contingent upon UAC's misappropriation of a trade secret that was

████████████████████████████████████████ Ex. E at 149:14-20.

In making these assumptions, Mr. Bergman admits that he relied on the Neu

Report. *Id.* at 142:21-143:13; 152:2-10.[6]  But as discussed *supra*, Prof. Neu's

opinions on time savings set forth in Section VI of the Neu Report are not the product

of reliable methodology.  In addition, Prof. Neu's deposition testimony contradicts

these assumptions, as he testified that certain of Arconic's alleged trade secrets could

have been developed independently ██████████████████████. Ex. B at 171:1-

17; *id.* at 108:25-109:21; *id.* at 117:16-118:3.[7]   Mr. Bergman's reliance on an

---

[6] In his deposition, Mr. Bergman vaguely referred to other sources for his opinion aside from Prof. Eagar (namely, ███████████████████████████████████") (Ex. E at 142:21-143:13; 152:2-10), but he did not disclose *any source* for his assumptions related to UAC's saved development time in his Report (*see* Ex. D ¶¶ 91, 93, 101).  Moreover, it is unclear how an *Alcoa* employee could be qualified to, or even have personal knowledge to testify on to *UAC's* development time.

[7] Mr. Bergman even conceded in his deposition that, if UAC could have independently developed a single Arconic trade secret within a one-month period of time, misappropriation of that trade secret would not be "██████████████████████ ████████████████████████████████████████████ Ex. E at 151:12-16 ██████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████").  As this statement makes clear, Mr. Bergman's

unreliable expert report in reaching his opinions is a proper basis for exclusion.  *See,
e.g.*, *Gbarabe*, 2017 WL 956628, at *17; *Sound View Innovations, LLC v. Hulu LLC*,
No. LA CV17-04146 JAK (PLAx), 2019 WL 9047211, at *10 (C.D. Cal. Nov. 18,
2019) (excluding expert damages testimony that relies on a technical opinion, where
the technical opinion was excluded); *Apple, Inc. v. WiLAN, Inc.*, No. 14cv2235 DMS
(BLM), 2019 WL 4248899, at *5 (S.D. Cal. Jan. 3, 2019) (granting remittitur of
damages after excluding an expert's damages testimony that relied on a technical
expert's opinion that "finds no support in the facts of the record").

     The situation addressed by the *WiLAN* court is instructive here.  In *WiLAN*, a
patent infringement matter, the patentee retained three different experts to conduct
analyses and offer opinion related to the issue of apportionment of damages.  2019
WL 4248899, at *2-*3.  First, the patentee's technical expert offered opinion on the
"incremental benefits of the patented technologies" by comparing the technical
capabilities of the voice over LTE technology at issue to non-infringing alternatives.
*Id.* at *3.  The other two experts retained by the patentee "took [the technical
expert's] 'benefits' opinions" and utilized them as a basis for opining on a valuation
of those benefits and a reasonable royalty figure.  *Id.*  The court held, on motion for
a new trial on damages or remittitur, that the technical expert's "opinions about the

---

assumptions regarding UAC's performance under the   Boeing contract depend on
Prof. Neu's unreliable opinion on time savings.

'benefits'" of the asserted patent claims "should not have been presented to the jury" because they "were without factual basis." *Id.* at *4-*5. Most relevant here, the court held that "since [the technical expert's] opinions were the basis for [the valuation and reasonable royalty experts'] opinions, those opinions also should have been excluded." *Id.* at *5. So too, here: Prof. Neu's opinions as to time savings — which should not be presented to a jury for the reasons discussed above — form the basis for Mr. Bergman's opinions as to damages; Mr. Bergman's opinions should therefore rise and fall with Prof. Neu's.

Accordingly, paragraphs 91, 93, and 101 of the Bergman's Report, and the estimates of Arconic's actual damages and UAC's unjust enrichment set forth in Sections XIX and XX of the Bergman's Report,[8] should be excluded from consideration by the jury at trial. Additionally, Mr. Bergman should, like Prof. Neu, be barred from either assuming or providing testimony at trial that "UAC's theft of Alcoa's trade secrets … allowed UAC to enter a time-sensitive lucrative contract with Boeing for spar chords." Dkt. 718, Attach. C at 2 (Outline of Plaintiff's Case).

---

[8] UAC previously moved to exclude Mr. Bergman's opinions as to actual damages under *Daubert* as resting on incorrect facts and failure to tie UAC's alleged misappropriation to the Arconic's claimed damages. Dkt. No. 704. Unlike the instant motion, UAC did *not* argue that Mr. Bergman's opinions should be excluded because they are based on unreliable technical expert opinions. Regardless, The Neu Report and Prof. Neu's recent deposition testimony confirm the unreliability of his opinions on *how much* development time UAC saved. As such, this motion is distinct from UAC's prior challenge to Dr. Bergman's testimony, and directly "relate[s] to," Dr. Neu's opinions and recent. *See* Dkt. 900.

