## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| ARCONIC CORPORATION AND HOWMET AEROSPACE INC., | ) ) ) | |
| Plaintiffs and Counterclaim-Defendants, | ) ) | Civil Action No.: 1:15-cv-01466-JPB |
| v. | ) ) | |
| UNIVERSAL ALLOY CORPORATION, | ) ) | |
| Defendant and Counterclaim-Plaintiff. | ) ) | |

## UAC'S REPLY IN SUPPORT OF ITS MOTION IN LIMINE (DKT. 907) REGARDING SHORTENED DEVELOPMENT TIME

Plaintiffs complain that "UAC's motion is a last-ditch effort to avoid trial on a troubling factual record." Dkt. 917 ("Opp"). at 25.  Indeed, UAC agrees, but not for the reasons Arconic portrays.

The actual troubling facts include Arconic lobbing in a 154-page laundry list of supposed trade secrets *eight* years ago and now, a month before trial, still refusing to let UAC – or this Court – know which ones will be at issue at trial.  For its part, Arconic has apparently known for years, as it refers to "dozens" of alleged trade secrets in the Pretrial Order materials previously filed in 2020.  Dkt. 718 at 824.

Even Arconic's own technical expert witness maintains the indefensible suspense on this critical point, with Prof. Neu testifying one month ago that ███

████████████████████████████████████████████

████████████████ Ex. B (Dkt. 907-2) at 9:8-12, 11:2-15:22.  Prof. Neu's inability to quantify any time savings by virtue of what UAC allegedly stole is not surprising, as it is an impossible task to add up a timeline without knowing what to add.

Looking through the haze of Arconic's opposition brief – which takes a near-hysterical pitch and spends more time trying to revive past discovery disputes than it does grappling with the serious issues at hand – the factual record has Arconic concealing the alleged trade secrets that it intends to present at trial, and offering up an expert witness to testify on alleged time savings he cannot quantify, achieved by using a universe of trade secrets he cannot define.  For Dr. Neu to testify on time savings against that backdrop would indeed be troubling.  The only actual evidence of UAC's development timeline is how long Arconic's principals predicted it would take (Ex. G at 2) and how long it actually UAC took: the same amount of time.

Beyond the diversionary mudslinging based on discovery events that date back almost a decade,[1] Arconic oddly argues that UAC was procedurally at fault for filing a motion it had leave to file.  Dkt. 900 at 1.  And to the extent Arconic reaches

---

[1] This mudslinging is part of a pattern and unfortunately seems to be exemplary of Arconic's intended arguments at trial, underscoring the importance of granting UAC's motion *in limine* to exclude reference to certain pretrial events.  Dkt. 803.

the substance of the motion, it does little more than attempt to gap-fill its expert's opinions with attorney argument.  The record in this case is clear: Prof. Neu has no basis to provide an opinion quantifying an amount of development time saved by UAC resulting from its alleged misappropriation of Arconic trade secrets, and any other opinions purportedly relying on such amount of time are unreliable.

## I.    ARCONIC'S PROCEDURAL CHALLENGES ARE MERITLESS

### A.    UAC's Motion is Timely

Arconic argues that UAC's challenges to Prof. Neu's opinions are untimely because *Daubert* motions "were due almost three years ago."  Opp. 5-6.  In other words, Arconic posits that because Prof. Neu adopted its prior technical expert (Dr. Eager's) Report, the Court's order authorizing UAC to file a motion to exclude was only "meant" for "challenges to new material" present in Prof. Neu's report (i.e., Prof. Neu's credentials).  Opp. 6.  Arconic's position is baseless.

First, the Court ordered that UAC could file "[a]ny motion challenging Plaintiff's replacement expert under <u>Daubert</u> or any other related motion *in limine*" by May 3, 2023.  Dkt 900 at 1.  The Court did not restrict the type of *Daubert* or motion *in limine* that UAC could file.  Nor did Arconic seek any such restriction when the parties filed their joint status report consenting to the instant motion.  Dkt. 899 at 1-2.  Arconic cannot now, on the heels of receiving UAC's motion, seek to

retroactively limit its scope.  And as the Court already authorized UAC to file its motion, there was no need to make an additional showing of good cause.

