# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| ARCONIC CORPORATION AND HOWMET AEROSPACE INC., | ) ) ) | |
| Plaintiffs and Counterclaim-Defendants, | ) ) ) | CIVIL ACTION |
| v. | ) ) | FILE NO.:  1:15-cv-01466-JPB |
| UNIVERSAL ALLOY CORPORATION, | ) ) ) ) | REDACTED |
| Defendant and Counterclaim-Plaintiff. | ) ) | |

## UAC'S MEMORANDUM OF LAW IN OPPOSITION TO ARCONIC'S MOTION FOR A NEW TRIAL

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ...............................................................1

II.   LEGAL STANDARD FOR REJECTING JURY VERDICTS ......................2

III.  ARGUMENT......................................................................3

      A.    Arconic Fails to Meet the High Standard for a New Trial, as the Jury's Verdict Was Not Against the Great Weight of the Evidence ...............................................................3

            1.    A Jury Could Have Reasonably Rejected Arconic's Claim Because It Did Not Identify the Alleged Trade Secrets with Sufficient Specificity.................................4

            2.    Arconic's Motion Ignores Numerous Legal Requirements of Ownership and Fails to Identify Evidence So Strong That Any Reasonable Jury Would Find Those Requirements Satisfied ...........................................11

      B.    Arconic's Untimely Challenge to UAC's Closing Argument Does Not Warrant a New Trial .........................................22

IV.  CONCLUSION..................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Abella v. Rodriguez*,
    2022 WL 3567856 (S.D. Fla. July 14, 2022) ....................................................25

*Am. Bldgs. Co. v. Pascoe Bldg. Sys., Inc.*,
    260 Ga. 346 (1990) ...............................................................................12, 16, 17

*AMP Inc. v. Fleischhacker*,
    823 F.2d 1199 (7th Cir. 1987) ...............................................................................12

*Arconic Inc. v. Novelis Inc.*,
    No. 17-cv-1434, 2020 WL 7247112 (W.D. Pa. Dec. 9, 2020)...........................5

*Atkinson v. Yoder*,
    2017 WL 1397407 (S.D. Fla. Mar. 22, 2017) ....................................................23

*Auto-Owners Ins. Co. v. Se. Floating Docks, Inc.*,
    571 F.3d 1143 (11th Cir. 2009) .................................................................2, 12, 21

*Berkadia Real Estate Advisors LLC v. Wadlund*,
    2022 WL 3213113 (D. Ariz. Aug. 9, 2022) .......................................................18

*Booth Waltz Enterprises v. Kimlingen*,
    No. CV040072045S, 2004 WL 2287777 (Conn. Super. Ct. Sept.
    14, 2004) ...............................................................................................................12

*Cap. Inventory, Inc. v. Green*,
    No. 1:20-CV-3224-LMM, 2021 WL 2452650 (N.D. Ga. Feb. 5,
    2021) .......................................................................................................................4

*Christopher v. Florida*,
    449 F.3d 1360 (11th Cir. 2006) .........................................................................23

*Coda Development s.r.o. v. Goodyear Tire & Rubber Company*,
    No. 5:15-cv-1572, 2023 WL 2734684 (N.D. Ohio Mar. 31, 2023) ...................10

*Composite Marine Propellers, Inc. v. Van Der Woude*,
    962 F.2d 1263 (7th Cir. 1992) ...............................................................................5

*Crews v. Wahl*,
    238 Ga. App. 892 (1999) .......................................................................4

*Earthcam, Inc. v. OxBlue Corp.*,
    49 F. Supp. 3d 1210 (N.D. Ga. 2014).................................................5

*Equate Media, Inc. v. Suthar*,
    No. 2:21-CV-00314, 2022 WL 2824973 (C.D. Cal. June 22, 2022) .................4

*Global Water Group, Inc. v. Atchley*,
    244 S.W.3d 924 (Tex. App. 2008)....................................................10

*Goldsmith v. Bagby Elevator Co., Inc.*,
    513 F.3d 1261 (11th Cir. 2008) ............................................22, 24, 25

*Harris v. Sheriff, Jefferson Cnty. Fla.*,
    460 F. App'x 896 (11th Cir. 2012) .......................................................4

*Hercaire Int'l, Inc. v. Arg.*,
    821 F.2d 559 (11th Cir. 1987) ...........................................................3

*Highland Consulting Grp., Inc. v. Minjares*,
    74 F.4th 1352 (11th Cir. 2023) .........................................................14

*Hilger v. Velazquez*,
    613 F. App'x 775 (11th Cir. 2015)....................................................25

*Kitfield v. Henderson*,
    231 Ga. App. 130 (1998) ....................................................................4

*Lord v. Univ. of Miami*,
    2023 WL 354276 (S.D. Fla. Jan 23, 2023).................................23, 25

*Mad Dogg Athletics, Inc. v. Hart Wood, Inc.*,
    2010 WL 11506882 (C.D. Cal. Oct. 4, 2010) ...................................13

*Miledy Strait v. Busch Entm't Corp.*,
    2007 WL 496607 (M.D. Fla. Feb. 12, 2007)....................................25

*NJ Coed Sports LLC v. ISP Sports, LLC*,
    No. 22-cv-06969, 2023 WL 3993772 (D.N.J. June 14, 2023) ..........13

*Oxford Furniture Cos. v. Drexel Heritage Furnishings, Inc.*,
   984 F.2d 1118 (11th Cir. 1993) ............................................................23

*Palmer v. Robbins*,
   No. 23-10433, 2023 WL 5786381 (11th Cir. Sept. 7, 2023)...............................3

*Penalty Kick Mgmt. Ltd. v. Coca Cola Co.*,
   318 F.3d 1284 (11th Cir. 2003) ............................................................11

