IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| ARCONIC CORP. and HOWMET AEROSPACE, INC. (f/k/a Alcoa Inc.), | ) ) ) | |
| Plaintiffs/Counterdefendants, | ) ) | No. 1:15-CV-01466-JPB |
| v. | ) ) | |
| UNIVERSAL ALLOY CORPORATION, | ) ) | |
| Defendant/Counterclaimant. | ) ) | |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR
<u>MOTION FOR A NEW TRIAL</u>**

## Table of Contents

**Page**

INTRODUCTION ..............................................................................1

ARGUMENT AND CITATION OF AUTHORITIES ...............................3

I.   UAC FAILED TO PRESENT ANY EVIDENCE CONTESTING
     OWNERSHIP OF THE CLAIMED TRADE SECRETS............................3

II.  UAC'S TRADE SECRET IDENTIFICATION ARGUMENT FAILS
     FACTUALLY AND LEGALLY....................................................4

III. UAC INVENTS REQUIREMENTS FOR PROVING OWNERSHIP. .......8

     A. UAC Seeks To Add Phantom Legal Requirements. ...................8

     B. UAC Seeks To Import Common Knowledge Into Ownership
        Inquiry. ..................................................................10

IV.  THE JURY IS NOT FREE TO DISREGARD UNCONTRADICTED
     AND UNIMPEACHED EVIDENCE..........................................13

V.   UAC INVITED THE ERROR. ................................................15

CONCLUSION ............................................................................15

## Table of Authorities

**Page(s)**

**Federal Cases**

*Chesapeake & O. Ry. Co. v. Martin*,
    283 U.S. 209 (1931)...................................................................................13, 14

*Christopher v. Florida*,
    449 F.3d 1360 (11th Cir. 2006) ........................................................................15

*DeRubeis v. Witten Techs., Inc.*,
    244 F.R.D. 676 (N.D. Ga. 2007) ........................................................................8

*EarthCam, Inc. v. OxBlue Corp.*,
    49 F. Supp. 3d 1210 (N.D. Ga. 2014).................................................................8

*Equate Media, Inc. v. Suthar*,
    2022 WL 2824973 (C.D. Cal. 2022) ..................................................................8

*Grandison v. Smith*,
    779 F.2d 637 (11th Cir. 1986) .....................................................................3, 15

*Hibiscus Assocs. Ltd. v. Bd. of Trs. of Policemen & Firemen Ret. Sys.
    of City of Detroit*,
    50 F.3d 908 (11th Cir. 1995) ...........................................................................14

*Highland Consulting Gp. v. Minjares*,
    74 F.4th 1352 (11th Cir. 2023) .................................................................4, 9, 10

*Molski v. M.J. Cable, Inc.*,
    481 F.3d 724 (9th Cir. 2007) ....................................................................7, 9, 13

*Reeves v. Sanderson Plumbing Prods., Inc.*,
    530 U.S. 133 (2000)...................................................................................13, 14

*Rent Info. Tech., Inc. v. Home Depot U.S.A., Inc.*,
    268 F. App'x 555 (9th Cir. 2008) .......................................................................8

*Servicetrends, Inc. v. Siemens Med. Sys., Inc.*,
   870 F. Supp. 1042 (N.D. Ga. 1994)......................................................................12

*Trump v. Clinton*,
   626 F. Supp. 3d 1264, 1303-04 (S.D. Fla. 2022)................................................12

**State Cases**

*Am. Bldgs. Co. v. Pascoe Bldg. Sys., Inc.*,
   392 S.E.2d 860 (Ga. 1990) ...................................................................................11

*Essex Gp., Inc. v. Southwire Co*,
   501 S.E.2d 501 (Ga. 1998) ...................................................................................12

**State Statutes**

Cal. Civ. Proc. Code § 2019.210 .................................................................................8

O.C.G.A. § 10-1-761(4)..........................................................................................2, 10

**Rules**

Rule 50 ........................................................................................................................13

Plaintiffs hereby submit this Reply in Support of Their Motion for New Trial ("Motion," Dkt. 1021).

## INTRODUCTION

It is striking that UAC fails to come forward with any evidence supporting the verdict. The one question answered on the verdict form was narrow: whether Alcoa owned – as in, had title to – one or more of its Claimed Trade Secrets. As discussed in Alcoa's Motion, the trial record contains clear, unequivocal evidence that Alcoa owned one or more of the trade secrets it claimed. It was incumbent on UAC to point to trial evidence contesting ownership. UAC's brief confirms Alcoa's point: there is not a shred of such evidence.

