IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| ARCONIC CORPORATION, and HOWMET AEROSPACE INC. (f/k/a Alcoa Inc.), | ) ) ) | |
| | ) | No.: 1:15-CV-01466-JPB |
| Plaintiffs/Counterdefendants, | ) | |
| | ) | |
| v. | ) | **REDACTED** |
| | ) | |
| UNIVERSAL ALLOY CORPORATION, | ) | |
| | ) | |
| Defendant/Counterclaimant. | ) | |
| | ) | |
| | ) | |
| | ) | |
| _____ | ) | |

**ALCOA' REPLY IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT ON UAC'S COUNTERCLAIMS**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ............................................................................................1

ARGUMENT .................................................................................................3

    I.    UAC Cannot Show That Alcoa's Claim Was Objectively Baseless. .......3

          A.    The Court's Prior Rulings Confirm the Sufficiency of Alcoa's Claim. ...........................................................................4

          B.    UAC Misapprehends The Law And Points To Irrelevant Facts. ...7

    II.    There Is No Evidence Alcoa Was Indifferent to the Outcome of Its Claim. ........................................................................11

    III.    UAC Has Still Not Shown Any Antitrust Harm On The Merits. ..........13

CONCLUSION ..............................................................................................15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*AE Nortrak N. Am., Inc. v. Progress Rail Servs. Corp.*,
   459 F. Supp. 2d 1142 (N.D. Ala. 2006)................................................................8

*Andrx Pharms., Inc. v. Elan Corp, PLC*,
   421 F.3d 1227 (11th Cir. 2005) .........................................................................3

*Baltimore Scrap Corp. v. David J. Joseph Co.*,
   81 F. Supp. 2d 602 (D. Md. 2000), *aff'd*, 237 F.3d 394 (4th Cir.
   2001) ..............................................................................................................8

*Beckman Instruments, Inc. v. LKB Produkter AB*,
   892 F.2d 1547 (Fed. Cir. 1989) .......................................................................10

*Carroll Touch, Inc. v. Electro Mech. Sys., Inc.*,
   15 F.3d 1573 (Fed. Cir. 1993) ...........................................................................8

*Catch Curve, Inc. v. Venali, Inc.*,
   2008 WL 11334024 (C.D. Cal. Nov. 3, 2008) ..................................................8

*Cheminor Drugs, Ltd. v. Ethyl Corp.*,
   168 F.3d 119 (3d Cir. 1999) ..............................................................................8

*City of Columbia v. Omni Outdoor Adver., Inc.*,
   499 U.S. 365 (1991)........................................................................................12

*DeRubeis v. Witten Techs., Inc.*,
   244 F.R.D. 678 (N.D. Ga. 2007) .......................................................................8

*Dominant Semiconductors Sdn. Bhd. v. OSRAM GmbH*,
   524 F.3d 1254 (Fed. Cir. 2008) ......................................................................8, 9

*GEICO v. Hazel*,
   2014 WL 4628655 (E.D.N.Y. Aug. 11, 2014) ................................................13

*Intellectual Ventures I LLC v. Capital One Fin. Corp.*,
280 F. Supp. 3d 691 (D. Md. 2017) .................................................................8, 14

*Jacobs v. Tempur-Pedic Int'l, Inc.*,
626 F.3d 1327 (11th Cir. 2010) ...........................................................................13

*MacDermid Printing Solutions LLC v. Cortron Corp.*,
833 F.3d 172 (2d Cir. 2016) ................................................................................14

*Miller Pipeline Corp. v. British Gas PLC*,
69 F. Supp. 2d 1129 (S.D. Ind. 1999)...........................................................3, 8, 9

*Mitek Surgical Prods., Inc. v. Arthrex, Inc.*,
21 F. Supp. 2d 1309 (D. Utah 1998)......................................................................8

*Pers. Dep't, Inc. v. Prof'l. Staff Leasing Corp.*,
297 F. App'x 773 (10th Cir. 2008) ......................................................................11

*Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*,
*508 U.S. 49, 113 S. Ct. 1920, 123 L. Ed. 2d 611 (1993)* ............................*passim*