**C.** **The Court Should Exclude Any Argument, Evidence, Or Testimony Suggesting That UAC Could Not Have Supplied Stretch Formed Spar Chords To Boeing By January 1, 2016 As Unfairly Prejudicial**

Even if the Court finds Prof. Neu's testimony admissible under *Daubert*, because Prof. Neu refuses to testify as to *how much* time UAC saved in its development—let alone that such development could not have been completed by January 1, 2016—Arconic should be barred from presenting any argument, evidence, or testimony suggesting "UAC's theft of Alcoa's trade secrets … allowed UAC to enter a time-sensitive lucrative contract with Boeing for spar chords" as it would be unduly and unfairly prejudicial to UAC. *Frazier*, 387 F.3d at 1263 (explaining that otherwise admissible testimony may be excluded under Fed. R. Evid. 403 because of the "powerful and potentially misleading effect" of expert evidence). It would be unfairly prejudice UAC for Arconic to make this argument when it is unsupported and not disclosed anywhere in the Neu Report (or Prof. Neu's later report), and in the absence of any opinion showing or estimating UAC's "saved development time." *See* Ex. C ¶¶ 298-302. Nor should Mr. Bergman be allowed to piggy-back on the Neu Report for his assumption that UAC would not have been able to supply Boeing with stretch formed spar chords by January 2016. *Supra* at 15-19   Moreover, it would mislead and confuse the jury for Arconic to raise such an argument when it wholly lacks any expert support or testimony as to *how much* time UAC saved in its development but for the alleged misappropriation of

Arconic's trade secrets. Such speculative and over-generalized arguments or testimony on UAC's saved development time coming from Arconic's experts would "be assigned talismanic significance in the eyes of lay jurors," heightening the prospect that the jury will be misled and confused and warranting exclusion under Rule 403. *Frazier*, 387 F.3d at 1263 (affirming the exclusion of expert testimony under Rule 403 where the expert's opinion was "imprecise and unscientific," which "easily could serve to confuse the jury, and might well have mislead it").

This unfair prejudice to UAC overwhelms any potentially probative value of this evidence. Arconic intends to offer an unsupported opinion that UAC cannot properly respond to, given that Arconic does not offer any actual opinion related to its January 1, 2016 date. In order to support such a position, Arconic would need to provide an opinion on (1) how much time UAC alleged saved by allegedly misappropriating Arconic trade secrets; (2) what the "usual development timeline" is to develop stretch formed spar chords for Boeing; and (3) when UAC's development timeline began. It cannot. Thus there is little probative value to Prof. Neu's and Mr. Bergman's testimony that but for its use of Arconic's supposed trade secrets, UAC could not have produced stretch formed spar chords for Boeing by January 2016. Thus, the Court should bar Arconic from presenting its undoubtably unfairly prejudicial and speculative arguments on UAC's saved development time.

## IV.   CONCLUSION

For the reasons discussed above, the Court should preclude Arconic from presenting evidence, testimony, and argument quantifying the amount of time purported saved by UAC due to its alleged misappropriation of Arconic's trade secrets, and strike paragraphs 298 to 302 of the Neu Report and paragraphs 91, 93, 101, and the estimate of actual and unjust enrichment damages in Sections XIX and XX of the Bergman Report.

Date: May 3, 2023

/s/ *Michael J. Sullivan*

LATHAM & WATKINS LLP
P. Anthony Sammi (*pro hac vice*)
Rachel R. Blitzer (*pro hac vice*)
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 906-1200

LATHAM & WATKINS LLP
Aaron Macris (*pro hac vice*)
200 Clarendon Street
Boston, Massachusetts, 02116
Telephone: (617) 948-6000

SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
Douglas R. Nemec (*pro hac vice*)
Leslie A. Demers (*pro hac vice*)
One Manhattan West
New York, New York 10001
Telephone: (212) 735-3000

WOMBLE BOND
DICKINSON (US) LLP
Michael J. Sullivan (142203)
271 17th Street, NW, Suite 2400
Atlanta, Georgia 30363
Telephone: (404) 872-7000

*Attorneys for Universal Alloy
Corporation*

## <u>CERTIFICATE OF TYPE SIZE AND STYLE</u>

Counsel for Defendant hereby certifies that the size and style of the type used in the foregoing filing is Times New Roman: 14 point.

/s/ *Michael J. Sullivan*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on this 3rd day of May, 2023, I electronically filed the above document with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to all registered counsel.

/s/ *Michael J. Sullivan*