Second, the Court's order allowed UAC to file "any other related motion *in limine*," further indicating that the Court did not "mean" to limit the challenges to Prof. Neu's credentials only, but that such a motion could apply to any previously submitted material or arguments that were affected by Prof. Neu's testimony.  Dkt. 900 at 1.  That is exactly what UAC did here in seeking to exclude Prof. Neu's (non)testimony regarding his opinions on UAC's shortened development time, and Mr. Bergman's related testimony that depends on Prof. Neu.

Third, this motion was triggered by Prof. Neu's specific deposition testimony. Arconic would like the Court to disregard such testimony in light of Prof. Neu's adoption of the preexisting Eager Report.  On the contrary, the sworn deposition testimony of the individual that Arconic intends to proffer as its expert is of crucial relevance.  Prof. Neu ***refused*** to provide any estimate of UAC's saved development time at deposition.  *See* Ex. B at 219:10-20



) (emphasis added); *id.* at 216:20-24

); *id.* at 218:7-15 ("Q.

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████).[2]   Thus, even if the Court is inclined to agree with Arconic that

its order (Dkt. 900) was limited to permitting a *Daubert* on new material, Prof. Neu's

deposition testimony is new.  The reliability of Prof. Neu's opinions, as he described

them himself, is the quintessential subject of a challenge pursuant to the Court's

gatekeeping function required by *Daubert*.  *See Kumho Tire Co., Ltd. v. Carmichael*,

526 U.S. 137, 152 (1999) ("The objective of that [gatekeeping] requirement is to

ensure the reliability and relevancy of expert testimony.").  Prof. Neu's admissions

at deposition effectively destroy support for Mr. Bergman's opinions, which are

likewise appropriately addressed under the Court's order permitting other related

motions *in limine*.  Dkt. 900 at 1.

### B.    UAC's Motion Is Distinguishable From Prior Challenges to Dr. Eager and Mr. Bergman

Next, Arconic contends that UAC's motion is an improper request for

---

[2] In contrast, Arconic's prior expert, Dr. Eager opined that UAC would require a development time of ████████████████████████████████████████
████████████████████  Ex. H (Eager Dep. Tr.) at 89:6-25.  Indeed, Dr. Eager recognized that UAC would already have had a ████████████████████,"
which would have lessened the independent development time.  *Id.*

reconsideration because in an earlier *Daubert* motion, UAC moved to exclude the same paragraphs of Dr. Eager's Report, *see* Dkt. 774.  Opp. 8-9.  But in UAC's prior *Daubert*, UAC challenged Dr. Eager's opinions based on (1) Dr. Eager's failure to consider unfavorable evidence; (2) Dr. Eager's speculation that it would take four to five years for UAC to independently develop stretch-form spar chords after acquiring a stretch-former; and (3) Dr. Eager's qualifications to opine on commercial development timelines.  Dkt. 708-1 at 20-22.  UAC's current motion is brought on different grounds and challenges introduction of opinions quantifying development time savings based on Prof. Neu's stark refusal to specify (or even estimate) how much time was purportedly saved.  Moreover, in denying UAC's motion, the Court only addressed whether Dr. Eager was ***qualified*** to testify on UAC's development timeline.  *See* Dkt. 774 at 27.  That the Court left unaddressed these other challenges counsels in favor of deciding this issue in advance of trial.

Arconic additionally argues that UAC should not be allowed to challenge Mr. Bergman's damages opinions that relied on Dr. Eager (and now Dr. Neu) because UAC previously moved to exclude them.  Opp. 8.  But Arconic again misstates the basis for UAC's prior motion.  There, UAC challenged the reliability of Mr. Bergman's opinion that Arconic is entitled to ten years of lost profits from 2016 to 2025 because he ignored key factual evidence.  Dkt. 705-1 at 12-14 (challenging Mr.

6

Bergman's development time opinion for "contradict[ing] the facts."). Here, UAC is challenging whether Mr. Bergman can reliably assume (citing to Prof. Neu) that UAC would not have been able to sell Boeing stretch-formed spar chords by January 2016. Mot. 15-19 (Dkt. 907) . Given that Prof. Neu will be Arconic's proffered technical expert at trial, Mr. Bergman cannot reliably make that assumption because Prof. Neu cannot provide the underlying support, given his refusal to provide any opinion on *how much* time UAC saved as a result of any alleged misappropriation (and what testimony he did provide suggests there was no savings at all). *Gbarabe v. Chevron Corp.*, No. 14-cv-00173-SI, 2017 WL 956628, at *17 (N.D. Cal. Mar. 13, 2017) (excluding as unreliable testimony in which an expert witness improperly "rel[ies] on [another expert's] flawed and speculative report" in reaching his or her opinions).