*Pullman Grp., LLC v. Prudential Ins. Co., of Am.*,
   288 A.D.2d 2 (N.Y. 1st Dep't 2001) .......................................................15

*Reid v. Neal*,
   688 F. App'x 613 (11th Cir. 2017) ..........................................................4

*Roundtree v. Bowers*,
   No. 22-11557, 2022 WL 17986182 (11th Cir. Dec. 29, 2022) .........................22

*Ruiz v. Wing*,
   991 F.3d 1130 (11th Cir. 2021) .................................................22, 23, 24

*Servicetrends, Inc. v. Siemens Med. Sys., Inc.*,
   870 F. Supp. 1042 (N.D. Ga. 1994)......................................................17

*Slawin v. Bank of Am. Merch. Servs.*,
   491 F. Supp. 3d 1334 (N.D. Ga. 2020).....................................................14

*United States ex rel. Tenn. Valley Auth. v. 2.21 Acres of Land*,
   2018 WL 2284375 (N.D. Ga. Mar. 16, 2018) ...........................................23

*Thomas v. Broward Cnty. Sheriff's Off.*,
   71 F.4th 1305 (11th Cir. 2023) .............................................................2

*Trump v. Clinton*,
   626 F. Supp. 3d 1264 (S.D. Fla. 2022).........................................12, 18, 19

*Ultimax Cement Mfg. Corp. v. CTS Cement Mfg., Corp.*,
   587 F.3d 1339 (Fed. Cir. 2009) .........................................................17

*United States v. Colston*,
   4 F.4th 1179 (11th Cir. 2021) ...........................................................25

*Wallace v. Mangiaracina*,
  2017 WL 2634891 (M.D. Fla. June 19, 2017) .............................................23, 25

*Welter v. Med. Pro. Mut. Ins. Co.*,
  No. 22-CV-11047-PBS, 2023 WL 2988627 (D. Mass. Feb. 23,
  2023) ..........................................................................................................18

*Williams v. City of Valdosta*,
  689 F.2d 964 (11th Cir. 1982) .......................................................................3, 21

## STATUTES

Georgia Trade Secrets Act, O.C.G.A. § 10-1-760 et seq..........................................4

## TREATISES

Restatement (Third) of Unfair Competition § 42 (1995)...................................12, 15

## I.    INTRODUCTION

Arconic claims that the "public's confidence in the judiciary" "hangs in the balance" and that denying it a redo would be a "miscarriage of justice." Mot. 4. Nothing could be further from the truth. Rather, the jury's verdict, fully supported by the evidence and the law, was the culmination of a strategy that Arconic itself set into motion years ago. It was Arconic who repeatedly resisted calls to specify the trade secrets it would present at trial. It was Arconic who refused to enumerate the trade secrets at issue in the jury instructions or the verdict form. It was Arconic who told the jury the trade secrets were too numerous to list. And it was Arconic who contradicted itself in front of the jury as to what trade secrets were at issue. Even now, in its motion for a new trial, Arconic cannot clearly articulate its alleged trade secrets, claiming that, "[g]iven space considerations, these examples [of alleged trade secrets] are not exhaustive." Mot. 10 n.7. Having chosen to proceed in this fashion, presumably to keep its options open, Arconic should not be heard to complain when the jury returned a verdict reflective of Arconic's unwillingness to commit to what trade secrets the jury was being asked to consider. Far from preventing a miscarriage of justice, to conclude that Arconic has met its high burden here would itself be a blow to the integrity of the jury system.

Notwithstanding assertions in Arconic's brief, the burden was on Arconic to prove ownership; UAC did not bear the burden to disprove ownership. Despite this,

Arconic failed to provide evidence supporting basic elements of ownership, such as identifying which Arconic personnel purportedly developed trade secrets, explaining in any detail how they were developed, or establishing that those development efforts were even attributable to Arconic employees.  And, the record contained voluminous evidence that Arconic did *not* own any trade secrets, such as that the technology was basic employee know-how that a company cannot own, or originated from the public domain or from third parties.  Accordingly, it was reasonable for the jury to conclude that Arconic owned no trade secrets at all.

Courts rarely grant new trials based on alleged evidentiary shortfalls in light of the great deference given to jury verdicts.  Here, the jury dedicated more than two weeks of its time to hear evidence, assess witnesses' credibility, and deliberate to a verdict.  Because the record provides numerous bases on which a reasonable jury could have rejected Arconic's ownership story, Arconic's motion should be denied.

## II.    LEGAL STANDARD FOR REJECTING JURY VERDICTS

Arconic demanded a trial by jury, and now faces a serious burden to cast that verdict aside.  A trial court may grant a motion for a new trial "only where the verdict [is] contrary to the great, and not merely the greater, weight of the evidence." *Thomas v. Broward Cnty. Sheriff's Off.*, 71 F.4th 1305, 1312 (11th Cir. 2023).  The Court need only decide whether "reasonable jurors could have" reached the verdict here, with appropriate deference to the jury's credibility choices.  *Auto-*

*Owners Ins. Co. v. Se. Floating Docks, Inc.*, 571 F.3d 1143, 1145 (11th Cir. 2009).  In evaluating the record, "the trial judge should not substitute his own credibility choices and inferences for the reasonable credibility choices and inferences made by the jury." *Williams v. City of Valdosta*, 689 F.2d 964, 973, 974 n.7 (11th Cir. 1982).