Instead, UAC changes the subject. Mainly, it asserts that Alcoa did not even identify "one or more" Claimed Trade Secrets. For this to be true, Alcoa must have failed to identify a single solitary Claimed Trade Secret in the hours and days it spent itemizing its trade secrets. That is absurd. It would mean, for example, that Alcoa never identified the C545 alloy composition as a Claimed Trade Secret, when in fact, the alloy composition (with its specific details) was identified repeatedly throughout the trial. By its terms, Question 1 merely required information Alcoa claimed as trade secret. There is no Georgia law imposing an identification requirement to prove ownership, much less a particularity requirement. Nor was there a jury instruction

linking ownership with identification.  The jury cannot be presumed to have applied

phantom instructions.

Next, UAC seeks to artificially inflate the burden of proving ownership by

inserting requirements not found in the statute, case law, or jury instructions.  It asserts

that to establish "ownership," Alcoa had to prove such things as the identity of a

specific employee who developed a trade secret, their employment contract, and that

the development was within the scope of employment.  No case applying Georgia law

imposes such requirements – and no such requirements were in the jury instructions.

Indeed, the Eleventh Circuit has found sufficient evidence of ownership in as little as

the party's logo on a company document and testimony regarding development.  UAC

also attempts to fold in issues unrelated to ownership, such as whether the information

was common knowledge (public domain).  But those questions go to whether the

information Alcoa owns qualified as a trade secret under O.C.G.A. § 10-1-761(4),

which is the subject of Question 2 on the verdict form, not Question 1.  UAC's

reference to Instruction No. 15 is no help because it relates to misappropriation

(Question 4 on the verdict form), not ownership.  Obviously, it is not misappropriation

to use something that is not a trade secret, which is what Instruction No. 15 addresses.

Finally, UAC suggests the jury was free to disregard Alcoa's uncontroverted

evidence of ownership based on a credibility determination.  This is not the law.

Where, as here, testimony is uncontradicted and unimpeached, it cannot be disregarded.

UAC seeks an extraordinary result: to uphold a verdict supported by no evidence. Where there is "an absolute absence of evidence to support a jury's verdict," granting a new trial is not a matter of discretion, it is required. *Grandison v. Smith*, 779 F.2d 637, 640 (11th Cir. 1986). For good reason – where a verdict is unsupported by evidence, a new trial is necessary to preserve the integrity of, and the public's confidence in, the judicial process, and to prevent a miscarriage of justice.

## ARGUMENT AND CITATION OF AUTHORITIES

### I.   UAC FAILED TO PRESENT ANY EVIDENCE CONTESTING OWNERSHIP OF THE CLAIMED TRADE SECRETS.

Alcoa's opening brief pointed to clear and unequivocal evidence that it owned the Claimed Trade Secrets. Dkt. 1022-1, Plaintiffs' Memorandum of Law in Support of Their Motion for a New Trial ("Alcoa Br."), at 10. Ed Colvin testified that Alcoa owned the trade secrets at issue, and then provided detailed testimony as to the specific Claimed Trade Secrets and the Alcoa documents in which they appeared. Alcoa Br. at 10-11. Several other witnesses corroborated this testimony, as did Mr. Colvin's testimony describing Alcoa's development process. *Id.* at 10-15, 21. At no point during the trial did anyone other than Alcoa assert title in, or ownership of, any Claimed Trade Secret. This evidence more than establishes ownership.

UAC's brief confirms this unassailable truth.  It fails to point to any evidence contradicting Alcoa's proof that the Claimed Trade Secrets were its property – in substance, that it had title.  *See Highland Consulting Gp. v. Minjares*, 74 F.4th 1352, 1358 (11th Cir. 2023) (ownership under the DTSA is a question of title or license). Instead, UAC seeks to change the subject to discuss irrelevant or plainly incorrect legal theories, discussed below.