*Q-Pharma, Inc. v. Andrew Jergens Co.*,
360 F.3d 1295 (Fed. Cir. 2004) .............................................................................8

*In re Relafen Antitrust Litigation*,
346 F. Supp. 2d 349 (D. Mass. 2004)............................................................10, 11

*Relevant Grp., LLC v. Nourmand*,
2023 WL 4291654 (C.D. Cal. May 24, 2023) .......................................................8

*Scripto-Tokai Corp. v. Gillette Co.*,
1994 WL 746072 (C.D. Cal. Sept. 9, 1994) ..........................................................8

*Viamedia, Inc. v. Comcast Corp.*,
951 F.3d 429 (7th Cir. 2020) ...............................................................................14

*Wyndham Vacation Ownership, Inc. v. Montgomery Law Firm, LLC*,
2021 WL 214948151 (M.D. Fla. Oct. 18, 2021) .................................................12

**State Cases**

*Essex Grp., Inc. v. Southwire Co.*,
   501 S.E.2d 501 (Ga. 1998) ....................................................................9

**Rules**

Rule 30(b)(6)....................................................................................................7

**Constitutional Provisions**

First Amendment.........................................................................................2, 3

Plaintiffs hereby submit this Reply in Support of Their Motion for Summary

Judgment ("Motion," Dkt. 1029).

## INTRODUCTION

Denying reality is no substitute for evidence.  UAC's position relies on

denying the existence of evidence and this Court's previous rulings, instead relying on

facts irrelevant to the question of whether the record as a whole shows that the claims

are so baseless that no reasonable litigant could realistically expect to prevail.  Alcoa

presented evidence that its information met the statutory definition of a "trade

secret" and that UAC used those trade secrets.  That evidence is fatal to UAC's

sham litigation claim.  That UAC disagrees with the evidence does not negate its

existence.  Doubly fatal is that this Court already denied summary judgment and a

motion for judgment as a matter of law, finding that the evidence was sufficient to

go to the jury.

UAC simply denies the existence of the evidence and the Court's rulings.  It

contends that there was no evidence from which a reasonable litigant could believe

Alcoa made reasonable efforts to protect its trade secrets, despite the Court having

ruled that genuine issues of material fact precluded summary judgment on this very

question.  It argues that Alcoa stamping documents as "confidential" was somehow

improper, ignoring that this Court already found that argument frivolous and

1

sanctioned UAC tens of thousands of dollars for making it. It contends that there was no evidence of misappropriation, when this Court already found that there was "a substantial body of evidence" showing misappropriation. It contends that Alcoa lacked a reasonable belief that it had identified trade secrets, when the Court already ruled that argument was incredible in light of Alcoa's extensive identification. It argues that the Court must ignore the summary judgment and trial evidence, defying the legion of cases holding otherwise. It even ignores the evidence Alcoa presented at trial, confusingly contending that because UAC contested that evidence, Alcoa never presented it in the first place.

In particular, UAC ignores case law in demanding that the Court transport itself back in time, blithely ignore the mountain of evidence Alcoa produced and presented at trial in support of its trade secret claim, and find that there is a trial-worthy factual dispute on whether Alcoa's claim had merit at the time of filing. To the contrary, the cases make clear that the Court should evaluate the entire record of the underlying suit to determine objective baselessness, not just the circumstances present at the time of filing.

Litigants have a First Amendment right to petition the government for redress. The *Noerr-Pennington* doctrine protects litigants from sham litigation claims unless the claimant meets the heavy burden of showing that there was no reason whatsoever

to believe in the viability of a claim *and* that the plaintiff subjectively was indifferent to the outcome of the case, seeking instead to use the lawsuit only to thwart competition.  There is no such evidence in this case.  The First Amendment protections exist to prevent this type of spurious claim.