### C.    UAC's Motion Does Not *De Facto* Seek Summary Judgment

Next, Arconic argues that UAC is seeking "*de facto* summary judgment" against Arconic by way of a motion *in limine*. Opp. 9-10. Arconic is wrong. UAC is challenging the ability of Arconic to quantify UAC's saved development time gained as a result of the alleged use of trade secrets. Simply because the result of a properly raised motion *in limine* may be outcome determinative does not convert the motion into one for summary judgment. *See Kilpatrick v. Breg*, 613 F.3d 1329, 1335

(11th Cir. 2010) ("a ruling on the admissibility of expert evidence may be outcome determinative"); *Hudgens v. Bell Helicopters/Textron*, 328 F.3d 1329, 1342-45 (11th Cir. 2003) ("an expert's failure to explain the basis for an important inference mandates exclusion of his or her opinion," even if the result is summary judgment).

Moreover, UAC cannot and should not be faulted because Arconic presented only a single actual loss damages theory dependent on a specific date by which UAC would have been able to begin performance under a contract with Boeing (January 2016). Nor is it UAC's fault that Arconic has put forward an expert who ***refused*** to provide an opinions on ***how much*** development UAC gained by allegedly misappropriating Arconic trade secrets. Rather, it is Arconic's burden (not UAC's) to put forward "the proper foundation for the admission of expert testimony," under Federal Rule of Evidence 702 based on the preponderance of the evidence, and if it fails to do so (as Arconic does here), the expert's testimony should not be admitted into evidence. *See Kilpatrick*, 613 F.3d at 1335 (citation omitted); *Chapman v. Procter & Gamble Distributing, LLC*, 766 F.3d 1296, 1304-05 (11th Cir. 2014) (holding testimony unreliable and affirming resulting grant of summary judgment).

## II.   PROF. NEU AND MR. BERGMAN'S OPINIONS ARE UNRELIABLE

### A.   Prof. Neu's Opinions Relating To Shortened Development Time Are Unreliable or Non-Existent

Arconic contends that Prof. Neu can reliably opine on UAC's development

8

time because he (1) analyzed the extent of UAC's use of Alcoa information and (2) evaluated UAC's "actual developmental timeline against how long it would take to develop a stretch form spar chord process from scratch without another company's information." Opp. 11. But despite Arconic's plethora of unexplained citations to the Neu Report, Prof. Neu readily admitted during his deposition that he does not actually have or intend to provide any such opinions.

For example, Arconic claims that Prof. Neu "determined whether UAC shortened its development timeline by analyzing the extent of UAC's use of Alcoa's trade secret information." Opp. 11. But whenever Prof. Neu was asked *how much* time UAC saved with respect to any given alleged trade secret, he either refused or suggested a short amount of time. Prof. Neu admitted that ███████████

████████████████████████████████████████████████████

███████████ Ex. I at 240:19-242:6. With respect to UAC's alleged use of Alcoa process pages, he testified ████████████████████████████████████

████████████████████ *Id.* at 90:21-91:4. ████████████████████

████████████████████████████████████████████████████ *Id.* at 117:16-118:3. ████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████ *Id.* at 171:1-17. So

it is not surprising that Prof. Neu ████████████████████████ UAC

saved as a result of any alleged misappropriation.  Ex. B (Dkt. 907-2) at 219:10-20;

*see id.* at 216:20-24, 218:7-15.   Regardless, whether and to what extent UAC

actually used any Arconic trade secrets (it did not) is a distinct inquiry from an

opinion as to *how much* time UAC allegedly saved as a result of such use.

Arconic likewise argues that Prof. Neu "compared UAC's actual development

timeline to the available evidence of how long it would take a company to develop

a new manufacturing process without Alcoa's trade secrets."  Opp. 11.[3]  But what

Arconic actually does is attempt to draw a comparison between UAC's development

timeline and that of Arconic, which it calls "the only real-life comparison."  Opp.