On appellate review, "if the trial court granted the motion for a new trial, review … is more stringent" than if it were denied, and is further "more rigorous when the basis for the motion was the weight of the evidence," which is the only basis Arconic asserts, as Arconic identifies no "pernicious occurrences" at trial that might otherwise support its position.  *Id.* at 974.  Where, as here, the party seeking a new trial has "failed to move for [judgment as a matter of law]," appellate review of the new-trial motion's denial "'is limited to whether there was *any* evidence to support the jury's verdict, irrespective of its sufficiency.'"  *Palmer v. Robbins*, No. 23-10433, 2023 WL 5786381, at *1 (11th Cir. Sept. 7, 2023) (quoting *Hercaire Int'l, Inc. v. Arg.*, 821 F.2d 559, 562 (11th Cir. 1987)).

## III.   ARGUMENT

### A.   <u>Arconic Fails to Meet the High Standard for a New Trial, as the Jury's Verdict Was Not Against the Great Weight of the Evidence</u>

Arconic's motion asks this Court to disturb the jury's verdict and would subject jurors in this District, this Court, and the parties to another trial.  To justify such a draconian result, Arconic would need to identify evidence so compelling that

it overcomes the "great deference [courts] give to jury verdicts." *Harris v. Sheriff, Jefferson Cnty. Fla.*, 460 F. App'x 896, 898 (11th Cir. 2012).   Arconic comes nowhere close to meeting this burden.  Arconic chose not to identify its trade secrets to the jury, which is a necessary predicate to showing that it owned trade secrets. Beyond that, Arconic failed to offer up evidence of basic elements of ownership— such as who invented the technology and how—and the evidence that was presented shows Arconic did not have a property interest in this technology.

1.   *A Jury Could Have Reasonably Rejected Arconic's Claim Because It Did Not Identify the Alleged Trade Secrets with Sufficient Specificity*

A misappropriation claim under the Georgia Trade Secrets Act requires proof of "ownership of the trade secrets," *Crews v. Wahl*, 238 Ga. App. 892, 895 n.3 (1999),[1] and an obvious predicate step to proving ownership is **identifying** what the trade secrets are, *see, e.g.*, *Equate Media, Inc. v. Suthar*, No. 2:21-CV-00314, 2022 WL 2824973, at *3–4 (C.D. Cal. June 22, 2022) ("Plaintiffs failed to clearly **identify**

---

[1] Arconic fleetingly states in a footnote that "it is unsettled whether ownership is required [under the Georgia Trade Secrets Act]," in contrast to the DTSA.  Mot. 20 n.13.   That is contrary to law: multiple courts have recognized that the GTSA requires ownership and have treated the GTSA's requirements as coextensive with the DTSA.  *See, e.g.*, *Kitfield v. Henderson*, 231 Ga. App. 130, 134 (1998); *Cap. Inventory, Inc. v. Green*, No. 1:20-CV-3224-LMM, 2021 WL 2452650, at *3 (N.D. Ga. Feb. 5, 2021).   More importantly, Arconic concedes that it "had to prove that what it claims as trade secrets are its property" (Mot. 19)—a concession Arconic must make because it jointly proposed the jury instructions reflecting an ownership requirement and thus waived any argument that the instruction was erroneous.  *See Reid v. Neal*, 688 F. App'x 613, 616 (11th Cir. 2017).

a trade secret, eliminating any legally sufficient basis for a reasonable jury to have found that any Plaintiff ***owned*** a particular trade secret." (emphasis added)); *Earthcam, Inc. v. OxBlue Corp.*, 49 F. Supp. 3d 1210, 1225 (N.D. Ga. 2014) (trade secret plaintiff must "identify the trade secrets [at issue]"); *Composite Marine Propellers, Inc. v. Van Der Woude,* 962 F.2d 1263, 1266 (7th Cir. 1992) (plaintiff must "show concrete [trade] secrets," which requires more than "point[ing] to broad areas of technology"). While a plaintiff may make a strategic decision to present a nebulous trade secret in an attempt to preserve optionality, that risks a factfinder rejecting the claim for lack of proof. Arconic—represented by the same counsel—made this choice before in another case, and faced the consequences, with the court entering summary judgment because Arconic failed to "identify its claimed trade secrets with reasonable particularity." *Arconic Inc. v. Novelis Inc.*, No. 17-cv-1434, 2020 WL 7247112, at *16 (W.D. Pa. Dec. 9, 2020).

Arconic's motion hand-waves the jury's verdict, claiming the jury did not "reach[] the merits of the dispute" and resolved the case on "a question that was not contested." Mot. 5. Much to the contrary, Arconic's failure to identify with particularity the information claimed to be a trade secret—a necessary and logical predicate to proving a property interest in that information—has been argued by UAC fervently and consistently over the nearly 10 years this case has been litigated. *See* Dkt. 935 at 19; Dkt. 935, Attach. I-2(b) at 2; 7/27 Tr. 118:21-119:6.

The jury was on alert for this issue since day 1. As early as the openings, UAC previewed that it expected this to be an issue with Arconic's case. 7/11 PM Tr. 120:25-121:2 ("I tried to keep track. I don't know if it's thousands, … millions of combinations."). Yet, Arconic's technical expert, point blank, was not even able to tell the jury *how many* trade secrets were being asserted by Arconic, let alone what they were. 7/18 AM Tr. 92:18-20 ("Q. How many trade secrets is Alcoa alleging U.A.C. is misappropriating? A. I don't have a number for you.").