## II.   UAC'S TRADE SECRET IDENTIFICATION ARGUMENT FAILS FACTUALLY AND LEGALLY.

The idea that Alcoa never presented evidence identifying its Claimed Trade Secrets is definitively refuted by the record.  At trial, Alcoa provided evidence identifying the following as Claimed Trade Secrets:

(1) Alcoa's C545 alloy composition.  Alcoa Br. at 10; Day 4 PM Tr. 117:22-120:22 (Prof. Neu testimony).[1]

(2) Alcoa's precise homogenization parameters for the C545 alloy.  Alcoa Br. at 10; Day 4 PM Tr. 142:24-145:21 (Prof. Neu testimony).

(3) Alcoa's precise extrusion settings.  Alcoa Br. at 11; Day 5 PM Tr. 68:18-70:8 (Prof. Neu testimony).

(4) Alcoa's precise heat treat times and temperatures.  Alcoa Br. at 11; Day 5 PM Tr. 85:14-89:11 (Prof. Neu testimony).

(5) Alcoa's precise quench settings.  Alcoa Br. at 11; Day 5 PM Tr. 110:12-113:7. (Prof. Neu testimony).

(6) Alcoa's stretch percentage used on stretch-formed spar chords.  Alcoa Br. at 11;

---

[1] The trial transcripts referenced in this brief are Dkts. 998-1020.

Day 6 AM Tr. 11:18-12:20 (Prof. Neu testimony).

(7) Alcoa's precise age process procedure, including specific times and temperatures for the first and third steps, and Alcoa's equation with constants for the second step.  Alcoa Br. at 11; Day 6 AM Tr. 31:14-37:9 (Prof. Neu testimony).

This evidence dispenses with the lion's share of UAC's arguments.  There is simply no factual basis to claim Alcoa did not identify its Claimed Trade Secrets.  There was no evidentiary dispute at trial about whether Alcoa identified Claimed Trade Secrets – UAC's assertions were merely attorney arguments, not evidence, and nothing more than willful blindness, denying reality.

For UAC's argument to be correct, it would mean that in the hours and days Alcoa testified to its trade secrets, it never identified a single Claimed Trade Secret.  That is preposterous.[2]  For example, it would need to be the case that Alcoa never identified that it claimed its alloy composition as a trade secret – which it obviously did, with specific parameters.  Dkt. 988-40 (PTX-119); Day 3 AM Tr. 80:22-83:24.  Mr. Colvin walked through each and every trade secret alleged, Alcoa Br. at 10-11; *see generally* Day 2 PM Tr. 131:24 – Day 4 AM Tr. 33:11, then technical expert Prof. Neu again identified trade secrets while walking the jury through the evidence of misappropriation.  *See* bullet points, *supra*; *see generally* Day 4 PM Tr. 105:15-

---

[2] In fact, three judges previously rejected UAC's assertion that it did not know what trade secrets were alleged.  *See* Dkt. 461 at 21-22 (Judge Vineyard); Dkt. 583 at 6-7 (Judge Ross); Dkt. 635-1 at 4 (Judge Birch).

164:10; Day 5 PM Tr. 66:1-133:16; Day 6 AM Tr. 9:21-78:25.  Even UAC's own

expert, Dr. Pickens, understood what trade secrets Alcoa claimed – he addressed each

of them, never once testifying that he did not know what they were.  *See, e.g.*, Day 10

AM Tr. at 69:20-81:14 ("have you reviewed the mins and max for Arconic's alleged

proprietary C545? A Yes, I have."), 83:21-84:6 ("This is a summary of Arconic's

homogenization processes."), 88:10-89:16, 91:14-96:11 (comparing UAC's

procedures to "the range that Arconic uses"), 98:7-101:9 ("Arconic's solution heat

treatment times"), 102:16-106:13 (acknowledging "alleged trade secret" in quench

parameters), 108:5-111:6 (stretch percentage "is an alleged trade secret"), 113:22-

115:12 ("Arconic's version of the Arrhenius equation" is "an alleged trade secret");

*see generally* Day 10 AM Tr. at 69:20-115:12.  Indeed, he even displayed a list

summarizing Alcoa's Claimed Trade Secrets.  *See* Ex. 1; Day 10 AM Tr. at 70:6-22.

Importantly, the verdict form simply required that Alcoa prove it owned "**one**

**or more**" of the Claimed Trade Secrets.  Dkt. 979 at 1.  For UAC to be correct

factually, it would have to be the case that Alcoa did not identify **a single claimed**

**trade secret**.  UAC fails even to attempt such a showing, instead pointing to a few

isolated pieces of information without accounting for all of the Claimed Trade Secrets

– the same type of flawed and misleading logic that it presented to the jury.