## ARGUMENT

## I.   UAC Cannot Show That Alcoa's Claim Was Objectively Baseless.

UAC bears the heavy burden of demonstrating that Alcoa's lawsuit was "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits."  *Andrx Pharms., Inc. v. Elan Corp, PLC*, 421 F.3d 1227, 1234 (11th Cir. 2005); *see also Miller Pipeline Corp. v. British Gas PLC*, 69 F. Supp. 2d 1129, 1142 (S.D. Ind. 1999) ("[O]bjective baselessness is very difficult to prove, for a litigant's reasonable belief in its chance to achieve success on the merits is quite a low threshold.").  This is an *objective* inquiry that simply asks whether the facts presented by the plaintiff arguably satisfy the elements of the underlying cause of action.  *See Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc., 508 U.S. 49, 65, 113 S. Ct. 1920, 123 L. Ed. 2d 611 (1993)*.  Alcoa presented evidence that it possessed information meeting the statutory definition of a "trade secret."  Alcoa Br. 8-10.  It presented evidence that UAC used Alcoa's trade secrets, including, for example, evidence showing that UAC possessed Alcoa's trade secret documents (many with the

3

Alcoa logo), freely circulated them, and used them to shortcut its manufacturing process. *See id*. at 10-12. There is no factual dispute that Alcoa presented this evidence at trial.[1] And this evidence constitutes a reasonable basis to conclude that Alcoa could have a claim, which is all that is required. The issue of whether the underlying litigation was objectively baseless should be resolved on summary judgment "[w]here, as here, there is no dispute over the predicate facts of the underlying legal proceeding." *Columbia Pictures*, 508 U.S. at 63, 65.

This evidence far exceeds the low bar for probable cause. UAC's argument to the contrary seeks to rewrite history. Moreover, the Court found there were triable issues, and in fact held a trial. These circumstances are fatal to UAC's claim, and UAC seeks to run from them by creating a morass of diversions.

## A. <u>The Court's Prior Rulings Confirm the Sufficiency of Alcoa's Claim.</u>

UAC raises numerous arguments that defy previous rulings of this Court. First, it asserts that Alcoa "never" sufficiently identified its claimed trade secrets, ignoring

---

[1] In UAC's responsive statement of facts, UAC purports to "dispute" whether Alcoa presented evidence at trial. Dkt. 1046-1. In fact, a review of UAC's responsive statement and its citations make clear that it does not dispute what Alcoa *presented* at trial – instead, it merely disagrees with the evidence and cites its own opposing evidence. That is, what UAC disputes is the evidence itself, not whether Alcoa presented it. In fact, there is no dispute as to what Alcoa *presented* at trial – nor could there be; Alcoa's presentation is memorialized in the trial transcript.

that the parties previously litigated this issue and this Court rejected UAC's arguments.  Opp. 10.  Magistrate Judge Vineyard expressly rejected UAC's argument that Alcoa had not sufficiently identified its trade secrets.  Dkt. 461 at 21-22.  This Court adopted his ruling in stark terms, making clear that UAC's argument lacked credibility: "[UAC] could not credibly make th[e] claim" that Alcoa had not sufficiently identified its claimed trade secrets "because [Alcoa] provided [UAC] with extensive information during discovery regarding which trade secrets [Alcoa] asserts were misappropriated."  *See* Dkt. 583 at 6-7.

UAC retreats to the non sequitur that it would have been an "an impossible task" to move for summary judgment on identification because Alcoa's identification of trade secrets was "nebulous and numerous."  Opp. 13-14.  This is nonsensical.  It defies logic to say UAC could not have moved for summary judgment, but now can show objective baselessness.  If Alcoa's basis for claiming trade secrets was frivolous, as UAC now maintains, UAC had every reason to move for summary judgment on that issue and avoid the expense and risk of trial.  It is telling that it did not.  Rather, the record shows that UAC's arguments are flatly contradicted by the Court's prior rulings and lack evidentiary support.

Next, UAC fights with the Court's summary judgment rulings, arguing that Alcoa failed to present evidence supporting that it made reasonable efforts to maintain

the secrecy of its trade secrets.  Opp. 11-12.  But UAC moved for summary judgment on that exact issue and lost.  *See* Dkt. 676 at 18-20 (finding that the "record [was] replete with numerous disputes over genuine issues of material fact" on whether Alcoa made reasonable efforts at secrecy).