12.  Putting aside that it is not reliable to compare development times in 2014 to

those dating back to the 1960s, Arconic's citations to Prof. Neu's report do nothing

more than generically states that it took Alcoa "years" to develop its processes.  *Id.*

at 11-12.  And while Arconic emphasizes the importance of its technical staff in the

development of stretch-formed spar chords, and claims Prof. Neu considered that

---

[3] The Report assumes UAC started development in 2014, ████████████████
████████████████████████████████████ Ex. C (Dkt. 907-3)
¶ 299.  But this makes no sense given his testimony that ████████████████
████████████████████████████ Ex. I at 120:23-
121:21, 158:3-21.  This further warrants preclusion.

factor, Prof. Neu in deposition testified that he did not.  *See* Ex. B (Dkt. 907-2) at

221:8-17 

).  Instead, Arconic resorts to abstract timelines

about how long it generally takes to bring new technology to market, but does not

tie those abstract timelines to the technology in this case or to UAC's development

timeline.  *See* Opp. 12.  But Arconic does not and cannot dispute that Prof. Neu's

generically suggests "years" of time saved without any reference to the number of

"years," and without any computations as to *how much* time was saved compared to

a "usual development time."  *See, e.g.*, Ex. C (Dkt. 907-3) ¶¶ 298-302

Arconic's attempt to distinguish this case from *In re Denture Cream Prods.*

*Liab. Litig.*, 795 F. Supp. 2d 1345, 1355-67 (S.D. Fla. 2011), serves only to

underscore the fact that Prof. Neu offered no opinion on a "usual development time."

According to Arconic, "determining the length of 'the usual development' is not

necessary to reliably opine that the development time was shortened" because "[i]t

is a reasonable inference that theft would shorten development time."  Opp. 15 n.6.

Such an argument is circular, conflates liability and damages, and contradicts Prof. Neu's Report that, despite failing to do so, emphasized the need to compare UAC's development time to "the usual development time for production of stretch formed aluminum spar chords" to determine time saved. Ex. C (Dkt. 907-3) ¶ 298. Arconic goes so far as to suggest that UAC admitted that "a delay of months or even weeks would have caused UAC to miss the deadline" to sell stretch formed spar chords to Boeing, citing to paragraph 111 of Prof. Neu's Report. Opp. 16. But that paragraph provides no such support—rather, it states ██████████████████████████ ████████████████████ █ ████████████████████████████ ████████████████████ Ex. 2 (Dkt. 917-3) ¶ 111. Nowhere in that paragraph does Prof. Neu opine that UAC could have missed the deadline to qualify to sell to Boeing based on weeks or months delay. This is exemplary of Arconic's repeated citations to the Report that do not actually support arguments advanced by Arconic.

Because Arconic cannot point to any opinions by Prof. Neu specifying *how much* UAC saved in development time as result of any alleged misappropriation or *how much* time is the "usual development time" to develop stretch-formed spar chords, Arconic rests its development time argument on Prof. Neu's general expertise. Opp. 14. But an expert's qualifications alone cannot render an expert's opinion reliable. *Mama Jo's Inc. v. Sparta Ins. Co.*, 823 F. App'x 868, 876 (11th

Cir. 2020) ("[E]xperience, standing alone, is not a sufficient foundation rendering reliable any conceivable opinion the expert may express." (internal quotation omitted)). The law requires that experts "must explain how the experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how the experience is reliably applied to the facts." *Frazier*, 387 F.3d at 1261 (citation omitted). Prof. Neu's opinions are devoid of any such analysis.

In sum, Arconic's opposition attempts to cloud the record with numerous, irrelevant citations to Prof. Neu's Report, while minimizing his unequivocal admissions at deposition that he will not specify to the jury how much development time UAC saved as a result of any alleged misappropriation. Ex. B (Dkt. 907-2) 219:10-20; *see id.* at 216:20-24, 218:7-15. But this admission renders unreliable any suggestion by Arconic that UAC could not qualify to sell stretch formed spar chords to Boeing by 2016. Prof. Neu's testimony should thus be excluded.