Arconic's motion asserts that the trial testimony of its senior director of technology and metallurgy, Ed Colvin, "identif[ied] the specific trade secrets … as owned by Alcoa." Mot. 10. Arconic's motion then cites examples from the testimony—still not a complete list—of that supposed identification. But Mr. Colvin's discussion of technology is hardly an identification of asserted trade secrets for the jury. In fact, Arconic explicitly stated that it intended for Mr. Colvin's testimony to address both trade secrets supposedly at issue in this case as well as other trade secrets not at issue (*see* 7/12 PM Tr. 4:8-11, 6:15-7:2, 7:25-8:6; 8:10-9:21 (explaining that Mr. Colvin would testify about "other trade secrets" that UAC was not accused of misappropriating))—though Mr. Colvin never clarified which information fell in which bucket. Beyond that, within the list of examples, Arconic still used vague terms like REDACTED Mot. 10-11. For example, Arconic claims that REDACTED

**REDACTED**

*See* PTX-0422.0008; 7/24 AM Tr. 50:14-51:4.  These descriptors thus fail to identify Arconic's claimed trade secrets with particularity.

Not only did Arconic fail to affirmatively identify the information contended to be a trade secret at trial, but it also disavowed large swaths of seemingly relevant information as ***not*** being alleged trade secrets.  For example, **REDACTED**

**REDACTED**  7/24 PM Tr. 47:21-24.

The jury heard this statement from counsel after being told (1) by Arconic's counsel in opening statements that "[t]here's [a] lot of science" and "[t]rade secrets" in **REDACTED** (7/11 PM Tr. 92:5-15); (2) by Arconic's corporate representative and metallurgist, Mr. Colvin, that the **REDACTED** were considered by Arconic to be trade secrets (7/13 PM Tr. 51:1-3, 54:17-19; *see also* PTX-113); and (3) by Arconic's technical expert, Professor Neu, that **REDACTED**

7

███████████ REDACTED ███████████

████  7/18 AM Tr. 11:19-23, 13:19-21.  Yet when Mr. Baugh testified at length about UAC's independent development of ████████ REDACTED ████████ ████████████████ (7/24 PM Tr. 27:10-39:13), Arconic's counsel told the jury that ***none*** of that information was an alleged trade secret (*id.* 47:20-25). Similarly, UAC employee Chad Walker testified at length about ██REDACTED██ ███████████████████████████████████, only for Arconic's counsel to imply on cross-examination that his testimony was irrelevant because ███████████ REDACTED ███████████ ████████████  7/24 Tr. 119:10-13.  And when Michael Colt, UAC's chief executive officer and corporate representative, gave testimony detailing UAC's process for manufacturing spar chords—including by showing the jury a video walking through that process—Mr. Colt, and the jury, were immediately told on cross-examination by Alcoa's counsel that "most of what you talked about on direct is not the information that we allege UAC was using."  7/20 PM Tr. 52:19-21.

Furthermore, when UAC pressed Arconic's corporate representative, Mr. Colvin, he abandoned certain alleged trade secrets that he had previously testified about.  For example, after telling the jury that Arconic possessed trade secrets in

███████████ REDACTED ███████████

███████████████████ (7/13 PM Tr. 32:16-18 (emphasis

added)), Mr. Colvin changed course and stated ████ REDACTED ████

████████████████████████████████████ 7/14 PM Tr. 16:7-10.

In closing, UAC's counsel explained that every attempt by UAC to "pin down

what [the] trade secrets [are] in this case" had been met with obfuscation by Arconic.

7/26 Tr. 73:5-6; *see also id.* at 77:20-21 ("Is it 10 million trade secrets?  One?

Seven?").  Yet in Arconic's rebuttal, counsel made no effort to clarify for the jury

the trade secrets at issue.  *Id.* 116:25-117:14.

Finally, Arconic's preferred jury instructions and verdict form did ***nothing*** to

aid the jury in identifying the trade secrets at issue.  Arconic vehemently opposed a

verdict form listing any specific trade secret, instead advocating for a form that

generically referenced its "Claimed Trade Secrets."  6/27 Tr. 121:20-25 (arguing

that alleged trade secrets do not need to be "itemized in the verdict form").  This

element of Arconic's proposed verdict form was ultimately adopted.  *See* Dkt. 979-

1.[2]  Similarly, and also at Arconic's behest, the jury was instructed only that

Arconic's "Claimed Trade Secrets" were ████ REDACTED ████

████████████████████████████████████ 7/26 AM Tr. 14:14-16 (emphasis added).

It would be reasonable for the jury, unable to ascertain what the "Claimed Trade

---

[2] Arconic did not object to the inclusion of the Eleventh Circuit Pattern special
interrogatories in the verdict form, including the question regarding "property."
7/24 Tr. 135:25; 137:2-4.  Nor did Arconic ever move for judgment as a matter of
law as to ownership.  7/25 PM Tr. 122:17-123:14.

Secrets" were, to find that Arconic had not met its burden to prove that it owned any specific piece of information where that information was never clearly identified.

The caselaw supports UAC's position that Arconic's failure to identify its trade secrets dooms its claim of misappropriation.  For example, in *Global Water Group, Inc. v. Atchley*, the court affirmed a grant of judgment as a matter of law in favor of defendants, who were accused of misappropriating a claimed trade secret "formula" for purifying water that was "different from what others in the industry were using."  244 S.W.3d 924, 928-29 (Tex. App. 2008).  In determining that the evidence of misappropriation was legally insufficient, the court noted that the alleged trade secret at issue was an "approximate mix of two well-known substances commonly used together," and that the "imprecise nature of the [trade secret] information weighs heavily against it being a trade secret." *Id.* at 930.

Similarly, in *Coda Development s.r.o. v. Goodyear Tire & Rubber Company*, the court granted a defendant's renewed motion for judgment as a matter of law, and set aside a jury's verdict of trade secret misappropriation, on the grounds that the trade secrets at issue were not "articulat[ed]" with sufficient "definiteness" and therefore "none of them should have been sent to the jury."  No. 5:15-cv-1572, 2023 WL 2734684 at *17 (N.D. Ohio Mar. 31, 2023).  The court concluded that the plaintiff had failed to meet its burden to define its trade secrets with particularity because, *inter alia*, the claimed information was "susceptible" to "many

interpretations," articulated only an "undifferentiated list of components," or were "so vague as to be meaningless." *Id.* at *11-13. The court held that these vague and undefined trade secrets should not have been considered by the jury, and granted judgment as a matter of law against the plaintiff. *Id.* at *17.