UAC claims that Alcoa's cross examinations of UAC's witnesses Baugh,

Walker, and Colt somehow negated Alcoa's evidence identifying its trade secrets. But these witnesses testified about parts of the manufacturing processes that did not involve Alcoa's trade secrets. That UAC attempted to mislead the jury by talking about activities Alcoa never claimed constituted misappropriation does not negate Alcoa's evidence identifying what it claimed as trade secrets. In all events, UAC's witness testimony went to misappropriation or trade secret status, not ownership.[3]

Question 1 merely requires that Alcoa prove ownership of something it *claims* is a trade secret. UAC invents an even higher standard – a requirement that identification with particularity is a "predicate" for ownership. But UAC's Georgia cases on identification have nothing to do with ownership.[4] Instead, they describe identification as a component of the definition of a trade secret, which was Question 2 of the verdict form, not Question 1. *See EarthCam, Inc. v. OxBlue Corp.*, 49 F. Supp. 3d 1210, 1224–25 (N.D. Ga. 2014); *Rent Info. Tech., Inc. v. Home Depot U.S.A., Inc.*,

---

[3] UAC continues to press the argument that Alcoa does not have trade secrets because it did not count them. This is a non-sequitur. It is like asking how many ideas are in a novel. That they are not susceptible to one way of counting does not mean that there are not any. For example, is Alcoa's C545 alloy composition one trade secret or a combination of several trade secrets? It does not matter – either way, the composition has been identified as a Claimed Trade Secret.

[4] Again, there is no mention of this "requirement" in the jury instructions. The jury cannot be presumed to have applied some phantom requirement. *See Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 734 (9th Cir. 2007) (district court's explanation of unsupported verdict was speculative where it relied on a theory that the jury was never instructed on) (reversing denial of motion for new trial).

268 F. App'x 555, 558 (9th Cir. 2008) (applying Georgia law). And even then, they state no requirement of identification "with particularity."[5] UAC's *only* case connecting identification with ownership applies California law. Opp. at 4 (citing *Equate Media, Inc. v. Suthar*, 2022 WL 2824973, at \*3–4 (C.D. Cal. 2022)). But California's trade secret statute notably differs from Georgia's – it explicitly requires trade secret identification. *See* Cal. Civ. Proc. Code § 2019.210.[6] In short, none of UAC's cases requires identification to establish ownership under Georgia law.[7]

## III.   UAC INVENTS REQUIREMENTS FOR PROVING OWNERSHIP.

Next, UAC attempts to artificially inflate the standard for ownership by inventing a list of six "legal requirements" not found in Georgia law.

### A. UAC Seeks To Add Phantom Legal Requirements.

UAC asserts that, to prove ownership, Alcoa was required to identify particular people who developed each trade secret, provide written employment agreements for

---

[5] Other cases deal with identification for purposes of *discovery*, not trial, ensuring the defendant is on notice of what trade secrets are alleged. *See, e.g.*, *See DeRubeis v. Witten Techs., Inc*., 244 F.R.D. 676, 679-80 (N.D. Ga. 2007).

[6] UAC's other cases treat trade secret identification as going to either the qualification of information as "trade secret" or misappropriation – both of which were separate questions on the verdict form. Opp. at 4-5, 10.

[7] UAC also points to a different Arconic case involving different law, facts, and technology in which a court found the trade secrets had not been adequately identified. Opp. at 5. UAC incorrectly suggests the identification in that case was made by the undersigned counsel – it was not. That case has no bearing here.

each, and show that the employee developed each trade secret within the scope of

employment.  Opp. at 12-13.  No such requirements exist in the statute, any case

applying Georgia law, or the Eleventh Circuit's recent opinion on the same special

interrogatory as Question 1, *Highland Consulting*.[8]  74 F.4th at 1352.  Moreover, no

such requirement was in the jury instructions—phantom evidentiary requirements

cannot support a verdict.  *See Molski*, 481 F.3d at 733-34 (reversing denial of new trial

motion when trial court relied on a theory absent from the jury instructions).[9]

    Interpreting the *exact same* special interrogatory as Question 1, the Eleventh

Circuit held that merely having documents stamped with the plaintiff's logo,

combined with testimony that the logo was plaintiff's marketing name, constituted a

---

[8] Indeed, UAC's only authority is snippets cobbled together from an out-of-state case and a section of the Restatement, both of which focus on ownership disputes between companies and their former employees, which is not at issue in this case.  *See* Opp. at 12, 15.