Next, UAC even circles back to an argument that this Court already found was frivolous: that Alcoa somehow was engaged in wrongdoing (spoliation and the like) by marking documents as confidential before filing this case.  When UAC made this argument, after having been told by the Court it lacked any merit, it was *sanctioned* tens of thousands of dollars.  *See* Dkt. 461 at 23-27 (Judge Vineyard finding that UAC's stamping argument lacked merit); Dkt. 583 at 8-9 (Judge Ross adopting R&R as opinion of the Court); Dkt. 635 (Judge Vineyard R&R recommending fee sanctions of $74,898); Dkt. 747 (Judge Ross adopting R&R as opinion of the Court).[2]  Its

---

[2] During discovery, Alcoa produced documents and emails relating to an Alcoa effort to tighten security on some of its documents and information related to stretch form spar chords (as well as other manufacturing processes).  This effort took place in late 2014 and early 2015, after Alcoa realized that its trade secrets had been stolen by UAC and it had been subject to an attempted theft by foreign nationals.  Alcoa (1) added a confidentiality legend to target process pages *going forward*, and (2) moved certain electronic files into a more protected database.  No documents were destroyed.  And the historical target process pages remained unchanged; it was only the target process pages currently in use in ongoing job tickets that had a confidentiality legend added.  *See* Dkt. 373.  In discovery, Alcoa produced (1) both stamped and unstamped versions of the target process pages, (2)

argument is even more frivolous here because Alcoa did not rely on the fact that those documents were marked confidential to show that it made reasonable efforts to maintain the secrecy at the time the trade secrets were stolen.

Finally, UAC argues that this Court's summary judgment rulings do not foreclose its sham litigation claim because UAC had moved on discrete issues.  It has no answer for the fact that this Court held that there was a "substantial body of evidence from which a reasonable juror could find that there may well have been a misappropriation of [Alcoa's] information involving the Stretch Form Process."  Dkt. 598 at 10 (R&R); Dkt. 576 at 13 (Judge Ross adopting R&R); Dkt. 1027 47:8-22; 67:17 (this Court reaffirming the ruling at the pretrial conference).

## B. *UAC Misapprehends The Law And Points To Irrelevant Facts.*

UAC asserts that the Court should evaluate probable cause at the time the complaint was filed.  Opp. 7-10.  UAC misapprehends the legal standard.  Where, as here, the underlying dispute has proceeded through discovery, summary judgment,

---

multiple documents discussing the increased security efforts, and (3) testimony of witnesses on the security efforts, including a full-day Rule 30(b)(6) witness.  *Id.*  Nevertheless, UAC moved for sanctions for spoliation, arguing that these efforts represented tampering with evidence because it occurred at the same time that Alcoa was filing its lawsuit against UAC.  Magistrate Judge Vineyard soundly rejected this claim.  Dkt. 461.  Over UAC's objection, the Court concluded that UAC's motion was frivolous and that no information had been destroyed or withheld, and awarded sanctions to Alcoa.  Dkts. 635; 747.

and trial, the proper course is for the court to evaluate the "underlying legal proceeding" *as a whole* and "decide probable cause as a matter of law." *Columbia Pictures*, 508 U.S. 49 at 62-63; *see also Dominant Semiconductors Sdn. Bhd. v. OSRAM GmbH*, 524 F.3d 1254, 1264 (Fed. Cir. 2008) ("[O]bjective baselessness requires a determination based on the record ultimately made in the [underlying] proceedings . . . , and not on the basis of information available to the [plaintiff] at the time the allegations were made."). Indeed, numerous courts have reviewed the record of the underlying proceeding in deciding sham litigation claims.[3] As this Court has acknowledged, trade secret plaintiffs "may have no way of knowing what trade secrets have been misappropriated until it receives discovery on how the defendant is operating." Dkt. 62 at 5 (quoting *DeRubeis v. Witten Techs., Inc.*, 244 F.R.D. 678 (N.D. Ga. 2007)).