### B.    Mr. Bergman's Opinions Relying On Prof. Neu's Development Time Opinions Are Unreliable

Arconic does not contest that for the purpose of computing damages, Mr. Bergman assumes that UAC would not have been able to sell stretch-formed spar chords to Boeing by January 1, 2016, but for alleged misappropriation of trade secrets. Opp. 18. Arconic instead argues that Mr. Bergman's damages assumption does not "rise or fall" with Prof. Neu's challenged opinions. Opp. 19. Thus, Arconic

13

argues that Mr. Bergman's assumptions on UAC's development timeline could be made based on testimony from fact witnesses, and specifically, Arconic employees. Opp. 20-21.  But Mr. Bergmann testified that ███████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████  Ex. E (907-5) at 143:18-144:6.  Arconic cannot now, on the eve of trial, create a new opinion for Mr. Bergman based on testimony cited nowhere in his report.  Opp. 20-21.  The Court should take Mr. Bergman at his word, that he ███████

███████████████████  on UAC's development time, and disregard Arconic's attorney arguments suggesting that he does or could *ad hoc* construct one from fact witness testimony at trial.  Ex. E (907-5) at 143:18-144:6.[4]

## III.   ARCONIC'S SUGGESTION THAT UAC COULD NOT HAVE SUPPLIED BOEING WITH SPAR CHORDS BY JANUARY 1, 2016 IS HIGHLY PREJUDICIAL AND WARRANTS EXCLUSION

Arconic suggests that Federal Rule of Evidence 403 should not be applied in this case because it is an "extraordinary remedy."  Opp. 22.  But what is extraordinary is Arconic's intention to tell a jury—with no reliable expert backing and no underlying analysis— that UAC caused it *$250 million in damages* based on

---

[4] Arconic suggests that the Motion would bar Bergman's entire unjust enrichment opinion. Opp. 21, but UAC's motion is limited to addressing the theory that but for its alleged misappropriation, UAC could not have made sales by January 2016.

a theory that but for its alleged misappropriation, UAC would not have been able to sell stretch-formed spar chords to Boeing by January 1, 2016. That prejudice is amplified when delivered by an expert at trial. *Frazier*, 387 F.3d at 1263 (explaining that admissible testimony may be excluded under Fed. R. Evid. 403 because of the "powerful and potentially misleading effect" of expert evidence).

This highly prejudicial insinuation regarding UAC's allegedly saved development time outweighs any probative evidence to the contrary. Namely, it would unfairly prejudice UAC for Arconic to argue that UAC would not have been able to sell stretch formed spar chords to Boeing ***by January 2016***, when such a theory is not disclosed in the Neu Report nor offered by Prof. Neu at deposition. *See* Ex. C (Dkt. 907-3) ¶¶ 298-302. Moreover, such an argument is misleading and confusing where Arconic lacks any expert support or testimony on *how much* time UAC allegedly saved. *Frazier*, 387 F.3d at 1263 (affirming the exclusion of expert testimony under Rule 403 where the expert's opinion was "imprecise and unscientific," which "easily could serve to confuse the jury, and might well have mislead it"). Such confusion has the potential to grossly warp the jury's ability to fairly determine any proper damages and result in a windfall of damages for Arconic.

## IV.  CONCLUSION

UAC respectfully asks the Court to bar such improper evidence from trial.

Date: June 7, 2023

/s/ *Michael J. Sullivan*

LATHAM & WATKINS LLP
P. Anthony Sammi (*pro hac vice*)
Rachel R. Blitzer (*pro hac vice*)
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 906-1200

LATHAM & WATKINS LLP
Aaron Macris (*pro hac vice*)
200 Clarendon Street
Boston, Massachusetts, 02116
Telephone: (617) 948-6000

SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
Douglas R. Nemec (*pro hac vice*)
Leslie A. Demers (*pro hac vice*)
One Manhattan West
New York, New York 10001
Telephone: (212) 735-3000

WOMBLE BOND
DICKINSON (US) LLP
Michael J. Sullivan (142203)
John G. Perry (141609)
Vonnetta L. Benjamin (890)
271 17th Street, NW, Suite 2400
Atlanta, Georgia 30363
Telephone: (404) 872-7000

*Attorneys for Universal Alloy*
*Corporation*

## CERTIFICATE OF TYPE SIZE AND STYLE

Counsel for Defendant hereby certifies that the size and style of the type used in the foregoing filing is Times New Roman: 14 point.

/s/ *Michael J. Sullivan*_____

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 7th day of June, 2023, I electronically filed the above document with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to all registered counsel.

/s/ *Michael J. Sullivan*_____