Here—like in the two cases cited above—Arconic never clearly told the jury with any definiteness the information it claimed to be misappropriated trade secrets.

2.   *Arconic's Motion Ignores Numerous Legal Requirements of Ownership and Fails to Identify Evidence So Strong That Any Reasonable Jury Would Find Those Requirements Satisfied*

In addition to dismissing the predicate issue of proper identification of the alleged trade secrets, Arconic's motion also attempts to downplay the ownership requirement, arguing that proving it is "not onerous" and suggesting that it only comes into play in obscure situations involving "joint inventors or a licensee." Mot. 19-20. But proving ownership is not some trivial check-the-box element, nor is it necessarily easy. And here, Arconic provided no evidence on multiple aspects of ownership, while the evidence that was in the record contradicted other aspects.

*The Elements of Proving Ownership*—It was Arconic's burden to establish these ownership requirements, not UAC's burden to disprove them. *See Penalty Kick Mgmt. Ltd. v. Coca Cola Co.*, 318 F.3d 1284, 1296 (11th Cir. 2003) (trade-secret plaintiff cannot "improperly … shift the burden of proof to the defendant"). Arconic must show that no "reasonable jurors could have concluded" that Arconic

failed to carry its burden on ownership. *Auto-Owners*, 571 F.3d at 1145.

Specifically, at a minimum, unless an alleged trade secret is subject to a transfer or license conferring ownership on the plaintiff (which Arconic never alleged), successfully proving ownership requires showing that the trade secret was developed by the plaintiff's employee. *See, e.g.*, Restatement (Third) of Unfair Competition § 42 (1995). Even then, the employer does not own the information unless developing it was within the "scope of the employee's assigned duties"; otherwise, it belongs to the employee—"even if the invention or idea relates to the employer's business and was developed using the employer's time." *Id.* Further, as the jury was instructed here, an employer cannot own an employee's "general skills and knowledge acquired during his tenure with his … employer." *AMP Inc. v. Fleischhacker*, 823 F.2d 1199, 1202 (7th Cir. 1987); *see also Am. Bldgs. Co. v. Pascoe Bldg. Sys., Inc.*, 260 Ga. 346, 349 (1990); 7/26 Tr. 20:13-15 (jury instructed that "employee's skill, aptitude and other subjective knowledge … are not the property of the employer"). Nor can an employer own information that an employee possessed "prior to the … employment." *Booth Waltz Enterprises v. Kimlingen*, No. CV040072045S, 2004 WL 2287777, at *5 (Conn. Super. Ct. Sept. 14, 2004).

Moreover, a trade-secret plaintiff cannot own information taken from the public domain. *See, e.g.*, *Trump v. Clinton*, 626 F. Supp. 3d 1264, 1303 (S.D. Fla. 2022) ("Even if DNS data is a trade secret, Plaintiff has not plausibly alleged that he

has a protectable interest in it.  DNS data is public ….”); *see also Mad Dogg Athletics, Inc. v. Hart Wood, Inc.*, 2010 WL 11506882, at *10 (C.D. Cal. Oct. 4, 2010).  Nor does a plaintiff own information acquired from third parties.  *See, e.g., NJ Coed Sports LLC v. ISP Sports, LLC*, No. 22-cv-06969, 2023 WL 3993772, at *4 (D.N.J. June 14, 2023) (plaintiff did not own information from customers).

In short, Arconic’s trial presentation needed to identify at least (1) a particular trade secret; (2) the identity of that secret’s developer; (3) an employment agreement between that person and Arconic; (4) a showing that the secret did not merely constitute the type of skill or aptitude of the employee that Arconic cannot own; (5) evidence that the secret was developed by that person—as opposed to having been acquired from the public domain or a third party; and (6) proof that the employee developed the secret within the scope of her employment.

*Arconic’s Motion Fails to Address These Elements*—Arconic’s motion identifies none of those elements.  Instead, Arconic cites generalized testimony that it “developed each of the trade secret components” at “Alcoa facilities” and points out that “the Alcoa logo” was on documents purportedly reflecting the alleged trade secrets.  Mot. 11, 21-22.  Based on that say-so, Arconic contends its case was so strong that the Court should substitute its judgment for the jury’s—and ignore the evidence unhelpful to Arconic (e.g., ████████ REDACTED ████████

████████████████████████████████████████████████

██████ REDACTED ██████ , *see infra* p. 19).  But Arconic fails to cite a single case

accepting evidence this thin as a basis for granting a new trial.

Arconic instead misleadingly invokes a case ***refusing*** to set aside the jury's

verdict, which does not even remotely support Arconic's position.  Mot. 20 (citing

*Highland Consulting Grp., Inc. v. Minjares*, 74 F.4th 1352 (11th Cir. 2023)).  There,

where the jury found in the ***plaintiff's favor*** on ownership, the court recognized that

the plaintiff's ownership claim was not so lacking that the verdict should be set aside.

*Highland Consulting*, 74 F.4th at 1358 ("Drawing all reasonable inferences ***in favor***

***of plaintiff*** Highland, we conclude that the record contains sufficient evidence to

support the jury's finding …." (emphasis added)).  Thus, the evidence in that case

satisfied the ***bare minimum*** for a court to ***sustain*** a verdict siding with a plaintiff.