[9] Regardless, the undisputed evidence showed the Claimed Trade Secrets were developed by Alcoa employees as part of their employment by Alcoa.  *See* Alcoa Br. at 10-11. Alcoa's testimony and exhibits on its research and development were replete with information about specific Alcoa employees who developed the Claimed Trade Secrets.  *See* Day 3 AM Tr. 87:17-88:21, 108:1-109:15; Day 3 PM Tr. 27:18-23, 44:6-45:14, 101:3-23, 112:18-113:16, 119:19-123:13; Dkts. 988-257, 988-292, 988-258, 988-414, 988-11, 988-116 (PTXs 2910, 3915, 2952, 2890, 335, and 407).  Mr. Colvin testified that at least 44 Alcoa employees had been involved, including himself and all but one of the former Alcoa employees.  Day 2 PM Tr. 158:10-159:5, Day 3 AM Tr. 28:1-17, 42:8-43:3.  And, while unnecessary, several of their employment agreements are in the record.  Dkts. 988-10 (PTX 50) (Chase & Sigler), 988-81 (PTX 251) (Sigler), 988-123 (PTX 548) (Colvin), 987-2 (DTX 8) (Fultz).

sufficient basis to find trade secret ownership. *Highland Consulting*, 74 F.4th at 1358. There was no mention of the "requirements" UAC claims are mandatory – for good reason: they are not necessary to meet the plaintiff's burden of proof of ownership. UAC's attempt to distinguish this case relies on the untenable premise that the legal elements of ownership depend on the procedural vehicle used to challenge the evidence. Opp. at 14. There is no such distinction at law.

## B. UAC Seeks To Import Common Knowledge Into Ownership Inquiry.

Next, UAC makes a number of arguments revolving around the assertion that proving ownership required showing that the Claimed Trade Secrets were not common knowledge. But this refers to Question 2 on the verdict form, not Question 1.[10] No GTSA case has found a lack of ownership based on these elements – or even suggested they are relevant to the inquiry.

Further, whether information is an employee's general knowledge and skill goes to whether it meets the definition of "trade secret" under O.C.G.A. § 10-1-761(4) (defining a trade secret to mean, *inter alia*, information "which is not commonly known"). Whether information constitutes a "trade secret" is the subject of Questions 2 and 3 on the verdict form. Dkt. 979 at 2. Put another way, something cannot both

---

[10] Indeed, Question 1 is phrased in terms of a "Claimed Trade Secret" – i.e., what Alcoa was claiming, not whether it met the definition of a trade secret.

meet the statutory definition of a "trade secret" and also not be a trade secret because

it is an employee's general knowledge and skill.  Jury Instruction No. 15 is no help

because it is about misappropriation (Question 4), not ownership.  Ex. 2 at 20.

Indeed, the title to that instruction is "Misappropriation—Employee's Implied Duty of

Confidentiality."  *Id.*[11]  It first instructs that there is an implied duty not to divulge the

trade secrets of a former employer to a competitor.  *Id.*  It then states: "An employee's

skill, aptitude and other subjective knowledge obtained in the course of employment

are not the property of the employer, and the employee has a right to apply such skills

to their profession . . . ."  *Id.*  This instruction simply clarifies that the employee's

implied duty of confidentiality does not extend to information that is not a trade

secret, and thus to use that information is not misappropriation.  *Am. Bldgs. Co. v.*

*Pascoe Bldg. Sys., Inc.*, 392 S.E.2d 860, 864 (Ga. 1990), the source of this sentence, is

no help because it uses the quoted language to evaluate whether information qualified

as a trade secret, not ownership.[12]  In any event, there is no evidence that any of

Alcoa's Claimed Trade Secrets *were* actually general skill or knowledge.  Opp. at 17.

UAC's four examples are misplaced – they go to other issues such as independent

---

[11] The jury was given a copy of the written instructions to take to the jury room. Day 12 Tr. at 9:16-18, 134:12-15.