---

[3] *See, e.g., Columbia Pictures*, 508 U.S. 49 at 62-65; *Relevant Grp., LLC v. Nourmand*, 2023 WL 4291654, at *13 (C.D. Cal. May 24, 2023); *AE Nortrak N. Am., Inc. v. Progress Rail Servs. Corp.*, 459 F. Supp. 2d 1142, 1166 (N.D. Ala. 2006); *Catch Curve, Inc. v. Venali, Inc.*, 2008 WL 11334024, at *5 (C.D. Cal. Nov. 3, 2008); *Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1305 (Fed. Cir. 2004); *Carroll Touch, Inc. v. Electro Mech. Sys., Inc.*, 15 F.3d 1573, 1583 (Fed. Cir. 1993); *Cheminor Drugs, Ltd. v. Ethyl Corp.*, 168 F.3d 119, 126 (3d Cir. 1999); *Baltimore Scrap Corp. v. David J. Joseph Co.*, 81 F. Supp. 2d 602, 613-21 (D. Md. 2000), *aff'd*, 237 F.3d 394 (4th Cir. 2001); *Miller Pipeline Corp.*, 69 F. Supp. 2d at 1141; *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 280 F. Supp. 3d 691, 714 (D. Md. 2017); *Mitek Surgical Prods., Inc. v. Arthrex, Inc.*, 21 F. Supp. 2d 1309, 1318 (D. Utah 1998); *Scripto-Tokai Corp. v. Gillette Co.*, 1994 WL 746072, at *12-14 (C.D. Cal. Sept. 9, 1994).

Further, UAC attempts to manufacture a factual dispute by pointing to isolated evidence that has no relevance to whether there objectively was a basis for Alcoa's suit.  For example, UAC points to Alcoa internal emails and testimony guessing how long it might take UAC to buy, install, and bring a spar chord machine operational. This lacks even arguable relevance to whether there was an objective basis for Alcoa's claim – it has nothing to do with whether Alcoa's information met the statutory definition of a "trade secret" and has nothing to do with whether UAC, in fact, used Alcoa's trade secrets.  *See Essex Grp., Inc. v. Southwire Co.*, 501 S.E.2d 501, 504 (Ga. 1998) (explaining that the relevant question is whether plaintiff's trade secrets were "actually" stolen, not whether the defendant could have "theoretically" pieced them together).  At most, it relates to the extent to which UAC benefited from the head start of using Alcoa's trade secrets, which has nothing to do with whether Alcoa had an objective basis for its claim.  Moreover, UAC improperly attempts to conflate the two prongs by injecting Alcoa's purported *subjective* motivations into the objective prong.  *See Columbia Pictures*, 508 U.S. at 63-64 ("The question is not whether [the plaintiff] thought the facts to constitute probable cause, but whether the *court* thinks they did.") (emphasis added); *see also Dominant Semiconductors Sdn. Bhd.*, 524 F. 3d at 1264.  Finally, even UAC acknowledges that this evidence was disputed, which is fatal to its sham litigation claim.  *See, e.g., Miller Pipeline*

*Corp.*, 69 F. Supp. 2d at 1142 (finding that claims were not objectively baseless where there was a "genuine dispute between the parties" on the merits of those claims and there was not "sufficient evidence or legal argument to support a jury determination that [the antitrust plaintiff's] interpretation is the only reasonable one or that no reasonable person would take the position [that the antitrust defendant] has adopted"); *Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1551 (Fed. Cir. 1989) (claim was not "'baseless' when it survived a motion for summary judgment and was rejected only after findings were made on disputed facts").

UAC's cited cases are inapposite.  For example, UAC relies on an out-of-circuit district court case, *In re Relafen Antitrust Litigation*, 346 F. Supp. 2d 349 (D. Mass. 2004), for the proposition that summary judgment should be denied "[w]hen the . . . facts [tending to disprove the existence of probable cause] are in dispute" (Opp. 7).  That might be true if there were fact disputes about whether Alcoa had probable cause, but there are none, as discussed above.  In that case, the patentee's claim had survived summary judgment on the dispositive issue of anticipation based on an expert affidavit attesting that a publication did not anticipate the patent.  *In re Relafen*, 346 F. Supp. 2d at 362-63.  The alleged infringer established a genuine dispute on probable cause by pointing to evidence that the summary judgment affidavit was essentially fraudulent because the patentee's own scientists believed that

10

the patent was anticipated by the publication.  *Id.* at 363.  The court there noted that

the general rule that a claim's survival of summary judgment precludes a finding of

sham litigation did not apply in the "specific circumstances" of the case where

summary judgment was based on a false affidavit.  *Id.* at 362.[4]  There are no such

facts here.  All UAC points to is its disagreement with the very facts that were before

the Court on summary judgment, and its disagreement with the Court's conclusions.