But that does not help Arconic, which must show the evidence so overwhelmingly

established ownership that the verdict must be ***set aside***.

Because Arconic's opening brief fails to even address many of the

requirements for proving ownership, let alone identify overwhelming evidence that

could warrant a new trial, its motion should be denied without further inquiry into

the record.  *Cf. Slawin v. Bank of Am. Merch. Servs.*, 491 F. Supp. 3d 1334, 1340 n.5

(N.D. Ga. 2020) (arguments not raised in opening brief are waived).  Nevertheless,

an inspection of the record shows further gaps in its proof.

*A Reasonable Jury Could Have Concluded Arconic Failed to Offer Sufficient*

*Proof That the Alleged Trade Secrets Were Developed by Arconic Employees Within the Scope of Their Employment*—A reasonable jury may have found there were fundamental gaps surrounding the basic facts underlying Arconic's ownership claims.  In particular, Arconic needed to establish that any trade secret information developed by Arconic employees was created within the scope of those employees' job duties, such that Arconic owned these employees' rights in the information.  *See, e.g.*, Restatement (Third) of Unfair Competition § 42; *Pullman Grp., LLC v. Prudential Ins. Co., of Am.*, 288 A.D.2d 2, 3 (N.Y. 1st Dep't 2001).

However, Arconic failed to provide even basic information supporting that requirement.  For instance, throughout Arconic's cited testimony about its alleged trade secret in **REDACTED**, Arconic never even once identified ***who*** specifically came up with it, let alone established that the person (or people) worked for Arconic and created the **REDACTED** within the scope of employment.  *E.g.*, Mot. 10 (citing 7/13 AM Tr. 80:22-83:24, 84:16-87:16; 7/13 PM Tr. 4:23-5:5).

And even where Arconic provided limited background information about the alleged origins of **REDACTED**, there were inconsistencies in Arconic's story.  For instance, Arconic claimed during its opening statement that **REDACTED** **REDACTED** 7/11 PM Tr. 88:18-19.  Yet, multiple witnesses contradicted that assertion, stating instead that **REDACTED**

██████ REDACTED ██████.  *E.g.*, 7/25 AM Tr. 138:6-7.

Between the basic facts that were missing, and others that were contradicted, the jury may have reasonably found that Arconic did not show that the alleged trade secrets were created by Arconic employees, within the scope of their employment.

*A Reasonable Jury Could Have Concluded the Alleged Trade Secrets Constituted Employee Knowledge and Experience*—Not only did Arconic fail to put forth evidence that would satisfy its burden, but the evidence that was in the record **supports** the verdict on lack of ownership.

To start, the jury was instructed that "[a]n employee's skill, aptitude[,] and other subjective knowledge obtained in the course of employment are **not the property of the employer**."  7/26 Tr. 20:13-15 (emphasis added).  Arconic did not object to this instruction (7/25 PM Tr. 92:20-93:1; 94:10; 96:25), which was a proper statement of the law, from an opinion of the Supreme Court of Georgia.  *Am. Bldgs.*, 260 Ga. at 349 (1990).  This limitation on what a plaintiff may claim as property is distinct from the verdict form's second question—which addresses whether an alleged trade secret "derive[s] economic value … from not being generally known to, and not being readily ascertainable by proper means by, other persons."  Dkt. 979-1 at 2.  The second question reflects that even if the alleged trade secret is more than the type of employee skill that Arconic cannot own and also otherwise satisfies the requirements of ownership, Arconic cannot claim protection for an alleged trade

secret if, for example, someone has already published that information or others could easily figure out the information.  *See, e.g.*, *Ultimax Cement Mfg. Corp. v. CTS Cement Mfg., Corp.*, 587 F.3d 1339, 1355 (Fed. Cir. 2009) (information not entitled to trade secret protection because the same information was in a published patent).

The jury was presented ample evidence to support a finding that the information presented at trial (to the extent it was even alleged to be a trade secret) constituted merely the "skill, aptitude, and other subjective knowledge" of employees.  *See, e.g.*, 7/17 AM Tr. 107:10-109:5; 7/24 AM Tr. 106:3-17 (REDACTED

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████

It is abundantly clear that a reasonable jury could have found that the information raised by Arconic reflected the knowledge and experience of employees.  And, following the jury instructions given to them (to which Arconic did not object), the jury could have reasonably concluded that Arconic does not have a proprietary interest in such information.  *Am. Bldgs.*, 260 Ga. at 349; *see also Servicetrends, Inc. v. Siemens Med. Sys., Inc.*, 870 F. Supp. 1042, 1074 (N.D. Ga. 1994) (granting summary judgment on trade secret claim because "the law does not

prohibit the exploitation of an employee's accumulated knowledge," like "the skills and information he acquired at work."). On this ground, Arconic's motion also fails.

*A Reasonable Jury Could Have Concluded Arconic Obtained the Alleged Trade Secrets from Public Information or Third Parties*— Beyond general employee knowledge, UAC presented voluminous evidence that the alleged trade secrets came from public sources or third parties—which Arconic cannot properly claim to own. *See, e.g.*, *Trump*, 626 F. Supp. 3d at 1303; *see also Welter v. Med. Pro. Mut. Ins. Co.*, No. 22-CV-11047-PBS, 2023 WL 2988627, at *17 (D. Mass. Feb. 23, 2023) (doctor does not own patients' information, even if confidential); *Berkadia Real Estate Advisors LLC v. Wadlund*, 2022 WL 3213113, at *10 (D. Ariz. Aug. 9, 2022) (plaintiff "cannot own" information "found in the public domain").