[12] The same is true of UAC's other cited Georgia case*, Servicetrends, Inc. v. Siemens Med. Sys., Inc*., 870 F. Supp. 1042, 1074 (N.D. Ga. 1994).

development (e.g., UAC's quench nozzle configuration was a result of UAC employees' observations).[13]

In the same vein, UAC invents a rule – not found in Georgia law – that parties cannot own information obtained from the public domain.  Again, whether something is in the public domain goes to common knowledge (Question 2), not ownership.  *See Essex Gp., Inc. v. Southwire Co*, 501 S.E.2d 501, 503 (Ga. 1998).  *Essex* analyzed the issue of information obtained from the public domain as part of the *definition* of a trade secret.  *Id.  Essex* only makes sense if a party *can* own information obtained from the public domain; otherwise, no court would ever reach the question of whether such information, in combination, could qualify as a trade secret.[14]

UAC goes even further afield from the law in its examples, taking the position that even information *derived* from the public domain cannot be owned.  Opp. at 19-20 (discussing alloy composition and aging equation).  But in all cases, a trade secret must at some level be derived from public information.  And in all events, that is a question of whether the trade secret was "readily ascertainable," which was the

---

[13] To the extent UAC's examples cite to testimony that former Alcoa employees only *used* their general knowledge and skill to develop UAC's processes, as opposed to using Alcoa's trade secrets, that goes to misappropriation.

[14] *Trump v. Clinton* is no help.  It correctly noted that the question of ownership under the DTSA is one of title, and then held that the plaintiff did not have title to public internet traffic data *not even in plaintiff's possession*.  626 F. Supp. 3d 1264, 1303–04 (S.D. Fla. 2022).

subject of Question 2, not ownership under Question 1.  UAC's other examples are

similarly ineffective.  As to heat treat temperatures, UAC ignores that the Claimed

Trade Secret was the temperatures and times *in combination*.  *See* Day 3 PM Tr.

32:11-18, Day 4 PM Tr. 16:12-17:21.  And the evidence as to stretch percentage does

not go to Question 1 (ownership), but rather to questions the jury never reached, such

as independent development (Question 4) or commonly known (Question 2).  And

regardless, UAC's cited evidence does not address *all* Alcoa's trade secrets, as it must.

## IV.   THE JURY IS NOT FREE TO DISREGARD UNCONTRADICTED AND UNIMPEACHED EVIDENCE.

UAC suggests that the jury was free to disregard Alcoa's uncontroverted

evidence of ownership.  To the contrary, if evidence from a disinterested witness is

uncontradicted or unimpeached, it cannot be disregarded.  *See, e.g.*, *Chesapeake & O.

Ry. Co. v. Martin*, 283 U.S. 209, 215-16 (1931); *Reeves v. Sanderson Plumbing

Prods., Inc.*, 530 U.S. 133, 151 (2000); *see also Molski v. M.J. Cable, Inc.*, 481 F.3d

724, 731–32 (9th Cir. 2007) (holding that district court abused its discretion in not

granting a new trial when the jury found for the defendant on a special interrogatory

where the evidence was undisputed in favor of the plaintiff).[15]  Merely being an

employee does not make a witness "interested" in the outcome of the case such that

---

[15] This only makes sense because if uncontradicted and unimpeached
evidence could simply be ignored, such a rule would obviate summary judgment
and Rule 50 motions.

her testimony may be ignored.  *See Chesapeake*, 283 U.S. at 215-16 (holding trial court was required to credit evidence from an uncontradicted and unimpeached witness whose only possible bias was being an employee).[16]

Here, there was no evidence that any Alcoa witness had an interest in the outcome of the case, as they were merely employees.  *See id.*  And none of the relevant testimony was impeached.  *See Reeves*, 530 U.S. at 151 (examining whether the <u>evidence</u> was impeached).[17]  UAC points to individual instances of supposed impeached testimony.  Opp. 19-21.  These few examples do not stand up to scrutiny – there were no actual inconsistencies in the testimony.  But regardless, under the cases cited above, a handful of discrete instances would not permit the jury to disregard evidence of ownership of *all* of Alcoa's Claimed Trade Secrets, particularly where there was corroborating testimony and documentation of development.  Alcoa Br. at 11-14.  UAC does not even claim that the jury could disregard *all* Claimed Trade Secrets – as it must – only some of them.  Opp. at 22.