UAC's argument that there are no facts to support reasonable efforts and

misappropriation are completely incompatible with the Court's conclusion that there

are facts from which a jury could reasonably find in Alcoa's favor on those issues.

## II.  "There Is No Evidence Alcoa Was Indifferent to the Outcome of Its Claim."

There is no need to reach the question of Alcoa's subjective motivations

because "[o]nly if challenged litigation is objectively meritless may a court examine

the litigant's subjective motivation."  *Columbia Pictures*, 508 U.S. 49 at 60.  Even so,

UAC has not adduced any facts showing that Alcoa intended to thwart competition

through the "use [of] the governmental process—*as opposed to the outcome of that*

*process*—as an anticompetitive weapon."  *Id.* at 60-61 (emphasis added and citations

omitted).  None of UAC's evidence even remotely suggests that Alcoa was

---

[4] Likewise, in *Pers. Dep't, Inc. v. Prof'l. Staff Leasing Corp.*, 297 F. App'x 773, 780 (10th Cir. 2008), there was evidence showing that the plaintiff in a contract action knew that there was no underlying enforceable contract.

disinterested in the outcome of its suit, which is the relevant question.  *Id.* at 65.  For example, UAC refers to an internal email from a junior sales representative stating that Alcoa should "draw[] a line in the sand with UAC on how much share" Alcoa was "willing to let them take" (Opp. 18).  This type of evidence merely shows Alcoa was interested in achieving a positive *outcome* of its suit, protecting its innovation and hard work.  *Noerr* protects political activity and government advocacy of all types, regardless of motives, so long as it is directed at genuine attempts to secure a favorable outcome.  *See id.*; *see also, e.g., City of Columbia v. Omni Outdoor Adver., Inc.*, 499 U.S. 365, 381 (1991) ("If *Noerr* teaches anything it is that an intent to restrain trade as a result of the government action sought . . . does not foreclose protection." (citation omitted)).

Contrary to UAC's assertions, the record shows that Alcoa's "economic motivations" in bringing suit justified its investment.  *See Columbia Pictures*, 508 U.S. 49 at 65-66; *see also* Alcoa Br. 21-22.  Alcoa has litigated this case for eight years, at significant expense, seeking $88 million in past damages and an injunction, and even now is moving for a new trial.  This record dispels any notion that Alcoa is "indifferent to the outcome on the merits" of its suit.  *Columbia Pictures*, 508 U.S. 49 at 65; *see also Wyndham Vacation Ownership, Inc. v. Montgomery Law Firm, LLC*, 2021 WL 214948151, at *10 (M.D. Fla. Oct. 18, 2021).  Thus, the Court should grant

summary judgment on the subjective prong of *Noerr-Pennington* as well.  *See GEICO*
*v. Hazel*, 2014 WL 4628655, at *18-19 (E.D.N.Y. Aug. 11, 2014) (applying immunity
despite objective baselessness for failure to prove subjective prong), *rec. adopted*,
2014 WL 4628661 (E.D.N.Y. Sept. 15, 2014).

## III.    <u>UAC Has Still Not Shown Any Antitrust Harm On The Merits.</u>

"Of course, even a plaintiff who defeats the defendant's claim to *Noerr*
immunity by demonstrating both the objective and the subjective components of a
sham must still prove a substantive antitrust violation." *Columbia Pictures*, 508 U.S.
49 at 61.  Here, UAC cannot prove any cognizable antitrust harm, and so its
counterclaims also fail on the merits.  It is undisputed that litigation expenses – the
sole basis for UAC's purported antitrust harm – have not changed its contractual
arrangement with Boeing, and thus that UAC has not lost sales.  UAC has also not
shown any harm to consumers in the market; indeed, Boeing is the only customer
in its alleged market.  These facts alone conclusively show that UAC has no antitrust
claim, regardless of whether its lack of cognizable harm is construed as failing to
show antitrust injury or failing to demonstrate harm to competition.  *See Jacobs v.*
*Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1339 (11th Cir. 2010) (plaintiffs must
point "to the specific damage done to consumers in the market") (internal
quotation marks and citations omitted).