Here, too, the rule preventing parties from claiming ownership of public information operates independently from the requirements of the second question on the verdict form, though the same evidence might relate to both inquiries. The verdict form's second question provides that even if a plaintiff develops information itself and satisfies all the elements of ownership, that information is nevertheless not entitled to trade secret protection if it exists elsewhere in the public domain or is readily ascertainable. That requirement would bar a company from claiming protection for a recipe developed by its employees within the scope of their employment if it turns out that another company independently arrived at the same

recipe and published it.  By contrast, if a plaintiff seeks trade secret protection for information that it merely obtains from the public domain, its claim would obviously fail for lack of ownership.  After all, a plaintiff could not simply copy information from a Wikipedia page onto documents bearing the company's logo and claim that information as its own "property."  *See, e.g.*, *Trump*, 626 F. Supp. 3d at 1303.

Applying that rule here, even some of the alleged trade secret information highlighted in Arconic's briefing REDACTED

Similarly, the jury could have reasonably concluded that Arconic merely

derived REDACTED

REDACTED

REDACTED

Accordingly, there was ample evidence from which the jury might have decided

Arconic did not own REDACTED

   In the same vein, Arconic even claimed to own REDACTED

   These examples are problematic for Arconic's motion more broadly, as they

cast doubt on the overall credibility of Arconic's claims that **any** alleged trade secrets were developed by Arconic, rather than plucked from the public domain.  In fact, contrary to the jury instructions, Arconic's technical expert testified that he thought Arconic could own a trade secret in something that is "in the public domain," which undermined his credibility generally.  7/17 PM Tr. 102:12-15.  The jury's evaluation of that credibility is entitled to deference.  *Auto-Owners*, 571 F.3d at 1145.[3]

Especially damaging to Arconic's credibility was one instance where third-party testimony flatly contradicted Arconic's story about the development of the alleged trade secrets.  Although Arconic alleged that it owned a trade secret covering



*See* 7/24 AM Tr. 110:20-111:22; *see also* 7/24 PM Tr. 10-4:5 (REDACTED).  Left with no support in fact or law, Arconic staked

---

[3] Arconic not only fails to address these credibility issues, but even resorts to pleas for the Court to make its own credibility evaluations, as Arconic asserts that a UAC witness was "caught in a[] lie" relating to REDACTED Mot. 7.  But Arconic already presented that meritless argument to the jury (7/26 Tr. 51:1-21, 122:9-15), and UAC explained why Arconic was wrong (7/26 Tr. 91:18-92:8).  The jury made its own credibility assessment, and Arconic cannot now seek a new trial based on an argument that the Court should "substitute [its] own credibility choices" for the jury's.  *Williams*, 689 F.2d at 974 n.7.

its credibility against the third-party—even arguing that the witness's account should be rejected because he did not have a college degree.  7/25 AM Tr. 78:2-13.

UAC highlighted for the jury these types of contradictions in Arconic's case, including instances where Arconic changed its story after being confronted by the contrary evidence (e.g., ███████████ REDACTED ████████████

████████████████████████████████████████████████

████████████████████████████████████████  7/26 Tr. 74:17-20.  Accordingly, the jury may have reasonably discounted many of Arconic's claims that it developed the alleged trade secrets, rather than obtaining them from public information or third parties.  That "reasonable credibility decision[]" should not be disturbed.  *Roundtree v. Bowers*, No. 22-11557, 2022 WL 17986182, at *4 (11th Cir. Dec. 29, 2022).

### B. Arconic's Untimely Challenge to UAC's Closing Argument Does Not Warrant a New Trial

Arconic claims UAC's closing "invited error by telling the jury that it should answer 'no' to question 1 if it merely found that Arconic did not own its claimed stretch percentage trade secret."  Mot. 23-25.  This is both waived and meritless.

To obtain a new trial based on improper argument, a losing party must show that the "argument [was] plainly unwarranted and clearly injurious."  *Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1282 (11th Cir. 2008).  And a party must raise a timely objection to that argument.  *Ruiz v. Wing*, 991 F.3d 1130, 1141 (11th

Cir. 2021).  This rule "prohibits counsel from 'sandbagging' the court by remaining silent" during an opponent's closing argument "and then, if the result is unsatisfactory, claiming error."  *Oxford Furniture Cos. v. Drexel Heritage Furnishings, Inc.*, 984 F.2d 1118, 1128-29 (11th Cir. 1993).  Where, as here, a party fails to timely object, a claimed error does not warrant relief unless it implicates the "interest of substantial justice."  *Christopher v. Florida*, 449 F.3d 1360, 1366-67 (11th Cir. 2006).  This "stringent standard" is akin to plain error, *Lord v. Univ. of Miami*, 2023 WL 354276, at *7 (S.D. Fla. Jan 23, 2023), a hurdle "seldom" satisfied by an "argument of counsel in a civil case," *Ruiz*, 991 F.3d at 1141.

Arconic contends it satisfies the substantial justice standard because arguments that "improperly narrow[] the avenues for liability" can supposedly be challenged without a timely objection.  Mot. 23.  But Arconic's only cited authority falls short.  In *Christopher*, a new trial was warranted only because counsel invited the jury "to hold [d]efendants liable … in direct contravention of" an "earlier … order" that "ruled out" liability on certain grounds.  449 F.3d at 1366-68.  Where, as here, "no such order" precluding an argument "exist[s]," the ordinary prohibition against sandbagging applies, and courts reject challenges.  *Atkinson v. Yoder*, 2017 WL 1397407, at *3 (S.D. Fla. Mar. 22, 2017); *see also United States ex rel. Tenn. Valley Auth. v. 2.21 Acres of Land*, 2018 WL 2284375, at *4 (N.D. Ga. Mar. 16, 2018); *Wallace v. Mangiaracina*, 2017 WL 2634891, at *3 (M.D. Fla. June 19,

2017).