---

[16] Indeed, the 11th Circuit has gone further in holding that even the testimony of an <u>interested</u> witness should not be disregarded if uncontroverted, inherently plausible, and corroborated.  *Hibiscus Assocs. Ltd. v. Bd. of Trs. of Policemen & Firemen Ret. Sys. of City of Detroit*, 50 F.3d 908, 920-21 (11th Cir. 1995).

[17] UAC cites no case for the proposition that impeachment of a witness on unrelated points is sufficient to disregard other uncontradicted and unimpeached testimony.

14

## V.   <u>UAC INVITED THE ERROR.</u>

UAC misapprehends Alcoa's argument.  UAC assumes that improper attorney argument is *only* relevant if it qualifies as an *independent* basis to grant a new trial. But Alcoa's argument was not so limited; improper attorney argument is also a relevant factor in deciding whether to grant a new trial based on the verdict being against the great weight of the evidence.  Alcoa Br. at 18, 25 (citing cases).[18]  An objection is not necessary to conclude that the improper argument rendered the trial "marred by error," which can be an aggravating factor supporting a new trial.  *Id*. More fundamentally, it is not surprising that the jury made a mistake because UAC invited the error with misleading arguments.[19]

## <u>CONCLUSION</u>

Alcoa respectfully requests that the Court grant its motion for a new trial.

---

[18] As Alcoa explained, Alcoa Br. at 23-25, this improper attorney argument separately is an independent basis for a new trial because it narrowed the grounds for liability.  *Christopher v. Florida*, 449 F.3d 1360 (11th Cir. 2006).

[19] UAC urges that grants of new trial motions are subject to more stringent appellate review than denials.  Opp. at 3.  But this is not appellate review.  And where, as here, there is a complete absence of evidence to support the verdict, a denial amounts to an error of law.  *Grandison v. Smith*, 779 F.2d 637, 640 (11th Cir. 1986).

Dated: October 6, 2023

Respectfully submitted,

*/s/ Courtland L. Reichman*

Jennifer Estremera *(Pro Hac Vice)*
Leaf Williams (*Pro Hac Vice*)
Sara Edelstein *(Pro Hac Vice)*
Laura Carwile *(Pro Hac Vice)*
Gina Diaz *(Pro Hac Vice)*
REICHMAN JORGENSEN
LEHMAN & FELDBERG LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Telephone: (650) 623-1401
jestremera@reichmanjorgensen.com
lwilliams@reichmanjorgensen.com
sedelstein@reichmanjorgensen.com
lcarwile@reichmanjorgensen.com
gdiaz@reichmanjorgensen.com

Caroline M. Walters (*Pro Hac Vice*)
Michael Matulewicz-Crowley *(Pro Hac Vice)*
REICHMAN JORGENSEN
LEHMAN & FELDBERG LLP
400 Madison Avenue, Suite 14D
New York, NY 10017
Telephone: (212) 381-1965
cwalters@reichmanjorgensen.com
mmatulewicz-crowley@reichmanjorgensen.com

Courtland L. Reichman
(Georgia Bar No. 599894)
Sarah O. Jorgensen
(Georgia Bar No. 541130)
REICHMAN JORGENSEN
LEHMAN & FELDBERG LLP
1201 West Peachtree Street,
Suite 2300
Atlanta, GA 30309
Telephone: (404) 609-1040
creichman@reichmanjorgensen.com
sjorgensen@reichmanjorgensen.com

Christine E. Lehman (*Pro Hac Vice*)
Ariane Mann (*Pro Hac Vice*)
REICHMAN JORGENSEN
LEHMAN & FELDBERG LLP
1909 K. Street, NW, Suite 800
Washington, DC 20006
Telephone: (202) 894-7310
clehman@reichmanjorgensen.com
amann@reichmanjorgensen.com

*Attorneys for Plaintiffs and Counterclaim-Defendants, Arconic Corporation and Howmet Aerospace Inc.*

## <u>CERTICATE OF COMPLIANCE WITH LR 5.1(C)</u>

This is to certify that the foregoing document was prepared using Times New

Roman 14-point font in accordance with LR 5.1(C).

Dated: October 6, 2023                     */s/ Courtland L. Reichman*
                                           Courtland L. Reichman


## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that I have electronically filed the above

document with the Clerk of the Court using CM/ECF which will send electronic

notification of such filing to all registered counsel.

This 6th day of October, 2023              */s/ Courtland L. Reichman*
                                           Courtland L. Reichman