Apparently recognizing this difficulty, UAC relies on *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 475 (7th Cir. 2020), for the proposition that the Court can simply *presume* harm to competition because there are limited market participants.  But that case involved two service providers with *millions* of customers.  *Id.* at 437.  Thus, the court there presumed harm to competition because the "market at issue . . . may not have had time to show ultimate effects" of Comcast "forcing out its only competitor in the market." *Id.* at 475.  Here, by contrast, there is no need for speculation; the alleged relevant market for stretch-form spar chords has *one* customer (Boeing), and it is undisputed that UAC has a long-term contract with that customer.  UAC cannot prove harm to competition (as opposed to harm to itself) because none exists.  *See MacDermid Printing Solutions LLC v. Cortron Corp.*, 833 F.3d 172, 186 (2d Cir. 2016) ("[T]he mere fact that a market has few competitors does not transform every action by one of them into an antitrust violation.  Rather, even in a duopoly, a plaintiff must offer some other reason to think that the challenged behavior harmed competition.").  Expert testimony would not change this, and UAC's vague, eleventh-hour declaration does not provide any facts showing otherwise.  That declaration merely states that, but for this litigation, ██████████████████████████ ████████████████████████  That is not enough.  Thus, UAC's antitrust claims fail as a matter of law.

14

## **CONCLUSION**

For the foregoing reasons, Alcoa respectfully requests that the Court grant its

motion for a summary judgment.

Dated: October 18, 2023                    Respectfully submitted,

                                           */s/ Courtland L. Reichman*

Jennifer Estremera *(Pro Hac Vice)*       Courtland L. Reichman
Leaf Williams (*Pro Hac Vice*)            (Georgia Bar No. 599894)
Sara Edelstein *(Pro Hac Vice)*           Sarah O. Jorgensen
Laura Carwile *(Pro Hac Vice)*            (Georgia Bar No. 541130)
Gina Diaz *(Pro Hac Vice)*                REICHMAN JORGENSEN
REICHMAN JORGENSEN                         LEHMAN & FELDBERG LLP
LEHMAN & FELDBERG LLP                      1201 West Peachtree Street,
100 Marine Parkway, Suite 300             Suite 2300
Redwood Shores, CA 94065                   Atlanta, GA 30309
Telephone: (650) 623-1401                 Telephone: (404) 609-1040
jestremera@reichmanjorgensen.com          creichman@reichmanjorgensen.com
lwilliams@reichmanjorgensen.com           sjorgensen@reichmanjorgensen.com
sedelstein@reichmanjorgensen.com
lcarwile@reichmanjorgensen.com            Christine E. Lehman (*Pro Hac Vice*)
gdiaz@reichmanjorgensen.com               Ariane Mann (*Pro Hac Vice*)
                                           REICHMAN JORGENSEN
                                           LEHMAN & FELDBERG LLP
Caroline M. Walters (*Pro Hac Vice*)      1909 K. Street, NW, Suite 800
Michael Matulewicz-Crowley *(Pro Hac*     Washington, DC 20006
*Vice)*                                    Telephone: (202) 894-7310
REICHMAN JORGENSEN                         clehman@reichmanjorgensen.com
LEHMAN & FELDBERG LLP                      amann@reichmanjorgensen.com
400 Madison Avenue, Suite 14D
New York, NY 10017
Telephone: (212) 381-1965
cwalters@reichmanjorgensen.com             *Attorneys for Plaintiffs and Counterclaim-*
mmatulewicz-                               *Defendants, Arconic Corporation and*
crowley@reichmanjorgensen.com              *Howmet Aerospace Inc.*

## <u>CERTICATE OF COMPLIANCE WITH LR 5.1(C)</u>

This is to certify that the foregoing document was prepared using Times New Roman 14-point font in accordance with LR 5.1(C).

Dated: October 18, 2023                    <u>*/s/ Courtland L. Reichman*</u>
                                                           Courtland L. Reichman

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that I have electronically filed the above document with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to all registered counsel.

This 18th day of October, 2023                    <u>*/s/ Courtland L. Reichman*</u>
                                                                      Courtland L. Reichman