In any event, UAC's closing was entirely proper.  Arconic argues that UAC's closing "inverted the question" before the jury.  Mot. 24.  That is incorrect.  UAC's closing went "through the four questions" at the start of the verdict form to "see if they're even trade secrets here" for any of Arconic's possible claimed trade secrets. 7/26 Tr. 85:1-3.  As to every trade secret Arconic could conceivably claim, UAC's closing emphasized various failures of proof, consistent with the verdict form's "funnel" approach.  *See* Mot. 9.  Read in context, UAC's closing simply did not convey that a failure of proof on a single question as to a single claimed trade secret—including stretch percentage—would resolve the case.  *Ruiz*, 991 F.3d at 1141.  Indeed, far from being "plainly unwarranted," *Goldsmith*, 513 F.3d at 1282, UAC's emphasis on specific failures of proof for a range of possible trade secrets was necessitated by Arconic's refusal to define its claimed trade secrets.

Even if the jury understood UAC's closing in the strained sense Arconic suggests, this Court's instructions prevented any impropriety from being "clearly injurious." *Goldsmith*, 513 F.3d at 1282.  As Arconic requested, Dkt. 976 at 4; 7/26 Tr. 31:16-20, this Court instructed the jury to assess Arconic's ownership of "one or more valid trade secrets," 7/26 Tr. 14:9-13, 26:19-24.  This Court explained that each question had to be answered "for the trade secret or secrets to which [the jury] answered yes" to a prior question.  7/26 Tr. 27:7-8, 22-23, 28:7-8, 29:23-24.  Courts

"always presume that a jury follows its instructions." *United States v. Colston*, 4 F.4th 1179, 1192 (11th Cir. 2021). That presumption is particularly strong here, as this Court told the jury that "anything the lawyers say is not evidence and isn't binding on [the jury]." 7/26 Tr. 10:18-19; *see Lord*, 2023 WL 354276, at *7. Because Arconic's preferred instructions—not UAC's closing—governed the deliberations, Arconic's challenge fails. *See Hilger v. Velazquez*, 613 F. App'x 775, 777 (11th Cir. 2015); *Abella v. Rodriguez*, 2022 WL 3567856, at *3 (S.D. Fla. July 14, 2022).

Arconic's silence confirms that UAC's closing was not "plainly unwarranted" or "clearly injurious." *Goldsmith*, 513 F.3d at 1282. Arconic's failure to object, request a curative instruction, or respond in rebuttal "undermines any claim that [UAC's] statements were so prejudicial as to warrant a new trial." *Wallace*, 745 F. App'x at 359. If UAC's closing misstated the instructions, Arconic would have done ***something*** other than save its challenge for post-trial. No relief is warranted on a claim raised "as an afterthought." *Miledy Strait v. Busch Entm't Corp.*, 2007 WL 496607, at *2 (M.D. Fla. Feb. 12, 2007).

## IV.   CONCLUSION

UAC thus respectfully requests that the Court deny Arconic's motion.

25

Dated: September 15, 2023                Respectfully submitted,

/s/ *Michael J. Sullivan*                  /s/ *Rachel R. Blitzer*

WOMBLE BOND                      LATHAM & WATKINS LLP
DICKINSON (US) LLP                P. Anthony Sammi (*pro hac vice*)
Michael J. Sullivan (142203)          Rachel R. Blitzer (*pro hac vice*)
271 17th Street, NW, Suite 2400       Ramya Vallabhaneni (*pro hac vice*)
Atlanta, GA 30363                  1271 Avenue of the Americas
Telephone: (404) 879-2438           New York, NY 10020
Fax: (404) 879-2938                Telephone: (212) 906-1200
Email: michael.sullivan@wbd-us.com     Fax: (212) 751-4864
                              Email: tony.sammi@lw.com
                              Email: rachel.blitzer@lw.com
                              Email: ramya.vallabhaneni@lw.com

                              LATHAM & WATKINS LLP
                              Aaron Macris (*pro hac vice*)
                              200 Clarendon Street
                              Boston, MA 02116
                              Telephone: (617) 948-6000
                              Fax: (617) 948-6001
                              Email: aaron.macris@lw.com

                              LATHAM & WATKINS LLP
                              Diane Ghrist (*pro hac vice*)
                              555 Eleventh Street, NW
                              Washington, DC 20004
                              Telephone: (202) 637-2200
                              Fax: (202) 637-2201
                              Email: diane.ghrist@lw.com

                              LATHAM & WATKINS LLP
                              Melanie J. Grindle (*pro hac vice*)
                              Adam A. Herrera (*pro hac vice*)
                              12670 High Bluff Drive
                              Suite 2100
                              San Diego, CA 92130
                              Telephone: (858) 523-5400
                              Fax: (858) 523-5450

Email: melanie.grindle@lw.com
Email: adam.herrera@lw.com

SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
Douglas R. Nemec (*pro hac vice*)
Leslie A. Demers (*pro hac vice*)
Ryan P. Bisaillon (*pro hac vice*)
One Manhattan West
New York, NY 10001
Telephone: (212) 735-3000
Fax: (917) 777-2419
Email: douglas.nemec@skadden.com
Email: leslie.demers@skadden.com
Email: ryan.bisaillon@skadden.com

*Attorneys for Universal Alloy Corporation*

## <u>CERTIFICATE OF TYPE SIZE AND STYLE</u>

Counsel for Defendant hereby certifies that the size and style of the type used in the foregoing filing is Times New Roman: 14 point.

/s/ *Rachel R. Blitzer*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on this 15th day of September, 2023, I electronically filed the above document with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to all registered counsel.

/s/ *Rachel R. Blitzer*

27